1  Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
2  LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
3  Sacramento, California 95814
Telephone:   (916) 443-6911
4  Facsimile:   (916) 447-8336
E-Mail:   mark@markmerin.com
5        paul@markmerin.com
6
7  Robert L. Chalfant (State Bar No. 203051)
LAW OFFICE OF ROBERT L. CHALFANT
8  13620 Lincoln Way, Suite 325
Auburn, California 95603
9  Telephone:   (916) 647-7728
E-Mail:   robert@rchalfant.com
10
11   Attorneys for Plaintiffs
ESTATE OF DAVID BAREFIELD SR.,
12   DAVID BAREFIELD II, AARON BAREFIELD,
FINAS BAREFIELD, and LOIS BAREFIELD
13

14                     UNITED STATES DISTRICT COURT

15                     EASTERN DISTRICT OF CALIFORNIA

16                         SACRAMENTO DIVISION

| | |
|---|---|
| 17  ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD, | Case No. |
| 19                     Plaintiffs, | **COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS** |
| 20  vs. | **DEMAND FOR JURY TRIAL** |
| 21  CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20, | |
| 24                     Defendants. | |

1

## INTRODUCTION

55-year-old DAVID BAREFIELD SR. was denied necessary medical attention as an arrestee following arrest by police officers employed by the CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT, and as a pretrial detainee at the Sacramento County Main Jail by jail staff employed by the COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, resulting in his death on May 12, 2024.

## JURISDICTION & VENUE

1. This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities protected by the U.S. Constitution). This Court has jurisdiction of the state claims under 28 U.S.C. § 1367.

2. Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3. Intradistrict venue is proper in the Sacramento Division of the Eastern District of California pursuant to Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Sacramento, California.

## EXHAUSTION

4. On May 17, 2024, the ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD submitted a government claim to the COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT relating to the claims asserted in this action. (Claim No. L2400390-0001.)

5. On June 10, 2024, the COUNTY OF SACRAMENTO issued a "Notice of Rejection of Claim."

6. On November 12, 2024, the ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD submitted a government claim to the CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT relating to the claims asserted in this action. (Claim No. 4A2411G2HZB-0001, C4665C9045-0002-0l,

2

C4665C9045-0003-01, C4665C9045-0004-01, C4665C9045-0005-01.)

7.      On November 21, 2024, the CITY OF SACRAMENTO issued a "Notice of Claim Rejection."

**PARTIES**

8.      Plaintiff ESTATE OF DAVID BAREFIELD SR. appears by and through real-parties-in-interest Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD, the biological children of DAVID BAREFIELD SR., who bring this action pursuant to California Code of Civil Procedure § 377.30. Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD bring this action as the successors-in-interest on behalf of DAVID BAREFIELD SR. Declarations regarding Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD's status as the successors-in-interest to DAVID BAREFIELD SR. are attached, pursuant to California Code of Civil Procedure § 377.32.

9.      Plaintiff DAVID BAREFIELD II is a resident of the County of Sacramento, California. Plaintiff DAVID BAREFIELD II is the biological son of DAVID BAREFIELD SR. Plaintiff DAVID BAREFIELD II brings this action: (1) in a representative capacity, as a successor-in-interest on behalf of DAVID BAREFIELD SR.; and (2) in an individual capacity, on behalf of himself.

10.     Plaintiff AARON BAREFIELD is a resident of the County of Sacramento, California. Plaintiff AARON BAREFIELD is the biological son of DAVID BAREFIELD SR. Plaintiff AARON BAREFIELD brings this action: (1) in a representative capacity, as a successor-in-interest on behalf of DAVID BAREFIELD SR.; and (2) in an individual capacity, on behalf of himself.

11.     Plaintiff FINAS BAREFIELD is a resident of the County of Sacramento, California. Plaintiff FINAS BAREFIELD is the biological father of DAVID BAREFIELD SR. Plaintiff FINAS BAREFIELD brings this action in an individual capacity, on behalf of himself.

12.     Plaintiff LOIS BAREFIELD is a resident of the County of Sacramento, California. Plaintiff LOIS BAREFIELD is the biological mother of DAVID BAREFIELD SR. Plaintiff LOIS BAREFIELD brings this action in an individual capacity, on behalf of herself.

13.     Defendant CITY OF SACRAMENTO is located in the County of Sacramento, California. Defendant CITY OF SACRAMENTO is a "public entity" pursuant to California Government Code § 811.2.

3

14.     Defendant SACRAMENTO POLICE DEPARTMENT is located in the County of Sacramento, California. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is a "public entity" pursuant to California Government Code § 811.2.

15.     Defendant KATHERINE LESTER is and was, at all times material herein, a law enforcement officer and Police Chief for Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT, acting within the scope of employment and under color of state law. Defendant KATHERINE LESTER is sued in an individual capacity.

16.     Defendant COUNTY OF SACRAMENTO is located in the County of Sacramento, California. Defendant COUNTY OF SACRAMENTO is a "public entity" pursuant to California Government Code § 811.2.

17.     Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is located in the County of Sacramento, California. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is a "public entity" pursuant to California Government Code § 811.2.

18.     Defendant JIM COOPER is and was, at all times material herein, a law enforcement officer and Sheriff for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant JIM COOPER is sued in an individual capacity.

19.     Defendant JAMES EDDINS is and was, at all times material herein, an employee of Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant JAMES EDDINS is sued in an individual capacity.

20.     Defendants DOE 1 to 20 are and/or were agents, contractors, or employees of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, and/or SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of agency or employment and under color of state law. Defendants DOE 1 to 20 are sued by fictitious names and their true and correct names and identities will be substituted when ascertained.

**GENERAL ALLEGATIONS**

21.     At all times relevant herein, all wrongful acts described were performed under color of

4

state law and/or in concert with or on behalf of those acting under the color of state law.

22.     DAVID BAREFIELD SR. was 55 years old when he died on May 12, 2024.

23.     DAVID BAREFIELD SR. suffered from diagnosed disabilities, including Substance Use Disorder and Hypertension.

24.     DAVID BAREFIELD SR.'s Substance Use Disorder disability required hospitalization and treatment on occasion, and substantially limited one or more major life activities, including the ability to care for one's self, concentrate, think, and communicate. DAVID BAREFIELD SR. was prescribed medications for his disability on occasion, including for detoxification.

25.     DAVID BAREFIELD SR.'s Hypertension disability required treatment on occasion, and substantially limited one or more major life activities, including the ability to care for one's self. DAVID BAREFIELD SR. was prescribed medications for his disability on occasion, including lisinopril (Zestril) and hydrochlorothiazide (Hydrodiurel).

26.     DAVID BAREFIELD SR. had a documented history of substance abuse. For example, Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT documented that DAVID BAREFIELD SR. was arrested and booked into the Sacramento County Main Jail on February 2, 2023. Therein, Wenonah Morgan, a registered nurse (RN), reported:

(a)     "Substance Use Screening . . . . Was Drug/Alcohol Screen Performed? Yes[;] Type of Screening[:] Urine[;] Urine Test Results[:] Positive[;] Positive Results[:] Methamphetamines"

(b)     "Substance Use – Stimulants[;] Used within the past 30 days?: Yes[;] # of Days Used in Previous 30 Days: 11-15 Days"

(c)     "Methampheatamines[;] Duration: 10yrs[;] Date of Last Use: 02/02/2023[;] Frequency: on and off[;] Route of Admin: Smoking"

**Arrest**

27.     On May 12, 2024, around the early morning hours, DAVID BAREFIELD SR. ingested fentanyl and methamphetamine.

28.     DAVID BAREFIELD SR. was arrested by Defendants DOE 1 to 10, police officers employed by Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and

KATHERINE LESTER.

29.     On information and belief, DAVID BAREFIELD SR. was experiencing a medical emergency during the arrest process, including overdose.

30.     On information and belief, DAVID BAREFIELD SR. displayed behavior which Defendants DOE 1 to 10 knew or should have known required medical attention, including transport to a facility that could provide appropriate treatment. For example, DAVID BAREFIELD SR. displayed behaviors indicative of medical distress such as bizarre behavior, dilated pupils, fear/panic/paranoia, high temperature, irrational/incoherent speech, profuse sweating, shivering, inconsistent breathing patterns, and/or loss of consciousness.

31.     On information and belief, Defendants DOE 1 to 10 had access to records reflecting DAVID BAREFIELD SR.'s history of substance abuse.

32.     Defendants DOE 1 to 10 failed to transport DAVID BAREFIELD SR. to a hospital or facility where appropriate treatment could be provided.

33.     Defendants DOE 1 to 10 transported DAVID BAREFIELD SR. to the Sacramento County Main Jail for booking.

34.     Defendants DOE 1 to 10 failed timely to supervise, monitor, observe, and/or summon care for DAVID BAREFIELD SR.'s serious medical need, including heightened risk of illness and death, where they made an intentional decision with respect to DAVID BAREFIELD SR.'s ongoing medical condition which put him at substantial risk of suffering serious harm, and they did not take reasonable available measures to abate that risk, including transferring DAVID BAREFIELD SR. to a facility that could provide adequate care and monitored him to ensure that his condition did not deteriorate; monitoring and supervising for an obvious medical emergency; summoning medical care for an obvious medical emergency; and/or responding to an obvious medical emergency, and a reasonable official in the circumstances would have appreciated the high degree of risk involved, including the medical history and observable condition.

35.     Defendants DOE 1 to 10's actions and inactions delayed DAVID BAREFIELD SR.'s access to timely and necessary medical care and contributed to his death hours later.

36.     Defendants DOE 1 to 10's actions and inactions failed to comply with national, state, and

6

local standards, including California Commission on Peace Officer Standards and Training ("POST") Learning Domain 34 (First Aid, CPR, and AED); and Sacramento Police Department General Order 522.02 (Emergency Care for Individuals Under Police Care or Control), General Order 522.06 (Administration of Naloxone (Narcan)), Roll Call Training Bulletin #107 (Fentanyl Safety Updated).

37.     Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and KATHERINE LESTER failed adequately to train personnel, including Defendants DOE 1 to 10, related to assessing, monitoring, and providing emergency care for individuals under police care or control, including DAVID BAREFIELD SR. Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and KATHERINE LESTER were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of deficient policies or customs related to emergency care because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons, including the death of DAVID BAREFIELD SR.

**Booking**

38.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were responsible for supervising all aspects of the correctional facilities under their supervision, including the Sacramento County Main Jail and the detainees therein.

39.     Around 2:00 a.m., DAVID BAREFIELD SR. arrived as a pretrial detainee at the Sacramento County Main Jail, 651 I Street, Sacramento, CA 95814.

40.     DAVID BAREFIELD SR. was subject to intake, supervision, and monitoring by Defendants DOE 11 to 20, jail staff employed by Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER.

41.     On information and belief, DAVID BAREFIELD SR. was experiencing a medical emergency during the jail intake process, including overdose.

42.     DAVID BAREFIELD SR. condition and medical need were so obvious in that he was unable to remain conscious and could not stand on his own during the booking process.

43.     On information and belief, DAVID BAREFIELD SR. displayed behavior which Defendants DOE 11 to 20 knew or should have known required medical attention, including immediate medical attention and/or transport to a facility that could provide appropriate treatment. For example,

7

DAVID BAREFIELD SR. displayed behaviors indicative of medical distress such as bizarre behavior, dilated pupils, fear/panic/paranoia, high temperature, irrational/incoherent speech, profuse sweating, shivering, inconsistent breathing patterns, and/or loss of consciousness.

44.     Around 2:26 a.m., Defendant JAMES EDDINS, a registered nurse (RN), reported performing a "Nurse Receiving Screening" of DAVID BAREFIELD SR. Therein, Defendant JAMES EDDINS reported, among other information:

(a)     "Reviewed medical and MH [mental health] information from [DAVID BAREFIELD SR.'s] previous admissions"

(b)     "Housing Recommendation for SSO . . . . MAT [Medication-Assisted Treatment] Induction Housing - Opioids or Opioids and other substances[;] Detox Housing - Alcohol and/or benzodiazepines only"

45.     Defendant JAMES EDDINS medically cleared DAVID BAREFIELD SR. for housing in the jail.

46.     Defendant JAMES EDDINS could have but did not issue routine orders for inmates under the influence, such as a Clinical Opiate Withdrawal Scale (COWS) assessment, opioid detox regimens, or an urgent referral to a medical provider.

47.     Defendant JAMES EDDINS failed timely to observe, diagnose, summon care for, and/or treat DAVID BAREFIELD SR.'s serious medical need, including heightened risk of illness and death, where he made an intentional decision with respect to DAVID BAREFIELD SR.'s ongoing medical condition which put him at substantial risk of suffering serious harm, and he did not take reasonable available measures to abate that risk, including responding to the obvious medical conditions; assignment to specialized housing; increased patient monitoring and supervision; consultation with more skilled medical personnel such as a physician; and/or transfer to an outside hospital or facility with the resources to provide adequate care, and a reasonable official in the circumstances would have appreciated the high degree of risk involved, including the medical history and observed condition of the patient's health.

48.     Defendant JAMES EDDINS failed to utilize appropriate policies, training, standards, and procedures, including California Code of Regulations title 15 § 1207 (Medical Receiving Screening), § 1208 (Access to Treatment), § 1210 (Individualized Treatment Plans), § 1213 (Detoxification

8

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barefield v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

Treatment); National Commission on Correctional Health Care, Standards for Health Services in Jails ("NCCHC") Standard J-F-01 (Ongoing Care for Chronic Illness); Standard J-E-02 (Receiving Screening); Standard J-E-04 (Initial Health Assessment); Adult Correctional Health ("ACH") Standard 01-12 (Access to Care), Standard 04-08 (Specialty Referrals), Standard 04-09 (Medical Transportation), Standard 04-22 (Hospital Care), Standard 05-02 (Medication Assisted Treatment), Standard 05-05 (Nurse Intake), Standard 05-06 (Methadone Treatment), Standard 05-07 (SUD Counselor), Standard 05-13 (Initial History and Physical Assessment), Standard 06-02 (Patients with Disabilities); and Standardized Nursing Procedures ("SNP") Re: "Benzodiazepine Withdrawal Treatment" and "Opiate Withdrawal Treatment."

49.     Defendants DOE 11 to 20 were required to carry DAVID BAREFIELD SR. through the booking process because he was unable to stand on his own. Defendants DOE 11 to 20 obtained a cart into which DAVID BAREFIELD SR. was placed, which permitted Defendants DOE 11 to 20 to push and haul DAVID BAREFIELD SR. through the booking process rather than carrying him.

50.     DAVID BAREFIELD SR. was confined to a holding cell in the jail's booking area while unconscious inside of the cart, without proper monitoring or supervision by jail staff, including Defendants DOE 11 to 20.

51.     Defendants DOE 11 to 20 were responsible for monitoring and supervising DAVID BAREFIELD SR. and his cell.

52.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain deficient policies and customs related to inmate monitoring and supervision necessary to ensure the safety of inmates and timely response to medical emergencies, including through insufficient and/or untimely direct visual safety checks and closed-circuit television (CCTV) remote monitoring.

53.     DAVID BAREFIELD SR. was experiencing a medical emergency inside of the cell which caused him to display behavior consistent with medical distress, including unconsciousness.

54.     Defendants DOE 11 to 20 did not detect and/or ignored DAVID BAREFIELD SR.'s medical emergency.

55.     Defendants DOE 11 to 20 knew or should have known that DAVID BAREFIELD SR.

9

experienced a medical emergency inside of his cell based on the ability to observe DAVID BAREFIELD

SR.'s person and cell, including through direct visual safety checks and closed-circuit television (CCTV)

remote monitoring.

56.     Defendants DOE 11 to 20 failed timely to supervise, monitor, observe, and/or summon

care for DAVID BAREFIELD SR.'s serious medical need, including heightened risk of illness and death,

where they made an intentional decision with respect to DAVID BAREFIELD SR.'s ongoing medical

condition which put him at substantial risk of suffering serious harm, and they did not take reasonable

available measures to abate that risk, including monitoring and supervising for an obvious medical

emergency; summoning medical care for an obvious medical emergency; and/or responding to an

obvious medical emergency, and a reasonable official in the circumstances would have appreciated the

high degree of risk involved, including the medical history and observable medical emergency.

57.     Defendants DOE 11 to 20 failed to utilize appropriate policies, training, standards, and

procedures, including California Code of Regulations title 15 § 1027.5 (Safety Checks); California

Commission on Peace Officer Standards and Training ("POST") Learning Domain 31 (Custody); and

Sacramento County Sheriff's Department Operations Order 6-05 (Housing Unit Checks), Deputy Sheriff

Training Manual, and Training Module Re: "Security Rounds and Key Control."

58.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

DEPARTMENT, and JIM COOPER's deficient policies and customs related to supervision and

monitoring of inmates necessary to ensure the safety of inmates and timely to respond to inmates

experiencing a medical emergency enabled Defendants DOE 11 to 20's failure to detect and/or ignoring

DAVID BAREFIELD SR.'s medical emergency.

59.     Around 3:48 a.m., DAVID BAREFIELD SR. was "found on the ground unresponsive" by

Defendants DOE 11 to 20.

60.     Michael Lolling, a registered nurse (RN), reported the following:

(a)     Assessment[:] Pt was found on the ground unresponsive by the sherrifs. Vital signs

were being taken by the nurse. The pt was not responding to outside stimulation. \ Pupils non reactive. no

pulse, no BP, temperature not taken. BS was not taken"

(b)     "Problem[:] The pt was unresponsive and not responding to outside stimulation.

10

(c)      "Intervention[:] CPR was administered the pt at 0349[;] AED was attached at 0350[;] CPR was continued Oxygen was given at 0351[;] CPR stopped at 0353[;] First shock was given to the pt at 0353[;] CPR was restarted[;] Narcan was administered to the pt at 0354[;] EMS arrived at 0356[;] EMS attached their AED to the pt and started performing CPR to the pt at 0359"

(d)      "Evaluation[:] Pt was called at 0420"

61.      DAVID BAREFIELD SR. died in custody.

**Autopsy**

62.      On June 10, 2024, NMS Labs reported fentanyl and methamphetamine detected in DAVID BAREFIELD SR.'s post-mortem femoral blood sample, including "Amphetamine[:] 120 ng/mL," "Methamphetamine[:] 1200 ng/mL," "Fentanyl[:] 7.1 ng/mL," and "Norfentanyl[:] 25 ng/mL."

63.      On June 12, 2024, the Sacramento County Coroner's Office reported that DAVID BAREFIELD SR.'s "Cause of Death" was "Fentanyl and Methamphetamine Intoxication."

64.      Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT falsely reported the facts and circumstances of DAVID BAREFIELD SR.'s death, including identifying the "Manner of Death" as "Natural," "Means of Death" as "Not Applicable (Natural)," and "Location" as "Not Applicable (Natural)." *See* <https://www.sacsheriff.com/pages/transparency.php>.

**California Public Records Act Request**

65.      On July 31, 2024, Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD sent a California Public Records Act (CPRA) request to the custodians of records for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT seeking, *inter alia*, "all records relating to the report, investigation, findings and administrative discipline related to the incarceration and in-custody death of the decedent David Barefield, including all records from the date of the decedent's incarceration beginning on May 12, 2024," including "the name(s) of all involved personnel…"

66.      On August 13, 2024, Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT responded by producing only DAVID BAREFIELD SR.'s

11

"Coroner Report," "Autopsy Report," and "Toxicology Report." Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT withheld and refused to produce any other records or information in response to Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD's records request.

### *Mays* Consent Decree Monitoring

67.     Since January 2020, Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and their personnel, have been subject to a jail conditions consent decree entered in *Mays v. County of Sacramento*, No. 2:18-cv-02081-TLN-CSK, ECF No. 85-1 & 110 (E.D. Cal. Jan. 8, 2020).

68.     On August 14, 2024, *Mays* court-appointed medical experts sent a letter to Defendant COUNTY OF SACRAMENTO relating to "Recent Mortalities at Sacramento County Jail," including "five deaths in the Sacramento County Jails" since "May 2024." Therein, DAVID BAREFIELD SR.'s in-custody death and "recommend[ed] … critical corrective actions" were identified and described. The medical experts determined: "Review of these deaths showed serious system and individual performance issues, including inadequate emergency response, inadequate medical care prior to death, and in one case, callous deliberate indifference to a man who was so obviously gravely ill that even a lay person would see that the patient needed emergent care. . . . Through review of medical records and video footage, we concluded that some of the recent deaths in the jail may have been preventable. We also determined that immediate action must be taken by ACH [Adult Correctional Health] and the Sacramento Sheriff's Office (SSO) to address dangerous deficiencies in current practices."

### POLICY / CUSTOM ALLEGATIONS

69.     Defendant JIM COOPER has served as Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT Sheriff since December 2022.

70.     Defendant JIM COOPER, in his capacity as Sheriff, is and was a final policymaking official for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, including as it relates to the maintenance and operation of jail and detention facilities; training, supervision, and discipline of staff acting under his command; and the safekeeping of

12

inmates/prisoners in his custody. *See* Cal. Const. Art. XI § 1(b); Cal. Pen. Code § 4000; Cal. Pen. Code § 4006; Cal. Gov. Code § 26605; Cal. Gov. Code § 26610. Specifically, Defendant JIM COOPER is and was responsible for the provision of medical and mental health care to inmates/prisoners in his custody at Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities, including assessment of inmates for medical emergencies, medical needs and mental health needs, and all policies, procedures, customs, hiring, staffing, supervision, and training related thereto.

71.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, including subordinate personnel, Defendants JAMES EDDINS and DOE 11 to 20, maintain and/or acted pursuant to inadequate polices, customs, training, and/or supervision, resulting in the following deficiencies:

(a)    failure adequately to observe, monitor, and supervise inmates within the jail;

(b)    failure adequately to staff the jail with necessary officials, staff, and personnel;

(c)    failure adequately to detect and investigate, intervene, and intercede when dangerous and emergency conditions are present inside the jail;

(d)    failure adequately to diagnose, monitor, and treat inmates' necessary and immediate medical needs; and

(e)    failure adequately to summon and provide necessary and immediate medical care for inmates with necessary and immediate medical needs.

72.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, including subordinate personnel, Defendants JAMES EDDINS and DOE 11 to 20, were deliberately indifferent to DAVID BAREFIELD SR.'s safety and health, and knew or should have known that DAVID BAREFIELD SR. was at risk of harm, based on the following circumstances:

(a)    jail staff, including Defendants JAMES EDDINS and DOE 11 to 20, failed adequately to observe, monitor, and supervise inmates within the jail, including DAVID BAREFIELD SR.;

(b)    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

13

1   SHERIFF'S DEPARTMENT, and JIM COOPER failed adequately to staff the jail with necessary

2   officials, staff, and personnel, including during DAVID BAREFIELD SR.'s incarnation;

3          (c)     jail staff, including Defendants JAMES EDDINS and DOE 11 to 20, failed

4   adequately to detect and investigate, intervene, and intercede when dangerous and emergency conditions

5   are present inside the jail, including DAVID BAREFIELD SR.'s medical need;

6          (d)     jail staff, including Defendants JAMES EDDINS and DOE 11 to 20, failed

7   adequately to diagnose, monitor, and treat inmates' necessary and immediate medical needs, including

8   DAVID BAREFIELD SR.'s medical need; and

9          (e)     jail staff, including Defendants JAMES EDDINS and DOE 11 to 20, failed

10   adequately to summon and provide necessary and immediate medical care for inmates with necessary

11   and immediate medical needs, including DAVID BAREFIELD SR.'s medical need.

12        73.    <u>Legal & National Standards</u>: Defendants COUNTY OF SACRAMENTO,

13   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs are

14   inconsistent with state law and widely-accepted standards. For example:

15          (a)     California Code of Regulations title 15 § 1027 (Number of Personnel/Medical

16   Receiving Screening), § 1027.5 (Safety Checks), § 1028 (Access to Treatment), § 1210 (Individualized

17   Treatment Plans), § 1213 (Detoxification Treatment).

18          (b)     National Commission on Correctional Health Care ("NCCHC") Standards for

19   Health Services in Jails, including J-A-01 (Access to Care); J-C-04 (Health Training for Correctional

20   Officers); J-C-07 (Staffing); J-D-08 (Hospitals and Specialty Care); J-E-02 (Receiving Screening); J-E-

21   04 (Initial Health Assessment); J-E-08 (Nursing Assessment Protocols and Procedures); J-E-09

22   (Continuity, Coordination, and Quality of Care During Incarceration); J-F-01 (Ongoing Care for Chronic

23   Illness); and J-F-04 (Medically Supervised Withdrawal and Treatment).

24          (c)     Institute for Medical Quality ("IMQ") Standards, including 110 (Transfer of

25   Inmates with Acute Illness); 204 (Basic Training for Correctional Personnel); 302 (Receiving Screening);

26   303 (Substance Abuse); 304 (Access to Treatment); 306 (Clinic Care); 307 (Health Inventory &

27   Communicable Disease Screening); 318 (Standardized Procedures/Treatment Protocols); 319 (Continuity

28   of Care); and 328 (Health Maintenance).

(d)     American Correctional Association ("ACA") Standards, including 4-ALDF-2A-15 (Staffing); 4-ALDF-5A-04, 4-ALDF-5A-06, 4-ALDF-5A-07 (Substance Abuse Programs); 4-ALDF-7B-10 (Training and Staff Development); 4-ALDF-4C-01 (Access to Care); 4-ALDF-4C-05 (Referrals); 4-ADLF-4C-22 (Health Screens); 4-ALDF-4C-24 (Health Appraisal), 4-ALDF-4C-25 (Health Appraisal); 4-ALDF-4C-36 (Detoxification); 4-ALDF-4C-37 (Management of Chemical Dependency); 4-ALDF-4D-20 (Transfer); 1-HC-1A-01 (Access to Care); 1-HC-4A-05 (Staffing/Referrals); 1-HC-4A-07 (Transfers); 1-HC-1A-19 (Health Screens); 1-HC-1A-22, 1-HC-1A-23 (Health Appraisal); 1-HC-1A-33 (Detoxification); and 1-HC-1A-34 (Management of Chemical Dependency).

74.     *Mays* Consent Decree & Monitoring: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs are largely non-compliant with the terms of the court-ordered consent decree issued in *Mays v. County of Sacramento*, No. 2:18-cv-02081-TLN-CSK, ECF No. 85-1 & 110 (E.D. Cal. Jan. 8, 2020). Therein, the plaintiffs alleged numerous "dangerous, inhumane and degrading conditions" at Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities. In June 2019, Defendant COUNTY OF SACRAMENTO settled the case and agreed, *inter alia*, to changes to jail staffing, facilities, inmate health services, and custodial practices, including the creation and enforcement of polices and trainings that ensure compliance with Americans with Disabilities Act ("ADA") requirements, and improving the delivery of medical care through timely referrals, responses to requests for care and medication disbursement, chronic care treatment plans, appropriate clinic space, and staff training. (<https://www.saccounty.gov/news/latest-news/Pages/County-Jail-Class-Action-Lawsuit-Agreement-Reached.aspx>; <https://www.disabilityrightsca.org/press-release/settlement-approved-in-sacramento-county-jail-class-action-to-ensure-better-treatment>; *see also* <https://www.sacsheriff.com/pages/transparency.php>.) Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities are subject to reporting requirements and quarterly monitoring reports prepared by court-appointed experts, pursuant to the Consent Decree. Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT have failed to achieve compliance with the terms of the consent decree, based on continuous and ongoing monitoring and documented reports. For example:

(a)     The First Monitoring Report of Medical Experts, filed January 20, 2021, found, for 75 total consent decree provisions, substantial compliance with 4 provisions (5%), partial compliance with 15 provisions (20%), non-compliance with 39 provisions (52%), and 17 provisions (23%) were not evaluated. *Mays*, *supra*, ECF No. 136-1 (E.D. Cal. Jan. 20, 2021). Specifically, the review's findings were "deeply concerning." *Id*. For example, "[t]here are serious and systemic issues resulting in harm to patients, including hospitalizations and death," *id*. at 7–8, "[t]he sick call system does not provide timely access to care," *id*. at 8, "[t]here are excessive delays in transporting patient[s] to the hospital," *id*. at 9, and "[t]here are serious nursing and medical quality of care issues," *id*. at 9. The report made an "alarming finding [] that nurses do not notify physicians when a patient's condition is clearly deteriorating, which has resulted in hospitalizations and deaths," and that, even when physicians are notified, "physicians also minimized patient clinical findings and failed to adequately treat their underlying chronic medical conditions." *Id*. at 9. "These cases may reflect a wider cultural issue at the jail in how health care personnel view their obligations to provide timely, appropriate and compassionate care to patients." *Id*. at 9.

(b)     The Second Monitoring Report of Medical Experts, filed October 4, 2021, found, for 75 total consent decree provisions, substantial compliance with 12 provisions (16%), partial compliance with 19 provisions (25%), non-compliance with 37 provisions (49%), and seven provisions (9%) were not evaluated. *Mays*, *supra*, ECF No. 149-1 at 13 (E.D. Cal. Oct. 4, 2021). Specifically, the "review showed that inmates with serious medical needs continue to experience harm as a result of lack of an adequate infrastructure (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and quality of care (e.g. chronic care, mortality review)" and that "[c]onsiderable work remains to achieve Consent Decree compliance." *Id*. at 12. For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." *Id*. at 11–12. The report found that "there has been custody interference in the provision of health care," including where custody staff has denied inmates necessary medical care and, in at least one case, allowed an inmate to "languish[] to near death before intervention took place." *Id*. at 9.

(c)     On March 1, 2022, *Mays* class counsel sent a letter to Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT describing "ongoing jail

16

overcrowding" and reports that "[p]eople told us that they were treated 'like animals' when they asked the deputies passing by … how they could access the health care services they needed." *Mays*, *supra*, ECF No. 153-4 (E.D. Cal. June 3, 2022).

(d)    The Third Monitoring Report of Medical Experts, filed October 25, 2022, found, for 75 total consent decree provisions, substantial compliance with 13 provisions (17%), partial compliance with 22 provisions (29%), non-compliance with 33 provisions (44%), and seven provisions (9%) were not evaluated. *Mays*, *supra*, ECF No. 162-1 at 14 (E.D. Cal. Oct. 25, 2022). Specifically, the "review showed that inmates with serious medical needs continue to experience harm as a result of lack of an adequate infrastructure (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and quality of care (e.g., chronic care, mortality review)" and "[c]onsiderable work remain[ed] to achieve Consent Decree compliance." *Id*. at 13. For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." *Id*. at 10–12. The "review showed continuing harm to patients as a result of population pressures, lack of medical and mental health beds, health care systems issues, and lapses in care." *Id*. at 6. The report found a "practice of providers cutting and pasting notes" which "risks documenting history and physical examinations and education that have not been conducted and, in some cases, simply amounts to falsification of medical records." *Id*. at 28.

(e)    The Fourth Monitoring Report of Medical Experts, filed August 15, 2023, found, for 75 total consent decree provisions, substantial compliance with 25 provisions (33%), partial compliance with 25 provisions (33%), and non-compliance with 25 provisions (33%). *Mays*, *supra*, ECF No. 168-1 at 6 (E.D. Cal. Aug. 15, 2023). Specifically, the "review showed persistence of *critical* issues that impact access to—and quality of care that resulted in serious harm to patients, and places the inmate population at risk of harm if not immediately addressed," including: "Insufficient health care staffing; Insufficient custody staff dedicated to health care delivery; Lack of patient access to care, including custody barriers to care; Lack of evaluation of medical care quality, including mortality reviews; Lack of timely access to specialty services and implementation of recommendations; Failure to deliver ordered care (e.g., cancellation of medication administration); Inadequate evaluation, treatment, and monitoring of patients with substance use disorders; Lack of a Medication Assisted Treatment (MAT) program to induct patients on suboxone or other treatment; [and] Inadequate treatment space and environment of

17

care." *Id*. For example, "[t]he County is not providing timely patient access to specialty services, resulting in delayed diagnosis and treatment." *Id*. at 11–12. A "detailed case reviews show[ed] multiple lapses in care in many records." *Id*. at 13 n.21. The report found that medical "[p]roviders conducted inadequate medical evaluations and treatment leading to deterioration of the patient," including by falsifying medical records and "copy[ing] and past[ing] *previous* examinations into the progress note, *without amending the note to reflect the actual condition of the patient*." *Id*. at 22.

(f)     The Fifth Monitoring Report of the Medical Consent Decree, filed July 16, 2024, found, for 80 total consent decree provisions, substantial compliance with 24 provisions (30%), partial compliance with 31 provisions (41%), and non-compliance with 23 provisions (29%). *Mays*, *supra*, ECF No. 180-1 at 8 (E.D. Cal. July 16, 2024). Specifically, the review found that "there has been ongoing noncompliance with key provisions of the *Mays* Consent Decree that result in ongoing harm to the patient population at Sacramento County Jail. These include: • Lack of custody medical escorts to conduct health care operations; • Custody obstructing access to care, resulting in harm and preventable hospitalization; • RCCC inmates being empowered to control other inmates' access to health services request and grievance forms; • Ongoing lack of privacy in the booking area, causing demonstrable harm to patients[;] • Failure of the access to care system (nurse sick call); • Ongoing serious medication errors caused by the pharmacy system, medical providers, and nurses, resulting in preventable harm and hospitalizations; and • System and quality issues related to medical screening and use of the sobering cell. . . . [W]e are obligated to note that these conditions have existed since the beginning of the *Mays* Consent Decree, are causing ongoing harm, and must be immediately and definitively corrected." *Id*. at 8–9 (fns. omitted).

(g)     On August 19, 2024, *Mays* court-appointed class counsel sent a letter to Defendants SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and JIM COOPER relating to the "wave of deaths in the Sacramento County Jails in recent months." Therein, class counsel determined that, "[h]aving reviewed the surveillance and body-worn camera footage of several recent deaths, we write to again express our deep concern about [Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT]'s failure to respond with humanity and decency to people in need. . . . This callousness on the part of the Sacramento Sheriff's Office is consistent with our reporting over the years. We and the

18

1  court-appointed experts have reported for years about these profound cultural problems. It is

2  commonplace in the jails for custody staff to ignore people in crisis who press the emergency buttons in

3  their cells begging for help. . . . The recent deaths in the jails are a symptom of a larger and long-standing

4  cultural problem with the Sacramento Sheriff's Office."

5      75.   Inadequate Diagnosis, Monitoring, and Care: Defendants COUNTY OF SACRAMENTO,

6  SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain a policy or

7  custom whereby jail staff inadequately diagnose, monitor, and provide care for inmates, including failure

8  to respond to immediate medical needs. For example:

9          (a)   The *Mays* Consent Decree Monitoring Reports of the Medical Experts describe

10  and document persistent and numerous incidents and case reviews where jail staff, including both

11  custody staff and medical staff, failed timely to observe and respond to inmates' immediate medical

12  needs. *See, e.g., Mays, supra*, ECF No. 136-1 (E.D. Cal. Jan. 20, 2021); ECF No. 149-1 (E.D. Cal. Oct.

13  4, 2021); ECF No. 162-1 (E.D. Cal. Oct. 25, 2022); ECF No. 168-1 (E.D. Cal. Aug. 15, 2023); ECF No.

14  180-1 (E.D. Cal. July 16, 2024). Each of these monitoring reports and the incidents described therein are

15  expressly incorporated herein.

16          (b)   On May 5, 2024, 45-year-old inmate Lope Tolosa died at the Sacramento County

17  Jail. Three days earlier, Tolosa was admitted to the jail intoxicated and detoxification housing was

18  ordered. However, medical staff did not medically evaluate Tolosa for withdrawal treatment at any time

19  prior to his death. Nine hours after admission, the nurse who was to conduct withdrawal monitoring

20  made no attempt to locate Tolosa. Tolosa was found minimally responsive inside of his cell by a deputy.

21  In response, the deputy went to another floor of the jail, found a nurse, and told the nurse that Tolosa

22  needed medical attention. But the nurse did not respond to Tolosa's location and instead told the deputy

23  to call downstairs. Tolosa died. The *Mays* medical expert monitors described the incident as follows: "In

24  summary, this case represents a failure to medically evaluate, treat, and monitor the patient who was at

25  risk for alcohol withdrawal and death. It also represents a failure of emergency response. In the mortality

26  review, the Medical Director did not include key system and individual performance issues that needed

27  to be addressed. This fails to meet the requirements of the Consent Decree, and this death may have been

28  preventable."

1      (c)     On July 8, 2023, 43-year-old inmate Michael Prince died at the Sacramento

2 County Jail. On July 2, 2023, Prince was admitted to the jail with a medical history including serious

3 mental illness; noncompliance with medications; neuropathy, peripheral due to diabetes; diabetes

4 mellitus, type 2; elevated blood pressure reading without diagnosis of hypertension; diabetic peripheral

5 neuropathy; body aches; alcohol use disorder; anxiety state, unspecified; bipolar disorder; FOSS III;

6 tested positive for COVID-19; heroin abuse; alcohol abuse; and benzodiazepine withdrawal. From July 2,

7 2023, to July 8, 2023, jail staff failed adequately to house, monitor, and respond to Prince's obvious and

8 deteriorating medical condition. On July 8, 2023, Prince was found dead in his cell. The *Mays* medical

9 expert monitors found: "[R]ecord review showed that for one patient housed on the detox unit, nurses did

10 not conduct any withdrawal monitoring during the six days prior to his death."; and "On 7/2/2023, a

11 patient was admitted to the detox unit with alcohol and opioid substance use disorder but nurses did not

12 monitor the patient for the six days the patient was in the unit. The patient died on the morning of

13 7/8/2023." *Mays*, *supra*, ECF No. 168-1 at 15 (E.D. Cal. Aug. 15, 2023). A civil rights lawsuit was filed.

14 *Estate of Prince v. County of Sacramento*, No. 2:24-cv-00992-KJM-JDP (E.D. Cal.). The case remains

15 pending.

16      (d)     On July 20, 2023, 37-year-old inmate Cody Catanzarite died at the Sacramento

17 County Jail. Catanzarite was admitted and booked into detoxification housing after reporting that he had

18 ingested fentanyl, and he had a history of fentanyl use and alcohol consumption. The intake nurse did not

19 issue routine orders, such as alcohol/opioid withdrawal monitoring, detox medication regimens, or urgent

20 referral to a medical provider. The next day, Catanzarite went into cardiac arrest and died of a drug

21 overdose. The *Mays* medical expert monitors found: "concerns are that after Tier 1 screening, the patient

22 was taken out of the booking loop for processing by custody before Tier 2 medical screening was

23 conducted. In the 5.5 hours before a nurse saw the patient, his COWS score increased from 1 to 9. Given

24 his history of fentanyl and alcohol substance use disorder, starting the patient on opioid and alcohol detox

25 regimens needed to be considered, however because Tier 2 screening was delayed, it was not." *Mays*,

26 *supra*, ECF No. 168-1 at 142 (E.D. Cal. Aug. 15, 2023). A civil rights lawsuit was filed. *Estate of*

27 *Catanzarite v. County of Sacramento*, No. 2:24-cv-01123-DAD-CKD (E.D. Cal.). The case remains

28 pending.

(e)      On May 27, 2023, 47-year-old inmate Norman Fisher Jr. died of "septic shock," "Klebsiella bacteremia," "pneumonia," and "non-traumatic acute kidney failure" at the Sacramento County Jail. Fisher's health significantly deteriorated over the course of several weeks, without intervention by jail staff. Fisher's fellow inmates, including his cellmate and floor trustee, attempted to obtain care for Fisher on several occasions, without avail. The custody staff discouraged complaints and the medical staff failed to address Fisher's immediate medical needs. The jail staff were deliberately indifferent to Fisher's escalating symptoms and complaints throughout May 2023, until he died on May 27, 2023. The *Mays* medical expert monitors found "critical lapses of care" and that "[Fisher] needed to be sent to the [emergency department] much earlier." *Mays*, *supra*, ECF No. 180-1 at 106–108 (E.D. Cal. July 16, 2024). A civil rights lawsuit was filed. *Estate of Fisher v. County of Sacramento*, No. 2:24-cv-00109-DAD-DB (E.D. Cal.). The case remains pending.

(f)      On April 5, 2023, 35-year-old inmate Delion Johnson died of an overdose at the Sacramento County Jail. Johnson was inadequately searched and monitored by jail staff upon intake who failed to detect a "golf-ball sized" baggie of pills in Johnson's jacket. Inside a holding cell, Johnson distributed and ingested drugs over the course of several hours, within sight of an in-cell surveillance camera which was unmonitored by jail staff, and as jail staff walked by but failed to look into the cell while conducting "safety checks." Eventually, Johnson lost consciousness and passed out inside of the cell. Johnson medical emergency was undetected or ignored for more than three hours, as several jail staff members walked by the cell, without observing or checking on Johnson. Eventually, an inmate worker alerted a jail staff member to Johnson's condition. But it was too late and Johnson died. A civil rights lawsuit was filed. *Estate of Johnson v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-01304-KJM-JDP. The case remains pending.

(g)      On July 24, 2022, a 67-year-old inmate (Patient #35) died of sepsis at the Sacramento County Jail. On July 12, 2022, the inmate was admitted to the jail with a medical history including opioid substance use disorder, untreated intestinal cancer, 60 lbs. weight loss, and back surgery. On July 13, 2022, the inmate submitted a health request that he had sepsis and a heart infection but medical staff did not timely address the health request. On July 15, 2022, a medical provider saw the inmate who reported weight loss, intestinal cancer, inability to tolerate solid foods without vomiting, and

rectal bleeding—symptoms which warranted immediate admission to the hospital for medical evaluation. The medical provider ordered labs and follow-up in one month, treating the inmate's condition as routine. The inmate died. On August 22, 2022, the Medical Director completed a preliminary mortality review which did not identify lapses in care. The *Mays* Medical Expert monitors found: "The Medical Director's failure to recognize, acknowledge and address serious lapses in medical care quality is likely not to result in improvement in medical care quality for patient[s] in custody." *Mays* ECF No. 168-1 at 138–139; *Mays* ECF No. 162-1 at 79–84.

(h)      On February 15, 2022, 37-year-old inmate Anthony Galley suffered a seizure caused by severe alcohol withdrawal and died at the Sacramento County Main Jail. On February 13, 2022, Galley was admitted into the jail while intoxicated with a medical history of alcohol use disorder and addiction. Jail staff failed to utilize or implement necessary alcohol detoxification protocols, confined Galley to a holding cell without adequate monitoring, and ignored him until he was found unresponsive and died. *Mays*, *supra*, ECF No. 153-4; *Mays*, *supra*, ECF No. 162-1 at 76. A civil rights lawsuit was filed. *Galley v. County of Sacramento*, No. 2:23-cv-00325-WBS-AC (E.D. Cal.). The case remains pending.

(i)      On September 26, 2021, 44-year-old inmate Anthony Cravotta II was beaten into a coma and suffered a traumatic brain injury at the Sacramento County Main Jail. Cravotta was a mentally ill inmate declared incompetent to stand trial (IST) and awaiting transfer to a state hospital for restorative treatment. Jail staff assigned Cravotta (a white inmate) to share a cell with Lemar Burleson (a Black inmate), another mentally ill inmate, who had an extensive history of violence, including housing in total separation ("T-Sep") housing in isolation from other inmates due to assaultive conduct and documented threats: "said he wanted to kill white people"; "says will assault any cellmates he has"; "Threats to assault anyone he is celled with"; "threatened to assault any inmate he is housed with"; and "said he would assault any inmate he gets." On September 24, 2021, one day after Cravotta and Burleson were housed together, a jail staff member reported a conversation with Cravotta: "he got a new cellmate but 'It's not working out too well'" and "said 'if he gets physical I'll have to defend myself.'" On September 26, 2021, Burleson attacked Cravotta inside their cell, including striking Cravotta several times in the head and face with a "blunt" object. Cravotta lay bleeding and struggling to breathe on the floor of the

22

cell. A custody staff member failed to look into the cell and discovery Cravotta during his "safety check." Multiple streams of Cravotta's blood began to leak from underneath the cell's door into the jail's dayroom which were visible on the jail's closed-circuit television (CCTV) surveillance system but custody staff responsible for monitoring the video feed failed to observe or detect the visible blood streams. More than 22 minutes after the blood streams were visible on the jail's CCTV surveillance system, and about 55 minutes after the last "safety check" by custody staff, an inmate-trustee noticed the streams of blood leaking from under the door of cell, approached the cell for inspection, and observed Cravotta lying on the ground. In response, Burleson pressed the emergency button inside of his cell and reported to custody staff that he "might have killed" his cellmate. Custody staff responding to the scene left Cravotta lying and struggling to breathe on the ground for several minutes, without attempting to stop the bleeding or placing him into a recovery position. A civil rights lawsuit was filed. *Cravotta v. County of Sacramento*, No. 2:22-cv-00167-DJC-AC (E.D. Cal.). The case remains pending.

(j)     On July 24, 2021, inmate Timothy Noble died while withdrawing from opiates at the Sacramento County Main Jail. Days earlier, Noble was booked into the jail and began receiving treatment for opiate withdrawal. Jail staff did not provide Noble with special housing or monitoring. Noble's cellmate observed—but jail staff failed to recognize—that Noble did not eat or drink for two days prior to his death. Sacramento County Sheriff's Department, Report No. 2021-224861; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Noble-2021-.pdf>.

(k)     On August 4, 2020, inmate Travis Welde overdosed at the Sacramento County Main Jail, and died of "hemopericardium due to a ruptured acute myocardial infarction resulting from mixed drug intoxication." Days earlier, Welde was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration." But Welde's urine drug screening test was positive for amphetamines, methamphetamines, THC, MDMA, and opiates. Welde was "engaging in erratic behavior, such as kicking his door and talking nonsensically," and, on August 2, 2020, was transferred to the mental health housing unit. Welde's condition continued to deteriorate, including "smear[ing] feces on himself and his cell walls," "talking to himself" and "yelling unintelligibly," "sweating" or appearing "wet," "flail[ing] his arms," and "sit[ting] and stand[ing] back up repeatedly." On August 3, 2020, Welde told staff that he was "detoxing." But jail staff ignored the

threat that Welde was detoxing because "nursing staff believed Welde was outside the time period for

detoxing from drug use due to the length of time Welde had been in the jail." Later, the jail's mental

health staff concluded that Welde was "gravely disabled" and he was "placed him on the waiting list for

a higher level of mental health care." On August 4, 2020, Welde was "standing naked at the cell door,"

"breathing heavily," and "bouncing back and forth on the balls of his feet." Jail staff asked Welde if he

was okay and, in response, Welde "grunted and shook his head." But jail staff continued to ignore him.

An hour later, Welde was found lying "face down and naked" on the floor. Jail staff continued to ignore

him. Later, jail staff entered the cell and determined that Welde was not breathing and had no pulse.

Sacramento County Sheriff's Department, Report No. 2020-248721; <https://www.sacda.org/wp-

content/uploads/2022/10/ICD-Review-Welde-.pdf>.

(l)     On December 9, 2019, inmate Antonio Thomas was beaten into a coma by

cellmate Joshua Vaden at the Sacramento County Main Jail, and later died from "complications of anoxic

encephalopathy associated with assault." Thomas and Vaden had extensive mental health histories

known to jail staff, and complaints reflecting difficulties with cellmates based on prior incarceration at

the jail. Thomas was held on a probation violation, and Vaden was held on charges of murder. Thomas

and Vaden were housed together in the jail's general population. Vaden submitted a grievance that he did

not want to be housed with Thomas which was ignored by jail staff. Vaden attacked Thomas, who

repeatedly activated the emergency button in his cell during the attack. Jail staff called the cell in

response to the emergency button's activation but, when no response was received, ignored the

emergency button's activation. Later, jail staff received notice from an inmate that there was a "man

down" in the cell. Jail staff responded to the cell and found Thomas unconscious, more than 10 minutes

after the activation of the emergency button inside of the cell. The jail "supervisor's overview" of the

classification and housing of Thomas and Vaden found no deficiencies or policy violations by jail staff.

A civil rights lawsuit was filed. *Estate of Thomas v. County of Sacramento*, No. 2:20-cv-00903-KJM-DB

(E.D. Cal.). The case was settled pre-trial for $1,500,000

(m)     On July 19, 2019, inmate Nicholas Overbey was found dead inside of his cell at

the Sacramento County Main Jail. Overbey was assigned to the jail's special housing but was ignored

and unmonitored by jail staff. Overbey's cellmate pressed the emergency call button located inside of the

24

cell and informed jail staff that Overbey was not breathing. Jail staff responded and found Overbey lying on his back foaming at the mouth. Jail staff rubbed Overbey's sternum causing blood and other fluids to expel from his nose and mouth. Overbey's cellmate reported that he "had not been moving for at least a day." Sacramento County Sheriff's Department, Report No. 2019-255337; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-Overbey.pdf>.

(n)     On July 8, 2019, inmate Bryan Debbs was beaten, stabbed, and choked during a nearly 30-minute continuous assault by cellmate Christian Ento at the Sacramento County Main Jail, and later died of "complications of neck compression." Days earlier, Debbs and Ento were classified by jail staff as "gravely disabled" as housed together in a continuously video-monitored cell. Jail staff failed to observe the monitor as Ento assaulted Debbs. A civil rights lawsuit was filed and partially settled for $600,000. *Estate of Debbs v. County of Sacramento*, No. 2:20-cv-01153-TLN-DB (E.D. Cal.). The remainder of the case is pending.

(o)     On June 11, 2019, inmate Andrew Armstead overdosed at the Sacramento County Main Jail, and died of "methamphetamine intoxication." Armstead was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration." A day after booking, Armstead was summoned for a classification interview but failed to appear. Later, jail staff observed Armstead inside of his cell and non-responsive on a bunk. Later, Armstead's cellmate pressed the emergency intercom button inside the cell and reported that Armstead was non-responsive. Later, jail staff responded to the cell and observed that Armstead had no pulse. Armstead's blood was found to contain amphetamine and methamphetamine. Sacramento County Sheriff's Department, Report No. 2019-204534; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-Armstead.pdf>.

76.     Admissions: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER have admitted that the inmate care provided at correctional facilities under their care is deficient. For example:

(a)     In a June 2024 statement to the press related to three in-custody deaths occurring within one and one-half months, Defendants SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and JIM COOPER's spokesperson, sergeant Amar Gandhi, stated: "Medical care seems to be the number one issue right now, of everything going on in our facilities. . . . Right now, there's a very clear gap in the

medical care required and what's being given." <u>ABC10</u>, *County Jail inmates have died in the past month and a half. What's going on?* (June 20, 2024), available at:

<https://www.abc10.com/article/news/local/sacramento-county-officials-talk-about-recent-jail-deaths/103-9cf90a3c-2b0f-4153-929a-287a3eda0e0b>.

(b)     On September 27, 2023, in a press conference related to arrests after a medical assistant and five others were allegedly found to be providing drugs, cell phones, and other materials to inmates in-custody, Defendant JIM COOPER stated: "This all revolves around jail medical (staff). It's a big issue. They're inept. . . . Their method is, when there's a problem, it's just easier to send somebody out (to the emergency room). That's not the way you do it." <u>The Sacramento Bee</u>, *'I'm at my breaking point': Sacramento sheriff calls for jail health care overhaul* (Sep. 27, 2023), available at: <https://www.sacbee.com/news/local/article279795054.html>.

77.     <u>Delayed Investigations & Inadequate Re-Training</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain a deficient policy and custom of unreasonable delays in investigating in-custody incidents, injuries, and deaths occurring at jail facilities, including personnel's potential misconduct and policy violations and the need for new or different policies and procedures to prevent future harm. Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT were obligated but failed timely to create and implement policies related to "Review of Custody Death," pursuant to the *Mays* Consent Decree. For example:

(a)     The Report on Suicide Prevention Practices Within the Sacramento County Jail System, filed July 31, 2018, found that "the Sacramento County Jail System does *not* currently engage in a viable mortality review process…" *Mays*, *supra*, ECF No. 1-4 at 57 (E.D. Cal. July 31, 2018).

(b)     The First Monitoring Report of Medical Experts, filed January 20, 2021, found "noncompliance." *Mays*, *supra*, ECF No. 136-1 at 50–52 (E.D. Cal. Jan. 20, 2021). The First Monitoring Report of Suicide Prevention Practices, filed January 20, 2021, found: "This provision is in Non-Compliance." *Mays*, *supra*, ECF No. 136-3 at 76–77 (E.D. Cal. Jan. 20, 2021).

(c)     The Second Monitoring Report of Medical Experts, filed October 4, 2021, found that "[t]he Mortality Review process fails to identify problems with health care systems and quality of

26

care," for example, "[n]one of the reviews assessed the appropriateness of the care provided, the effectiveness of relevant policies and procedures, or identified opportunities for improvement in the delivery of care in order to prevent future deaths" and "[t]here were no corrective action plans developed for any of the deaths, which seems largely due to the failure to recognize that one was needed." *Mays*, *supra*, ECF No. 149-1 at 64 (E.D. Cal. Oct. 4, 2021).

(d)     The Third Monitoring Report of Medical Experts, filed October 25, 2022, found that "[t]he Mortality Review process fails to identify problems with health care systems and quality of care," for example, that "reviews still lack identification and analysis of lapses in care, systemic issues, and opportunities for improvement" and that, "*in several cases, significant lapses in care and system issues were unrecognized, glossed over, or ignored all together.*" *Mays*, *supra*, ECF No. 162-1 at 13 (E.D. Cal. Oct. 25, 2022).

(e)     The Fourth Monitoring Report of Medical Experts, filed August 15, 2023, found "[l]ack of evaluation of medical care quality, including mortality reviews." *Mays*, *supra*, ECF No. 168-1 at 6 (E.D. Cal. Aug. 15, 2023). Specifically, "[i]n the over 3 years since the Consent Decree has been in effect, the County has not developed and implemented any system for evaluation of medical care quality to ensure that it meets contemporary standards of medical care." *Id*. at 13. For example, "*identification and evaluation of medical care quality is virtually absent, even in mortality records that show multiple lapses in care*" and "[c]orrective action plans are exclusively devoted to system and nursing issues, not medical care quality issues." *Id*. at 13. "This has been a persistent issue throughout monitoring resulting in adverse patient outcomes." *Id*. at 13–14.

(h)     The Fifth Monitoring Report of the Medical Consent Decree, filed July 16, 2024, found that "some reviews do not identify critical lapses in care," "[m]edical and mental health mortality reviews are conducted independently and not integrated for analysis of problems," "[p]reliminary mortality reviews are not timely finalized," and "there is no evidence that corrective action plans are timely and fully implemented." *Mays*, *supra*, ECF No. 180-1 at 105–111 (E.D. Cal. July 16, 2024).

78.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER do not meaningfully discipline, re-train, correct, or otherwise penalize jail staff involved in critical incidents where preventable deaths and injuries are sustained by

27

inmates, including those described above. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's routine failure to hold jail staff accountable has created and encouraged an environment where jail staff believe they can "get away with anything."

79.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of the deficient policies or customs because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons, including the death of DAVID BAREFIELD SR.

80.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's inadequate policies, customs, training, supervision, and control of personnel and inmates was a moving force behind and contributed to the death of DAVID BAREFIELD SR.

### FIRST CLAIM

### Unreasonable Post-Arrest Care

### (U.S. Const. Amend. IV; 42 U.S.C. § 1983)

81.     Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, and DOE 1 to 10.

82.     The allegations of the preceding paragraphs 1 to 64 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

83.     *Individual Liability*: Defendants DOE 1 to 10 inadequately supervised, monitored, and responded to DAVID BAREFIELD SR., putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of the Fourth Amendment to the United States Constitution.

84.     *Municipal / Supervisory Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and KATHERINE LESTER maintained policies or customs

28

of action and inaction resulting in harm to DAVID BAREFIELD SR., in violation of the Fourth Amendment to the United States Constitution.

85.     Defendants KATHERINE LESTER and DOE 1 to 10's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

86.     DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, and DOE 1 to 10's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive compensatory (survival) and nominal damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, and DOE 1 to 10; and punitive damages against Defendants KATHERINE LESTER and DOE 1 to 10.

WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder appears.

### SECOND CLAIM

**Deliberate Indifference**

**(U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

87.     Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 11 to 20.

88.     The allegations of the preceding paragraphs 1 to 80 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

89.     *Individual Liability*: Defendants JAMES EDDINS and DOE 11 to 20 inadequately supervised, monitored, and responded to DAVID BAREFIELD SR., putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of the Fourteenth Amendment to the United States Constitution.

90.     *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO,

29

1   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or

2   customs of action and inaction resulting in harm to DAVID BAREFIELD SR., in violation of the

3   Fourteenth Amendment to the United States Constitution.

4   91.   Defendants JIM COOPER, JAMES EDDINS, and DOE 11 to 20's actions and inactions

5   were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights,

6   or were wantonly or oppressively done.

7   92.   DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants

8   COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

9   COOPER, JAMES EDDINS, and DOE 11 to 20's actions and inactions, entitling Plaintiff ESTATE OF

10   DAVID BAREFIELD SR. to receive compensatory (survival) and nominal damages against Defendants

11   COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

12   COOPER, JAMES EDDINS, and DOE 11 to 20; and punitive damages against Defendants JIM

13   COOPER, JAMES EDDINS, and DOE 11 to 20.

14   WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder

15   appears.

16   **THIRD CLAIM**

17   **Title II of the Americans with Disabilities Act**

18   **(42 U.S.C. § 12101, *et seq.*)**

19   93.   Plaintiff ESTATE OF DAVID BAREFIELD SR. (pursuant to California Code of Civil

20   Procedure § 377.30) asserts this Claim against Defendants CITY OF SACRAMENTO, SACRAMENTO

21   POLICE DEPARTMENT, COUNTY OF SACRAMENTO, and SACRAMENTO COUNTY

22   SHERIFF'S DEPARTMENT.

23   94.   The allegations of the preceding paragraphs 1 to 92 are realleged and incorporated, to the

24   extent relevant and as if fully set forth in this Claim.

25   95.   Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT,

26   COUNTY OF SACRAMENTO, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT qualify

27   as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104. DAVID

28   BAREFIELD SR. had an impairment that substantially limited one or more major life activities and had a

30

record of such an impairment.

96.     *Vicarious Liability*: Defendants JAMES EDDINS and DOE 1 to 20 failed reasonably to accommodate DAVID BAREFIELD SR.'s disability, where they could have provided a reasonable accommodation, including by, *inter alia*, conducting an adequate medical screening for DAVID BAREFIELD SR.; issuing routine medical orders for DAVID BAREFIELD SR., such as withdrawal assessments, alcohol and opioid detoxification medication regimens, or an urgent referral to a medical provider; conducting a timely medical screening for DAVID BAREFIELD SR.; transferring DAVID BAREFIELD SR. to a facility that could provide necessary medical care or treatment; monitoring DAVID BAREFIELD SR. based on an immediate medical need; and/or timely responding to DAVID BAREFIELD SR. based on an immediate medical need, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

97.     *Municipal Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

98.     Plaintiff DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive compensatory (survival) and nominal damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder appears.

\ \ \

\ \ \

\ \ \

1

**FOURTH CLAIM**

2

**§ 504 of the Rehabilitation Act**

3

**(29 U.S.C. § 701, *et seq*.)**

4       99.      Plaintiff ESTATE OF DAVID BAREFIELD SR. (pursuant to California Code of Civil

5   Procedure § 377.30) asserts this Claim against Defendants CITY OF SACRAMENTO, SACRAMENTO

6   POLICE DEPARTMENT, COUNTY OF SACRAMENTO, and SACRAMENTO COUNTY

7   SHERIFF'S DEPARTMENT.

8       100.    The allegations of the preceding paragraphs 1 to 92 are realleged and incorporated, to the

9   extent relevant and as if fully set forth in this Claim.

10      101.    Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT,

11  COUNTY OF SACRAMENTO, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT qualify

12  as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104. Defendants

13  CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF

14  SACRAMENTO, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT receive federal

15  financial assistance. DAVID BAREFIELD SR. had an impairment that substantially limited one or more

16  major life activities and had a record of such an impairment.

17      102.    *Vicarious Liability*: Defendants JAMES EDDINS and DOE 1 to 20 failed reasonably to

18  accommodate DAVID BAREFIELD SR.'s disability, where they could have provided a reasonable

19  accommodation, including by, *inter alia*, conducting an adequate medical screening for DAVID

20  BAREFIELD SR.; issuing routine medical orders for DAVID BAREFIELD SR., such as withdrawal

21  assessments, alcohol and opioid detoxification medication regimens, or an urgent referral to a medical

22  provider; conducting a timely medical screening for DAVID BAREFIELD SR.; transferring DAVID

23  BAREFIELD SR. to a facility that could provide necessary medical care or treatment; monitoring

24  DAVID BAREFIELD SR. based on an immediate medical need; and/or timely responding to DAVID

25  BAREFIELD SR. based on an immediate medical need, with deliberate indifference or reckless

26  disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

27      103.    *Municipal Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE

28  DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

32

1  SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction

2  resulting in harm to DAVID BAREFIELD SR., with deliberate indifference or reckless disregard, in

3  violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

4         104.    Plaintiff DAVID BAREFIELD SR. was injured as a direct and proximate result of

5  Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE

6  LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT,

7  JIM COOPER, JAMES EDDINS, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE

8  OF DAVID BAREFIELD SR. to receive compensatory (survival) and nominal damages against

9  Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF

10  SACRAMENTO, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

11         WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder

12  appears.

13  **FIFTH CLAIM**

14  **Unwarranted Interference with Familial Association**

15  **(U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

16         105.    Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and

17  LOIS BAREFIELD assert this Claim against Defendants CITY OF SACRAMENTO, SACRAMENTO

18  POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO

19  COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20.

20         106.    The allegations of the preceding paragraphs 1 to 92 are realleged and incorporated, to the

21  extent relevant and as if fully set forth in this Claim.

22         107.    Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and

23  LOIS BAREFIELD shared a close relationship and special bond with DAVID BAREFIELD SR., which

24  included deep attachments, commitments, and distinctively personal aspects of their lives and was typical

25  of a loving relationship, prior to his death. Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD,

26  FINAS BAREFIELD, and LOIS BAREFIELD frequently visited and spoke with DAVID BAREFIELD

27  SR. and shared a loving familial relationship.

28         108.    *Municipal / Supervisory / Individual Liability*: Defendants CITY OF SACRAMENTO,

33

SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD's familial association with DAVID BAREFIELD SR., in the violation of the Fourteenth Amendment to the United States Constitution.

109.    Defendants KATHERINE LESTER, JIM COOPER, JAMES EDDINS, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

110.    Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD were injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory (wrongful death) and nominal damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20; and punitive damages against Defendants KATHERINE LESTER, JIM COOPER, JAMES EDDINS, and DOE 1 to 20.

WHEREFORE, Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD pray for relief as hereunder appears.

## SIXTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. I; 42 U.S.C. § 1983)

111.    Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD assert this Claim against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20.

112.    The allegations of the preceding paragraphs 1 to 92 are realleged and incorporated, to the

34

extent relevant and as if fully set forth in this Claim.

113.    Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD shared a close relationship and special bond with DAVID BAREFIELD SR., which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a loving relationship, prior to his death. Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD frequently visited and spoke with DAVID BAREFIELD SR. and shared a loving familial relationship.

114.    *Municipal / Supervisory / Individual Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD's familial association with DAVID BAREFIELD SR., in the violation of the First Amendment to the United States Constitution.

115.    Defendants KATHERINE LESTER, JIM COOPER, JAMES EDDINS, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

116.    Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD were injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory (wrongful death) and nominal damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20; and punitive damages against Defendants KATHERINE LESTER, JIM COOPER, JAMES EDDINS, and DOE 1 to 20.

WHEREFORE, Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD pray for relief as hereunder appears.

## SEVENTH CLAIM

### Unreasonable Post-Arrest Care

### (Cal. Const. Art. I § 13)

117.    Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, and DOE 1 to 10.

118.    The allegations of the preceding paragraphs 1 to 64 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

119.    *Individual Liability*: Defendants DOE 1 to 10 inadequately supervised, monitored, and responded to DAVID BAREFIELD SR., putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of Article I, Section 13 of the California Constitution.

120.    *Municipal / Supervisory Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and KATHERINE LESTER maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., in violation of Article I, Section 13 of the California Constitution.

121.    *Vicarious Liability*: Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code § 815.2(a) for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants KATHERINE LESTER and DOE 1 to 10.

122.    Defendants KATHERINE LESTER and DOE 1 to 10's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

123.    DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, and DOE 1 to 10's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive compensatory (survival) and nominal damages against Defendants CITY OF SACRAMENTO,

36

SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, and DOE 1 to 10; and punitive

damages against Defendants KATHERINE LESTER and DOE 1 to 10.

WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder

appears.

### EIGHTH CLAIM

**Failure to Summon Medical Care**

**(Cal. Gov. Code § 845.6)**

124.    Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to

California Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO,

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE

11 to 20.

125.    The allegations of the preceding paragraphs 1 to 104 are realleged and incorporated, to the

extent relevant and as if fully set forth in this Claim.

126.    *Individual Liability*: Defendants JAMES EDDINS and DOE 11 to 20 knew or had reason

to know that DAVID BAREFIELD SR. was in need of immediate medical care and failed to take

reasonable action to summon such medical care, in violation of California Government Code § 845.6.

127.    *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO,

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or

customs of action and inaction resulting in harm to DAVID BAREFIELD SR., in violation of California

Government Code § 845.6.

128.    *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO and SACRAMENTO

COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat*

*superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately

caused by the acts and omissions of employees acting within the scope of employment, including

Defendants JIM COOPER, JAMES EDDINS, and DOE 11 to 20.

129.    Defendants JIM COOPER, JAMES EDDINS, and DOE 11 to 20's actions and inactions

constituted oppression, fraud, and/or malice resulting in great harm.

130.    DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants

37

1  COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

2  COOPER, JAMES EDDINS, and DOE 11 to 20's actions and inactions, entitling Plaintiff ESTATE OF

3  DAVID BAREFIELD SR. to receive compensatory (survival) and nominal damages against Defendants

4  COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

5  COOPER, JAMES EDDINS, and DOE 11 to 20; and punitive damages against Defendants JIM

6  COOPER, JAMES EDDINS, and DOE 11 to 20.

7        WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder

8  appears.

9  **NINTH CLAIM**

10  **California Public Records Act**

11  **(Cal. Gov. Code § 7920.000 *et seq.*)**

12        131.    Plaintiffs ESTATE OF DAVID BAREFIELD SR. (pursuant to Cal. Code Civ. Proc. §

13  377.30), DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS

14  BAREFIELD assert this Claim against Defendants COUNTY OF SACRAMENTO and SACRAMENTO

15  COUNTY SHERIFF'S DEPARTMENT.

16        132.    The allegations of the preceding paragraphs 1 to 66 are realleged and incorporated, to the

17  extent relevant and as if fully set forth in this Claim.

18        133.    Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

19  DEPARTMENT failed to produce public records, including in a timely and complete manner, in

20  violation of California Government Code § 7920.000 *et seq*.

21        134.    Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON

22  BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD were injured as a direct and proximate

23  result of Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

24  DEPARTMENT's actions and inactions, entitling them to receive declaratory and injunctive relief

25  against Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

26  DEPARTMENT.

27        WHEREFORE, Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II,

28  AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD pray for relief as hereunder

appears.

## TENTH CLAIM

### Tom Bane Civil Rights Act

### (Cal. Civ. Code § 52.1)

135.     Plaintiffs ESTATE OF DAVID BAREFIELD SR. (pursuant to California Code of Civil Procedure § 377.30), DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD assert this Claim against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20.

136.     The allegations of the preceding paragraphs 1 to 127 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

Unreasonable Post-Arrest Care

137.     *Individual Liability*: Defendants DOE 1 to 10 inadequately supervised, monitored, and responded to DAVID BAREFIELD SR., putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, with deliberate indifference or reckless disregard, in violation of the Fourth Amendment to the United States Constitution; and Article I, Section 13 of the California Constitution.

138.     *Municipal / Supervisory Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and KATHERINE LESTER maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., with deliberate indifference or reckless disregard, in violation of the Fourth Amendment to the United States Constitution; and Article I, Section 13 of the California Constitution.

Deliberate Indifference

139.     *Individual Liability*: Defendants JAMES EDDINS and DOE 1 to 20 inadequately supervised, monitored, and responded to DAVID BAREFIELD SR., putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, with

39

deliberate indifference or reckless disregard, in violation of the Fourteenth Amendment to the United States Constitution; and Article I, Section 7(a) of the California Constitution.

140.   *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., with deliberate indifference or reckless disregard, in violation of the Fourteenth Amendment to the United States Constitution; and Article I, Section 7(a) of the California Constitution.

<u>Title II of the Americans with Disabilities Act & § 504 of the Rehabilitation Act</u>

141.   *Vicarious Liability*: Defendants JAMES EDDINS and DOE 1 to 20 failed reasonably to accommodate DAVID BAREFIELD SR.'s disability, where they could have provided a reasonable accommodation, including by, *inter alia*, conducting an adequate medical screening for DAVID BAREFIELD SR.; issuing routine medical orders for DAVID BAREFIELD SR., such as withdrawal assessments, alcohol and opioid detoxification medication regimens, or an urgent referral to a medical provider; conducting a timely medical screening for DAVID BAREFIELD SR.; transferring DAVID BAREFIELD SR. to a facility that could provide necessary medical care or treatment; monitoring DAVID BAREFIELD SR. based on an immediate medical need; and/or timely responding to DAVID BAREFIELD SR. based on an immediate medical need, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; and the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

142.   *Municipal Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; and the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

<u>Unwarranted Interference with Familial Association</u>

143.   *Municipal / Supervisory / Individual Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO,

40

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD's familial association with DAVID BAREFIELD SR., with deliberate indifference or reckless disregard, in violation of the First and Fourteenth Amendments to the United States Constitution; and Article I, Section 7(a) of the California Constitution.

<u>Failure to Summon Medical Care</u>

144.    *Individual Liability*: Defendants JAMES EDDINS and DOE 11 to 20 knew or had reason to know that DAVID BAREFIELD SR. was in need of immediate medical care and failed to take reasonable action to summon such medical care, with deliberate indifference or reckless disregard, in violation of California Government Code § 845.6.

145.    *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., with deliberate indifference or reckless disregard, in violation of California Government Code § 845.6.

<u>California Public Records Act</u>

146.    Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT failed to produce public records, including in a timely and complete manner, with deliberate indifference or reckless disregard, in violation of California Government Code § 7920.000 *et seq*.

<u>(Allegations Common to All Theories)</u>

147.    *Vicarious Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants KATHERINE LESTER, JIM COOPER, JAMES EDDINS, and/or DOE 1 to 20.

148.    Defendants KATHERINE LESTER, JIM COOPER, JAMES EDDINS, and DOE 1 to

41

20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

149.    DAVID BAREFIELD SR. and Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD were injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20's actions and inactions, entitling Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD to receive compensatory (survival and wrongful death) and treble damages and penalties against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20; and punitive damages against Defendants KATHERINE LESTER, JIM COOPER, JAMES EDDINS, and DOE 1 to 20.

WHEREFORE, Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD pray for relief as hereunder appears.

## ELEVENTH CLAIM

### Intentional Infliction of Emotional Distress

150.    Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, JAMES EDDINS, and DOE 1 to 20.

151.    The allegations of the preceding paragraphs 1 to 149 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

152.    *Individual Liability*: Defendants JAMES EDDINS and DOE 1 to 20 engaged in outrageous conduct, including by inadequately supervising, monitoring, and responding to DAVID BAREFIELD SR., in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, with intent or reckless disregard of the probability that DAVID BAREFIELD SR. would suffer emotional

42

distress and he did suffer severe emotional distress.

153.     *Vicarious Liability*: Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a) for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants DOE 1 to 10.

154.     Defendants JAMES EDDINS and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

155.     DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants JAMES EDDINS and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive compensatory (survival) and nominal damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, JAMES EDDINS, and DOE 1 to 20; and punitive damages against Defendants JAMES EDDINS and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder appears.

### TWELFTH CLAIM

#### Negligence

156.     Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20.

157.     The allegations of the preceding paragraphs 1 to 155 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

158.     *Individual Liability*: Defendants JAMES EDDINS and DOE 1 to 20 owed DAVID BAREFIELD SR. a duty of care and breached that duty, including by inadequately supervising, monitoring, and responding to DAVID BAREFIELD SR., in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

43

159.    *Supervisory Liability*: Defendants KATHERINE LESTER and JIM COOPER owed DAVID BAREFIELD SR. a duty of care, including (a) through Defendants KATHERINE LESTER and JIM COOPER's own conduct in creating or increasing an unreasonable risk of harm to DAVID BAREFIELD SR.; (b) through Defendants KATHERINE LESTER and JIM COOPER's special relationships (employer-employee) with Defendants JAMES EDDINS and/or DOE 1 to 20; and/or (c) through Defendants KATHERINE LESTER and JIM COOPER's special relationships (public protection and/or jailer-prisoner) with, and affirmative duty to protect, DAVID BAREFIELD SR., and breached that duty including by maintaining policies or customs of action and inaction which resulted in harm to DAVID BAREFIELD SR. in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

160.    *Municipal Liability*: Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., in violation of California Government Code § 845.6, California Code of Regulations title 15 § 1027, and California Code of Regulations title 15 § 1027.5.

161.    *Vicarious Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants KATHERINE LESTER, JIM COOPER, JAMES EDDINS, and/or DOE 1 to 20.

162.    Defendants KATHERINE LESTER, JIM COOPER, JAMES EDDINS, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

163.    DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive compensatory (survival) damages against Defendants CITY OF

44

1  SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF

2  SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES

3  EDDINS, and DOE 1 to 20; and punitive damages against Defendants KATHERINE LESTER, JIM

4  COOPER, JAMES EDDINS, and DOE 1 to 20.

5      WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder

6  appears.

7                          **THIRTEENTH CLAIM**

8                          **Wrongful Death**

9                     **(Cal. Code Civ. Proc. § 377.60)**

10     164.    Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD assert this Claim against

11 Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE

12 LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT,

13 JIM COOPER, JAMES EDDINS, and DOE 1 to 20.

14     165.    The allegations of the preceding paragraphs 1 to 163 are realleged and incorporated, to the

15 extent relevant and as if fully set forth in this Claim.

16     166.    DAVID BAREFIELD SR. and Plaintiffs DAVID BAREFIELD II and AARON

17 BAREFIELD shared a natural parent-child relationship with DAVID BAREFIELD SR. and DAVID

18 BAREFIELD SR. held out Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD as his own.

19 For example, DAVID BAREFIELD SR. frequently visited and spoke with Plaintiffs DAVID

20 BAREFIELD II and AARON BAREFIELD and shared a loving father-son relationship, prior to DAVID

21 BAREFIELD SR.'s death. DAVID BAREFIELD SR. is the biological parent of Plaintiffs DAVID

22 BAREFIELD II and AARON BAREFIELD, and Plaintiffs DAVID BAREFIELD II and AARON

23 BAREFIELD are DAVID BAREFIELD SR.'s heirs and successors-in-interest.

24     167.    *Individual Liability*: Defendants JAMES EDDINS and DOE 1 to 20 caused DAVID

25 BAREFIELD SR.'s death by wrongful act and neglect, including by inadequately supervising,

26 monitoring, and responding to DAVID BAREFIELD SR., in violation of the United States and

27 California Constitutions, federal and state laws, regulations, policies, standards, general orders,

28 procedures, training, national and local standards, and/or California Civil Code § 1714(a).

                              45

168.   *Municipal / Supervisory Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER caused DAVID BAREFIELD SR.'s death by wrongful act and neglect, including by maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR. in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

169.   *Vicarious Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants KATHERINE LESTER, JIM COOPER, JAMES EDDINS, and/or DOE 1 to 20.

170.   Defendants KATHERINE LESTER, JIM COOPER, JAMES EDDINS, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

171.   DAVID BAREFIELD SR. died as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20's actions and inactions, entitling Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD to receive compensatory (wrongful death) damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS, and DOE 1 to 20; and punitive damages against Defendants KATHERINE LESTER, JIM COOPER, JAMES EDDINS, and DOE 1 to 20.

WHEREFORE, Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD pray for relief as hereunder appears.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD seek Judgment as follows:

46

1.     For an award of compensatory, general, special, and nominal damages (including survival and wrongful death damages under federal and state law) against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS and DOE 1 to 20, in excess of $20,000,000, according to proof at trial;

2.     For an award of exemplary/punitive damages against Defendants KATHERINE LESTER, JIM COOPER, JAMES EDDINS and DOE 1 to 20, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done; and/or constituted oppression, fraud, or malice resulting in great harm;

3.     For funeral and/or burial expenses;

4.     For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMES EDDINS and DOE 1 to 20, pursuant to California Civil Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT pursuant to California Civil Code § 818);

5.     For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794, 42 U.S.C. § 12205, California Civil Code § 52.1, California Code of Civil Procedure § 1021.5, and any other statute as may be applicable;

6.     For interest; and

\ \ \

\ \ \

\ \ \

\ \ \

47

7.     For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: December 10, 2024                    Respectfully Submitted,

By: _____
       Mark E. Merin
       Paul H. Masuhara
       LAW OFFICE OF MARK E. MERIN
       1010 F Street, Suite 300
       Sacramento, California 95814
       Telephone: (916) 443-6911
       Facsimile: (916) 447-8336

       Robert L. Chalfant
       LAW OFFICE OF ROBERT L. CHALFANT
       13620 Lincoln Way, Suite 325
       Auburn, California 95603
       Telephone: (916) 647-7728

          Attorneys for Plaintiffs
          ESTATE OF DAVID BAREFIELD SR.,
          DAVID BAREFIELD II, AARON BAREFIELD,
          FINAS BAREFIELD, and LOIS BAREFIELD

## **JURY TRIAL DEMAND**

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD.

Dated: December 10, 2024                    Respectfully Submitted,

By: _____

    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone: (916) 443-6911
    Facsimile: (916) 447-8336

    Robert L. Chalfant
    LAW OFFICE OF ROBERT L. CHALFANT
    13620 Lincoln Way, Suite 325
    Auburn, California 95603
    Telephone: (916) 647-7728

    Attorneys for Plaintiffs
    ESTATE OF DAVID BAREFIELD SR.,
    DAVID BAREFIELD II, AARON BAREFIELD,
    FINAS BAREFIELD, and LOIS BAREFIELD