1  Mark E. Merin (State Bar No. 043849)
   Paul H. Masuhara (State Bar No. 289805)
2  LAW OFFICE OF MARK E. MERIN
3  1010 F Street, Suite 300
   Sacramento, California 95814
4  Telephone:     (916) 443-6911
   Facsimile:     (916) 447-8336
5  E-Mail:        mark@markmerin.com
                  paul@markmerin.com
6
7  Robert L. Chalfant (State Bar No. 203051)
   LAW OFFICE OF ROBERT L. CHALFANT
8  13620 Lincoln Way, Suite 325
   Auburn, California 95603
9  Telephone:     (916) 647-7728
   E-Mail:        robert@rchalfant.com
10
11   Attorneys for Plaintiffs
     ESTATE OF DAVID BAREFIELD SR.,
12   DAVID BAREFIELD II, AARON BAREFIELD,
     FINAS BAREFIELD, and LOIS BAREFIELD
13

14                UNITED STATES DISTRICT COURT

15             EASTERN DISTRICT OF CALIFORNIA

16                 SACRAMENTO DIVISION

17  ESTATE OF DAVID BAREFIELD SR.,        Case No. 2:24-cv-03427-TLN-JDP
    DAVID BAREFIELD II, AARON BAREFIELD,
18  FINAS BAREFIELD, and LOIS BAREFIELD,  **FIRST AMENDED COMPLAINT
                                          FOR VIOLATION OF CIVIL AND
19                  Plaintiffs,           CONSTITUTIONAL RIGHTS**

20  vs.                                   **DEMAND FOR JURY TRIAL**

21  CITY OF SACRAMENTO, SACRAMENTO
    POLICE DEPARTMENT, KATHERINE
22  LESTER, SEADMAN, COUNTY OF
    SACRAMENTO, SACRAMENTO COUNTY
23  DEPARTMENT OF HEALTH SERVICES, ERIC
    SERGIENKO, JAMES EDDINS, MICHAEL
24  LOLLING, SACRAMENTO COUNTY
    SHERIFF'S DEPARTMENT, JIM COOPER,
25  DAVID GODWIN, MATTHEW BLANCO,
    LEWIS, and DOE 1 to 5,
26
27                  Defendants.

28

                              1

## INTRODUCTION

55-year-old DAVID BAREFIELD SR. was denied necessary medical attention as an arrestee following arrest by police officers employed by the SACRAMENTO POLICE DEPARTMENT, and as a pretrial detainee at the Sacramento County Main Jail by jail staff employed by the SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT resulting in his death on May 12, 2024.

## JURISDICTION & VENUE

1.      This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities protected by the U.S. Constitution). This Court has jurisdiction of the state claims under 28 U.S.C. § 1367.

2.      Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3.      Intradistrict venue is proper in the Sacramento Division of the Eastern District of California pursuant to Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Sacramento, California.

## EXHAUSTION

4.      On May 17, 2024, the ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD submitted a government claim to the COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT relating to the claims asserted in this action. (Claim No. L2400390-0001.)

5.      On June 10, 2024, the COUNTY OF SACRAMENTO issued a "Notice of Rejection of Claim."

6.      On November 12, 2024, the ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD submitted a government claim to the CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT relating to the claims asserted in this action. (Claim No. 4A2411G2HZB-0001, C4665C9045-0002-0l,

2

1   C4665C9045-0003-01, C4665C9045-0004-01, C4665C9045-0005-01.)

2       7.      On November 21, 2024, the CITY OF SACRAMENTO issued a "Notice of Claim

3   Rejection."

4                                    **PARTIES**

5       8.      Plaintiff ESTATE OF DAVID BAREFIELD SR. appears by and through real-parties-in-

6   interest Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD, the biological children of DAVID

7   BAREFIELD SR., who bring this action pursuant to California Code of Civil Procedure § 377.30.

8   Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD bring this action as the successors-in-

9   interest on behalf of DAVID BAREFIELD SR. Declarations regarding Plaintiffs DAVID BAREFIELD

10  II and AARON BAREFIELD's status as the successors-in-interest to DAVID BAREFIELD SR. are filed

11  as ECF No. 1-1, 1-2, pursuant to California Code of Civil Procedure § 377.32.

12      9.      Plaintiff DAVID BAREFIELD II is a resident of the County of Sacramento, California.

13  Plaintiff DAVID BAREFIELD II is the biological son of DAVID BAREFIELD SR. Plaintiff DAVID

14  BAREFIELD II brings this action: (1) in a representative capacity, as a successor-in-interest on behalf of

15  DAVID BAREFIELD SR.; and (2) in an individual capacity, on behalf of himself.

16      10.     Plaintiff AARON BAREFIELD is a resident of the County of Sacramento, California.

17  Plaintiff AARON BAREFIELD is the biological son of DAVID BAREFIELD SR. Plaintiff AARON

18  BAREFIELD brings this action: (1) in a representative capacity, as a successor-in-interest on behalf of

19  DAVID BAREFIELD SR.; and (2) in an individual capacity, on behalf of himself.

20      11.     Plaintiff FINAS BAREFIELD is a resident of the County of Sacramento, California.

21  Plaintiff FINAS BAREFIELD is the biological father of DAVID BAREFIELD SR. Plaintiff FINAS

22  BAREFIELD brings this action in an individual capacity, on behalf of himself.

23      12.     Plaintiff LOIS BAREFIELD is a resident of the County of Sacramento, California.

24  Plaintiff LOIS BAREFIELD is the biological mother of DAVID BAREFIELD SR. Plaintiff LOIS

25  BAREFIELD brings this action in an individual capacity, on behalf of herself.

26      13.     Defendant CITY OF SACRAMENTO is located in the County of Sacramento, California.

27  Defendant CITY OF SACRAMENTO is a "public entity" pursuant to California Government Code §

28  811.2.

14.    Defendant SACRAMENTO POLICE DEPARTMENT is located in the County of Sacramento, California. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is a "public entity" pursuant to California Government Code § 811.2.

15.    Defendant KATHERINE LESTER is and was, at all times material herein, Police Chief for Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT, acting within the scope of employment and under color of state law. Defendant KATHERINE LESTER is sued in an individual capacity.

16.    Defendant SEADMAN is and was, at all times material herein, employed by Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT, acting within the scope of employment and under color of state law. Defendant SEADMAN is sued in an individual capacity.

17.    Defendant COUNTY OF SACRAMENTO is located in the County of Sacramento, California. Defendant COUNTY OF SACRAMENTO is a "public entity" pursuant to California Government Code § 811.2.

18.    Defendant SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES is located in the County of Sacramento, California. Defendant SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES is a "public entity," pursuant to California Government Code § 811.2.

19.    Defendant ERIC SERGIENKO is and was, at all times material herein, Chief Medical Officer/Medical Director for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, acting within the scope of employment and under color of state law. Defendant ERIC SERGIENKO is sued in an individual capacity.

20.    Defendant JAMES EDDINS was, at all times material herein, employed by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, acting within the scope of employment and under color of state law. Defendant JAMES EDDINS is sued in an individual capacity.

21.    Defendant MICHAEL LOLLING is and was, at all times material herein, employed by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, acting within the scope of employment and under color of state law. Defendant

4

1    MICHAEL LOLLING is sued in an individual capacity.

2        22.    Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is located in the

3    County of Sacramento, California. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT

4    is a "public entity" pursuant to California Government Code § 811.2.

5        23.    Defendant JIM COOPER is and was, at all times material herein, Sheriff for Defendants

6    COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting

7    within the scope of employment and under color of state law. Defendant JIM COOPER is sued in an

8    individual capacity.

9        24.    Defendant DAVID GODWIN is and was, at all times material herein, employed by

10    Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

11    DEPARTMENT, acting within the scope of employment and under color of state law. Defendant

12    DAVID GODWIN is sued in an individual capacity.

13        25.    Defendant MATTHEW BLANCO is and was, at all times material herein, employed by

14    Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

15    DEPARTMENT, acting within the scope of employment and under color of state law. Defendant

16    MATTHEW BLANCO is sued in an individual capacity.

17        26.    Defendant LEWIS is and was, at all times material herein, employed by Defendants

18    COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting

19    within the scope of employment and under color of state law. Defendant LEWIS is sued in an individual

20    capacity.

21        27.    Defendant DOE 1 is and was, at all times material herein, employed by Defendants CITY

22    OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT, acting within the scope of

23    employment and under color of state law. Defendant DOE 1 is sued in an individual capacity.

24        28.    Defendant DOE 2 is and was, at all times material herein, employed by Defendants

25    COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH

26    SERVICES, acting within the scope of employment and under color of state law. Defendant DOE 2 is

27    sued in an individual capacity.

28        29.    Defendant DOE 3 is and was, at all times material herein, employed by Defendants CITY

5

OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT, acting within the scope of employment and under color of state law. Defendant DOE 1 is sued in an individual capacity.

30. Defendant DOE 4 is and was, at all times material herein, employed by Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT, acting within the scope of employment and under color of state law. Defendant DOE 4 is sued in an individual capacity.

31. Defendant DOE 5 is and was, at all times material herein, employed by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant DOE 5 is sued in an individual capacity.

## GENERAL ALLEGATIONS

32. At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

### David Barefield

33. DAVID BAREFIELD SR. was 55 years old when he died on May 12, 2024.

34. DAVID BAREFIELD SR. suffered from diagnosed disabilities, including substance use disorder and hypertension.

35. DAVID BAREFIELD SR.'s substance use disorder disability required hospitalization and treatment on occasion, and substantially limited one or more major life activities, including the ability to care for one's self, concentrate, think, and communicate. DAVID BAREFIELD SR. was prescribed medications for his disability on occasion, including for detoxification.

36. DAVID BAREFIELD SR.'s hypertension disability required treatment on occasion, and substantially limited one or more major life activities, including the ability to care for one's self. DAVID BAREFIELD SR. was prescribed medications for his disability on occasion, including lisinopril (Zestril) and hydrochlorothiazide (Hydrodiurel).

37. DAVID BAREFIELD SR. had a documented history of substance abuse. For example, Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT documented that DAVID BAREFIELD SR. was arrested and booked into the Sacramento County Main Jail on February 2, 2023. Therein, Wenonah Morgan, a registered nurse (RN),

reported: "Substance Use Screening . . . . Was Drug/Alcohol Screen Performed? Yes[;] Type of Screening[:] Urine[;] Urine Test Results[:] Positive[;] Positive Results[:] Methamphetamines"; "Substance Use – Stimulants[;] Used within the past 30 days?: Yes[;] # of Days Used in Previous 30 Days: 11-15 Days"; "Methampheatamines[;] Duration: 10yrs[;] Date of Last Use: 02/02/2023[;] Frequency: on and off[;] Route of Admin: Smoking."

**Arrest**

38.    On May 12, 2024, around the early morning hours, DAVID BAREFIELD SR. ingested fentanyl and methamphetamine.

39.    Around 12:40 a.m., Defendants SEADMAN and DOE 1, police officers employed by Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and KATHERINE LESTER, contacted DAVID BAREFIELD SR. based on a report of trespassing, near 5330 Stockton Boulevard, Sacramento, CA 95820.

40.    Defendants SEADMAN and DOE 1 arrested DAVID BAREFIELD SR. based on outstanding warrants for trespassing and petty theft.

41.    DAVID BAREFIELD SR. was experiencing a medical emergency during the arrest process, including exhibiting symptoms consistent with intoxication and overdose.

42.    DAVID BAREFIELD SR. displayed behavior which Defendants SEADMAN and DOE 1 knew or should have known required immediate medical attention, including transport to a facility that could provide appropriate treatment. For example, DAVID BAREFIELD SR. displayed behaviors indicative of medical distress, including impaired mobility, bizarre behavior, dilated pupils, fear/panic/paranoia, high temperature, irrational/incoherent speech, profuse sweating, shivering, inconsistent breathing patterns, and/or loss of consciousness.

43.    Defendants SEADMAN and DOE 1 had access to records reflecting DAVID BAREFIELD SR.'s history of substance abuse.

44.    Defendants SEADMAN and DOE 1 failed to transport DAVID BAREFIELD SR. to a hospital or facility where appropriate treatment could be provided.

45.    Defendant SEADMAN transported DAVID BAREFIELD SR. to the Sacramento County Main Jail for booking.

7

**Parking Garage**

46.    During the transport from the location of the arrest to the jail, DAVID BAREFIELD SR. continued to display concerning behavior and deteriorating health which Defendant SEADMAN knew or should have known required immediate medical attention, including impaired mobility, bizarre behavior, dilated pupils, fear/panic/paranoia, high temperature, irrational/incoherent speech, profuse sweating, shivering, inconsistent breathing patterns, and/or loss of consciousness.

47.    Around 1:00 a.m., after entering the parking garage, Defendant SEADMAN took more than a minute to open the back door of his patrol vehicle and pulled DAVID BAREFIELD SR. out of the right rear of his vehicle.

48.    DAVID BAREFIELD SR. slumped to the ground at the rear of the vehicle, unable to stand on his own feet.

49.    Defendant SEADMAN left DAVID BAREFIELD SR. on the ground and waited for Defendant DOE 1 to arrive.

50.    Defendants DOE 1 arrived and helped Defendant SEADMAN drag DAVID BAREFIELD SR. into the jail.

51.    Defendants SEADMAN and DOE 1 dragged DAVID BAREFIELD SR. through the parking garage and into the intake area of the jail, with DAVID BAREFIELD SR.'s arms handcuffed behind his back. DAVID BAREFIELD SR.'s limp legs dragged along the ground.

52.    Defendants SEADMAN and DOE 1 smiled and laughed, as they dragged DAVID BAREFIELD SR. through the parking garage along the ground towards the jail's entrance.

53.    Defendants SEADMAN and DOE 1 arrived at the jail's entrance but the entry door closed.

54.    Defendants SEADMAN and DOE 1 left DAVID BAREFIELD SR. on the ground by the entry door. Defendants SEADMAN and DOE 1 failed to support DAVID BAREFIELD SR. after leaving him on the ground.

55.    DAVID BAREFIELD SR. fell over and struck the left side of his head on the concrete floor because he was unable to support himself and his arms were handcuffed behind his back while left on the ground.

8

56.     Defendants SEADMAN and DOE 1 watched DAVID BAREFIELD SR. fall and strike the ground and failed to prevent him from doing so.

57.     A police officer held the entry door open, while Defendants SEADMAN and DOE 1 dragged DAVID BAREFIELD SR. into the jail.

**Report Room**

58.     Around 1:07 a.m., Defendants SEADMAN and DOE 1 dragged DAVID BAREFIELD SR. into the jail's report room, and put DAVID BAREFIELD SR. on a bench by Defendant DOE 2, a certified nurse assistant (CNA) employed by Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and ERIC SERGIENKO.

59.     DAVID BAREFIELD SR. continued to display behavior which Defendants SEADMAN, DOE 1, and DOE 2 knew or should have known required immediate medical attention, including impaired mobility, bizarre behavior, dilated pupils, fear/panic/paranoia, high temperature, irrational/incoherent speech, profuse sweating, shivering, inconsistent breathing patterns, and/or loss of consciousness.

60.     Around 1:10 a.m., Defendant DOE 1 removed shoelaces from DAVID BAREFIELD SR.'s shoes, placed the shoes next to DAVID BAREFIELD SR.'s feet, and left the area.

61.     Defendant DOE 1 had no further interaction with DAVID BAREFIELD SR.

62.     Defendant DOE 2 attempted to take DAVID BAREFIELD SR.'s vital signs, spoke to DAVID BAREFIELD SR., and wrote notes on a clipboard.

63.     Defendant DOE 2 was unable to take DAVID BAREFIELD SR.'s vitals because he was shaking so severely that the blood pressure cuff could not be applied and accurate readings could not be obtained.

64.     DAVID BAREFIELD SR. slumped over on the bench.

65.     Defendants SEADMAN and DOE 2 watched DAVID BAREFIELD SR. and spoke with each other. Defendant SEADMAN falsely reported to Defendant DOE 2 that DAVID BAREFIELD SR. refused to walk and was "playing possum."

66.     Defendant DOE 2 continued to experience difficulty taking DAVID BAREFIELD SR.'s vital signs because he was shaking so severely and she stood with her hands on her hips.

9

67.     Defendant DOE 2 called Defendant SEADMAN over to the bench where DAVID BAREFIELD SR. was seated and slumped over, still wearing the blood pressure cuff.

68.     Defendant DOE 2 showed Defendant SEADMAN that DAVID BAREFIELD SR. was shaking and falling over.

69.     Defendant SEADMAN propped DAVID BAREFIELD SR. up on the bench.

70.     Defendant DOE 2 attempted to take DAVID BAREFIELD SR.'s temperature again and readjusted the blood pressure cuff on DAVID BAREFIELD SR.'s arm multiple times before removing the cuff from DAVID BAREFIELD SR.'s arm, wheeling the vital machine away, and hand-writing notes on a clipboard.

71.     Defendant DOE 2 did not notify her immediate supervisor about DAVID BAREFIELD SR.'s distressing behavior or vital signs which delayed a nursing assessment.

72.     Around 1:16 a.m., Defendant SEADMAN grabbed DAVID BAREFIELD SR. by right elbow and right wrist with pain compliance hold and dragged DAVID BAREFIELD SR. around the partition to another bench.

73.     DAVID BAREFIELD SR. gasped and grimaced in pain, as Defendant SEADMAN dragged him with his arms handcuffed behind his back.

74.     Once seated on the opposite of the partition, DAVID BAREFIELD SR. twisted and changed positions where his arms had been injured by Defendant SEADMAN's rough treatment. At one point, DAVID BAREFIELD SR. turned and placed his forehead against the wall.

75.     Around 1:22 a.m., Defendant DOE 2 gave Defendant SEADMAN a cup of water. Defendant SEADMAN offered DAVID BAREFIELD SR. the cup of water by holding it up to his mouth. DAVID BAREFIELD SR. sipped from the cup held by Defendant SEADMAN.

76.     After sipping from the cup, DAVID BAREFIELD SR. slumped against the wall and water or liquid fell from his mouth, while Defendants SEADMAN and DOE 2 watched.

77.     Defendant DOE 2 tried the blood pressure cuff on DAVID BAREFIELD SR.'s arm again.

78.     Defendant SEADMAN had to hold DAVID BAREFIELD SR. steady on the bench because he repeatedly slumped over.

79.     Around 1:25 a.m., Defendant SEADMAN let DAVID BAREFIELD SR. fall head-first

10

onto floor, while Defendant SEADMAN was holding DAVID BAREFIELD SR.'s shoulder and while the blood pressure cuff was still attached on his arm.

80.    Defendants SEADMAN and DOE 2 left DAVID BAREFIELD SR. on the floor.

81.    Defendant DOE 2 removed the blood pressure cuff from DAVID BAREFIELD SR.'s arm.

82.    Around 1:27 a.m., Defendants SEADMAN and DOE 3, another male police officer, lifted DAVID BAREFIELD SR. from the ground and put him into a WRAP carry cart. (A WRAP carry cart is a four-wheel cart used to transport combative persons immobilized by a WRAP restraint in a seated and upright position.) Defendant SEADMAN also placed DAVID BAREFIELD SR.'s shoes inside of the cart.

83.    Defendant SEADMAN wheeled DAVID BAREFIELD SR. back to the opposite side of the partition near the entry door.

84.    Defendant DOE 2 again attempted to take DAVID BAREFIELD SR.'s blood pressure while he was in the cart.

85.    Defendant DOE 3 entered the room and spoke with Defendants SEADMAN and DOE 2 at DAVID BAREFIELD SR.'s cart. Another female police officer also arrived to join the conversation with Defendants SEADMAN, DOE 2, and DOE 3, next to DAVID BAREFIELD SR.'s cart. The officers' conversation included smiling and laughing while standing over DAVID BAREFIELD SR., who was clearly in medical distress.

86.    Around 1:19 a.m., Defendant DOE 2 removed the blood pressure cuff from DAVID BAREFIELD SR.'s arm and left the area, while Defendants SEADMAN and DOE 3 and the female police officer continue to converse.

87.    Defendant DOE 2 had no further interaction with DAVID BAREFIELD SR.

88.    Defendant DOE 2 did not notify a higher-trained medical staff member DAVID BAREFIELD SR.'s inability to stand or walk, deteriorating condition, and difficulty obtaining vital signs which further delayed an assessment of DAVID BAREFIELD SR.'s health.

89.    Defendant DOE 2 failed timely to observe, diagnose, summon care for, and treat DAVID BAREFIELD SR.'s serious medical need, including a heightened risk of illness and death; Defendant

11

DOE 2 made an intentional decision with respect to DAVID BAREFIELD SR.'s ongoing medical condition; Defendant DOE 2 put DAVID BAREFIELD SR. at substantial risk of suffering serious harm; Defendant DOE 2 did not take reasonable available measures to abate the risks to DAVID BAREFIELD SR., including timely responding to immediate medical needs, consultation with more skilled medical personnel such as a nurse or physician, and/or referral or transfer to an outside hospital or facility with resources to provide adequate care; and a reasonable official in Defendant DOE 2's position would have appreciated the high degree of risk involved, including based on DAVID BAREFIELD SR.'s medical history and observed condition.

90.    Defendant DOE 2 failed to utilize appropriate policies, training, standards, and procedures, including California Code of Regulations title 15 § 1207 (Medical Receiving Screening), § 1208 (Access to Treatment), § 1210 (Individualized Treatment Plans), § 1213 (Detoxification Treatment); Adult Correctional Health, Division of Primary Health, Department of Health Services ("ACH") Policy 01-12 (Access to Care), Policy 04-08 (Specialty Referrals), Policy 04-09 (Medical Transportation), Policy 05-02 (Medication Assisted Treatment), Policy 05-05 (Nurse Intake), Policy 05-07 (SUD Counselor), Policy 05-13 (Initial History and Physical Assessment), Policy 06-02 (Patients with Disabilities); Standardized Nursing Procedures ("SNP") Re: "Benzodiazepine Withdrawal Treatment" and "Opiate Withdrawal Treatment"; National Commission on Correctional Health Care, Standards for Health Services in Jails ("NCCHC") Standard J-A-01 (Access to Care), Standard J-D-08 (Hospitals and Specialty Care), Standard J-E-02 (Receiving Screening), Standard J-E-04 (Initial Health Assessment), Standard J-E-08 (Nursing Assessment Protocols and Procedures), Standard J-E-09 (Continuity, Coordination, and Quality of Care During Incarceration), Standard J-F-04 (Medically Supervised Withdrawal and Treatment); Institute for Medical Quality ("IMQ") Standard 110 (Transfer of Inmates with Acute Illness), Standard 302 (Receiving Screening), Standard 303 (Substance Abuse), Standard 304 (Access to Treatment), Standard 307 (Health Inventory & Communicable Disease Screening), Standard 319 (Continuity of Care); American Correctional Association ("ACA") Standard 4-ALDF-5A-04, 4-ALDF-5A-06, 4-ALDF-5A-07 (Substance Abuse Programs), Standard 4-ALDF-4C-01, 1-HC-1A-01 (Access to Care), Standard 4-ALDF-4C-05 (Referrals), Standard 4-ADLF-4C-22, 1-HC-1A-19 (Health Screens), Standard 4-ALDF-4C-24, 4-ALDF-4C-25, 1-HC-1A-22, 1-HC-1A-23 (Health Appraisal),

Standard 4-ALDF-4C-36, 1-HC-1A-33 (Detoxification), Standard 4-ALDF-4C-37 (Management of Chemical Dependency), Standard 4-ALDF-4D-20, 1-HC-4A-07 (Transfer), Standard 1-HC-1A-33 (Detoxification).

91.     Around 1:33 a.m., all the officers, including Defendants SEADMAN and DOE 3, left the area with DAVID BAREFIELD SR. in the cart, alone.

92.     Defendant SEADMAN had no further interaction with DAVID BAREFIELD SR.

93.     For nearly 30 minutes, DAVID BAREFIELD SR. was left alone in the cart, as officers and others occasionally passed through the area while ignoring DAVID BAREFIELD SR. in the cart.

94.     Around 1:57 a.m., Defendants DOE 3 and DAVID GODWIN, a deputy sheriff employed by Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, entered the area.

95.     Defendant DOE 3 pointed at and directed Defendant DAVID GODWIN to DAVID BAREFIELD SR.'s location.

96.     Defendant DAVID GODWIN briefly stood over DAVID BAREFIELD SR. and then left the area.

97.     Around 2:00 a.m., Defendant JAMES EDDINS, a registered nurse (RN) employed by Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and ERIC SERGIENKO, entered the room.

98.     Defendant JAMES EDDINS approached DAVID BAREFIELD SR. with a cup of water and puts it to DAVID BAREFIELD SR.'s lips.

99.     Defendant JAMES EDDINS bent down to speak with DAVID BAREFIELD SR.

100.    DAVID BAREFIELD SR. winced and grimaced in pain while confined to the cart with the handcuffs applied behind his back, including while Defendant JAMES EDDINS was speaking to him.

101.    Around 2:03 a.m., Defendant JAMES EDDINS left DAVID BAREFIELD SR. in the cart, less than three minutes after he approached him.

102.    For approximately 17 minutes, DAVID BAREFIELD SR. was again left alone in the cart, as officers and others occasionally passed through the area while ignoring him.

13

103.    Around 2:20 a.m., DAVID BAREFIELD SR. fell out of cart and struck his shoulder and head on the floor.

104.    Defendants DOE 3 and DOE 4, police officers employed by Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and KATHERINE LESTER, entered the report room.

105.    Defendants DOE 3 and DOE 4 stood over DAVID BAREFIELD SR. as he was lying on the floor.

106.    Defendants DOE 3 and DOE 4 grabbed hold of DAVID BAREFIELD SR. and hoisted him back into cart.

107.    Defendant DOE 3 left the room.

108.    Defendant DOE 4 remained near DAVID BAREFIELD SR.'s cart for about a minute, leaning against the wall and observing DAVID BAREFIELD SR. before leaving the area.

109.    For approximately 15 minutes, DAVID BAREFIELD SR. was again left in the cart and ignored, as others occasionally pass by.

110.    Around 2:26 a.m., while DAVID BAREFIELD SR. was alone and unattended in the cart, Defendant JAMES EDDINS falsely reported that he performed a complete "Nurse Receiving Screening" on DAVID BAREFIELD SR., including reporting information which he never obtained from DAVID BAREFIELD SR. such as patient vital signs, weight, and responses to questions he never asked where DAVID BAREFIELD SR. was unable to respond given his medical distress.

111.    Defendant JAMES EDDINS violated the law when he falsified DAVID BAREFIELD SR.'s medical records, including California Penal Code § 471.5.

112.    Around 2:37 a.m., Defendant DOE 3 returned to DAVID BAREFIELD SR.'s location and wheeled his cart to the next station.

113.    Defendants SEADMAN, DOE 1, DOE 3, and DOE 4 failed timely to observe, monitor, summon care for, and/or transport DAVID BAREFIELD SR. based on a serious medical need, including a heightened risk of illness and death; Defendants SEADMAN, DOE 1, DOE 3, and DOE 4 made an intentional decision with respect to DAVID BAREFIELD SR.'s ongoing medical condition; Defendants SEADMAN, DOE 1, DOE 3, and DOE 4 put DAVID BAREFIELD SR. at substantial risk of suffering

14

serious harm; Defendants SEADMAN, DOE 1, DOE 3, and DOE 4 did not take reasonable available measures to abate the risks to DAVID BAREFIELD SR., including timely responding to immediate medical needs, consultation with medical personnel such as a nurse or physician, and/or transportation to an outside hospital or facility with resources to provide adequate care; and a reasonable official in Defendants SEADMAN, DOE 1, DOE 3, and DOE 4's position would have appreciated the high degree of risk involved, including DAVID BAREFIELD SR.'s based on medical history and observed condition.

114.    Defendants SEADMAN, DOE 1, DOE 3, and DOE 4 failed to utilize appropriate policies, training, standards, and procedures, including California Commission on Peace Officer Standards and Training ("POST") Learning Domain 20 (Use of Force/Deescalation), Learning Domain 31 (Custody), Learning Domain 33 (Arrest and Control), Learning Domain 34 (First Aid, CPR, and AED); and Sacramento Police Department General Order 522.02 (Emergency Care for Individuals Under Police Care or Control), General Order 522.06 (Administration of Naloxone (Narcan)), General Order 580.02 (Use of Force), Reference Manual 523.02 (Search & Handcuff Manual), Roll Call Training Bulletin #107 (Fentanyl Safety Updated).

115.    Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, and their personnel, including Defendants SEADMAN, DOE 1, DOE 3, and DOE 4, knew or should have known that inmates transported to the jail do not receive appropriate or timely medical care from jail staff, including based on the years-long non-compliance with a consent decree requiring adequate medical care to inmates, frequent inmate injuries and deaths occurring at the jail due to deficient medical care, and the sheriff's public statements that the jail's medical staff were "inept."

116.    Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and KATHERINE LESTER failed adequately to train personnel, including Defendants SEADMAN, DOE 1, DOE 3, and DOE 4, adequately to assesses, monitor, and provide emergency care for individuals under police care or control, including DAVID BAREFIELD SR. Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and KATHERINE LESTER were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of deficient

15

1  policies or customs related to emergency care because the inadequacies and deficiencies were so obvious

2  and likely to result in the violation of rights of persons, including the death of DAVID BAREFIELD SR.

3                                                              **Booking Loop**

4        117.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

5  DEPARTMENT, and JIM COOPER were responsible for supervising all aspects of the correctional

6  facilities under their supervision, including the Sacramento County Main Jail and the detainees therein.

7        118.    Around 3:30 a.m., Defendants MATTHEW BLANCO and LEWIS, deputy sheriffs

8  employed by Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

9  DEPARTMENT, and JIM COOPER, approached the cart with DAVID BAREFIELD SR. in it in the

10  booking area.

11        119.    Defendants MATTHEW BLANCO and LEWIS lifted DAVID BAREFIELD SR. out of

12  cart and sat him on a bench.

13        120.    DAVID BAREFIELD SR. said, "I can't move."

14        121.    Defendant LEWIS said, "You're moving right now."

15        122.    Defendant LEWIS pulled his face and said, "Oh, dude. Is that what I think it is?"

16        123.    Defendant MATTHEW BLANCO said, "Mm-hm, mm-hm. Bro."

17        124.    Defendant LEWIS said, "Yeah, you know what that is"—referring to the fact that DAVID

18  BAREFIELD SR. had defecated himself.

19        125.    Defendant DAVID GODWIN entered the area, looked at DAVID BAREFIELD SR., and

20  groaned.

21        126.    Defendant DAVID GODWIN said, "Oooh," as he turned away from DAVID

22  BAREFIELD SR.

23        127.    Defendant LEWIS said, "Are you just playing games, or can't you move?"

24        128.    DAVID BAREFIELD SR. said, "I can't move."

25        129.    Defendant MATTHEW BLANCO said, "Hey, you cannot move your legs? Can you try

26  moving your legs for us?"

27        130.    DAVID BAREFIELD SR. was breathing heavily and did not respond.

28        131.    Defendant LEWIS said, "Is there any, like -- a note -- anything about a walker unit for this

1 guy?"

2     132.     Defendant DAVID GODWIN said, "No."

3     133.     Defendant LEWIS said, "He's, like, not walking at all. I almost just want to grab this

4 fucking -- it would make it go easier if he just…"—referring to the cart.

5     134.     Defendant DAVID GODWIN said, "If you want. Whatever."

6     135.     Defendant LEWIS said, "If we just put him in the chair. I don't know. Or, we just -- we

7 are just going to pick him up and then bring him into the pat box? Yeah, we've got to do, like, a pat real

8 quick."

9     136.     Defendant DAVID GODWIN said, "That's nasty. We can do a pat, like, while he's

10 sitting."

11     137.     Defendant LEWIS, "Sitting?"

12     138.     Defendant DAVID GODWIN said, "Yeah. Because there's shit already all over the place.

13 My thing is, I don't want to get shit all over the place. It's just…"

14     139.     Defendant LEWIS, "Yeah, yeah, yeah. You're saying, just put him in the cart? Like, get

15 the backside, real quick? We'll just put him against the… Okay."

16     140.     Defendants MATTHEW BLANCO and LEWIS grabbed DAVID BAREFIELD SR.'s

17 arms and put him back into the cart.

18     141.     DAVID BAREFIELD SR. let out several large gasps, as he was lifted and placed into the

19 cart.

20                              **Pat-Down Box**

21     142.     Around 3:33 a.m., Defendant DAVID GODWIN wheeled the cart carrying DAVID

22 BAREFIELD SR. into the pat-down area.

23     143.     Defendant DAVID GODWIN said, "Did P.D. get a medical clear on him?"

24     144.     Defendant LEWIS said, "No, but the guy came in, like, [inaudible]. That's why I'm -- I

25 don't think he can stand. Or, are you just playing games with us?"

26     145.     Defendant DAVID GODWIN said, "I think he's playing games with us."

27     146.     Defendant DOE 5, a bald male supervisor , was present in the pat box, said, "He's moving

28 his face."—referring to DAVID BAREFIELD SR. grimacing and wincing in pain.

1    147.    Defendant DAVID GODWIN said, "We're going to search him like this?"

2    148.    Defendant DOE 5 said, "Yeah, you're going to search him like that. Then, you'll pull him

3    out of there and take him through."

4    149.    Defendants DAVID GODWIN, MATTHEW BLANCO, and LEWIS begin searching

5    DAVID BAREFIELD SR.'s clothes, while Defendant DOE 5 looked on.

6    150.    DAVID BAREFIELD SR. continued to gasp, grimace, and groan, as Defendants DAVID

7    GODWIN, MATTHEW BLANCO, and LEWIS pulled at his body and searched his clothes.

8    151.    Defendants DAVID GODWIN, MATTHEW BLANCO, and LEWIS lifted DAVID

9    BAREFIELD SR., using his handcuffed arms as leverage, while searching behind his back.

10    152.    DAVID BAREFIELD SR. gasped heavily as he was lifted by the arms.

11    153.    Defendant LEWIS said, "Can you relax? Hey. Put your hand behind your…"

12    154.    DAVID BAREFIELD SR. stared vacantly into space.

13    155.    DAVID BAREFIELD SR. groaned, as the officers bend him forward and pulled his

14    handcuffed arms.

15    156.    Defendant LEWIS said, "Stop playing games. Stop playing games."

16    157.    DAVID BAREFIELD SR. continued to groan and gasp, as Defendants DAVID

17    GODWIN, MATTHEW BLANCO, and LEWIS twisted and pulled his handcuffed arms.

18    158.    Defendant LEWIS said, "Dude, this is like…"

19    159.    Defendant MATTHEW BLANCO said, "Let's take him out of this."

20    160.    Defendant DAVID GODWIN said, "We'll just grab him."

21    161.    Defendant DOE 5 says, "Just hold him in the scanner machine."

22    162.    Defendant DAVID GODWIN said, "Drag him through the rest of the process."

23    163.    Defendant MATTHEW BLANCO said, "He has -- he got shit all over him, right now.

24    Because it's, like, coming through the chair. It's all over him. I can guarantee you that."

25    164.    Defendant LEWIS said, "It's liquid."

26    165.    Defendant DAVID GODWIN looked down at DAVID BAREFIELD SR., grinned and

27    then laughed.

28    166.    Defendant DAVID GODWIN said, "Oh, my god."

18

167.    Defendant LEWIS said, "Are we going to put him in Holding 4?"

168.    Defendant DAVID GODWIN said, "No. Let's put him in the seg."

169.    Defendant LEWIS said, "Oh, yeah. The seg."

170.    Defendant DAVID GODWIN said, "The seg, and just let him fucking…"

171.    Defendant LEWIS said, "Just not fingerprint him, then?"

172.    Defendant DAVID GODWIN said, "No, we'll fingerprint him. Just fucking grab him, pick him up, and drag him through."

173.    Defendant LEWIS said, "Okay. And we're just going to finish the pat on the back-side?"

174.    Defendant DAVID GODWIN said, "Yeah."

175.    Around 3:36 a.m., Defendants MATTHEW BLANCO and LEWIS grabbed and lifted DAVID BAREFIELD SR. by the arms, lifted him out of the cart, and held him against the wall.

176.    DAVID BAREFIELD SR. gasped loudly, as Defendants MATTHEW BLANCO and LEWIS lift him out of the cart.

177.    Defendant DAVID GODWIN laughed and said, "Oh, my god. Are you for real? No way."—as he observed the presence of feces on cart where DAVID BAREFIELD SR. had been sitting.

178.    Defendant LEWIS laughed and said, "Yo. I kind of need to hold him or he's going to fall. Someone kind of needs to…"

179.    Defendant DOE 5 said, "A little wrist control?"

180.    Defendant DAVID GODWIN said, "Yeah."

181.    Defendant DAVID GODWIN approached DAVID BAREFIELD SR. and lifted DAVID BAREFIELD SR.'s arms in the air, as they remained handcuffed behind his back.

182.    Defendant LEWIS said, "It's not working. His wrist is, like, not working."

183.    DAVID BAREFIELD SR. body was limp, while Defendants DAVID GODWIN, MATTHEW BLANCO, and LEWIS held him against the wall.

184.    Defendant DAVID GODWIN laughed.

185.    Defendant DOE 5 said, "Either drag him through, or we can -- we're going to have to hold him here."

186.    Defendant DAVID GODWIN said, "Let's just get him into a seg cell, and we'll go from

19

there."

187.    Defendant DOE 5 says, "Yeah. Get him through." *Id*. at 06:48–06:52.

188.    Defendant LEWIS said, "From here, you want to -- are we going to at least just scan him or…"

189.    Defendant DOE 5 said, "Yeah. Just try and scan him."

190.    Defendant DAVID GODWIN said, "We'll try and scan him."

**Body Scanner**

191.    Around 3:37 a.m., Defendants MATTHEW BLANCO and LEWIS dragged DAVID BAREFIELD SR. along the ground by his handcuffs, from the pat down area to the body-scanner.

192.    DAVID BAREFIELD SR. twisted in discomfort, as Defendants MATTHEW BLANCO and LEWIS yanked his handcuffed arms behind his back.

193.    Loud music was blaring in the corridor and drowned-out DAVID BAREFIELD SR.'s gasps and groans.

194.    Defendant LEWIS said, "Stop! Stop!"

195.    DAVID BAREFIELD SR.'s pants had fallen down to his knees, exposing his buttocks and genitalia.

196.    Defendants DAVID GODWIN, MATTHEW BLANCO, and LEWIS did not assist DAVID BAREFIELD SR. to pull his pants back up to his waist.

**Booking Photo**

197.    Around 3:38 a.m., Defendants MATTHEW BLANCO and LEWIS dragged DAVID BAREFIELD SR. from the body-scanner, without performing a body scan, to the photo and fingerprint area.

198.    DAVID BAREFIELD SR. groaned and was unable to stand on his own feet, and he was dragged along the ground.

199.    Defendants MATTHEW BLANCO and LEWIS held DAVID BAREFIELD SR. against the wall at the photo station.

200.    DAVID BAREFIELD SR.'s pants remained around his knees, with his buttocks and genitalia exposed.

20

201.    DAVID BAREFIELD SR.'s body was limp and his head swaying, as Defendants MATTHEW BLANCO and LEWIS yanked his body around him.

202.    Defendant LEWIS said, "Will you stop? What are you doing?"

203.    Defendants MATTHEW BLANCO and LEWIS lifted DAVID BAREFIELD SR. from the ground and he groaned in pain.

204.    Defendant LEWIS said, "You set for a photo?"

205.    Defendant DAVID GODWIN said, "Yeah. Can you hold his head up?"

206.    Defendants MATTHEW BLANCO and LEWIS each grabbed ahold of DAVID BAREFIELD SR.'s hair, and lifted his hanging head up by pulling his hair.

207.    Defendants MATTHEW BLANCO and LEWIS turned DAVID BAREFIELD SR. to the side for a profile photo.

208.    Defendant DAVID GODWIN said, "Okay. You may have to pull his hair again."

209.    Defendant LEWIS again grabbed ahold of DAVID BAREFIELD SR.'s hair, and lift his head up by pulling his hair.

210.    DAVID BAREFIELD SR. repeatedly mumbled, "I am Jesus Christ."

211.    Defendant DAVID GODWIN said, "No, you are not."

212.    DAVID BAREFIELD SR. continued repeatedly mumbling, "I am Jesus Christ."

213.    Defendant LEWIS said, "Are we going to need double handcuffs, or are we just going to…"

214.    Defendant DAVID GODWIN said, "Just uncuff him. If we double -- double -- his hands are going to be -- get shit on them."

215.    Defendant MATTHEW BLANCO obtained a key and unlocked the handcuffs applied to DAVID BAREFIELD SR.'s wrists, while Defendants DAVID GODWIN and LEWIS held up DAVID BAREFIELD SR.'s handcuffed arms behind his back.

216.    In the background, another jail staff member called out, "I cleaned it up so I don't slip in shit all the way [inaudible].

217.    Defendant DAVID GODWIN laughed.

218.    Defendants DAVID GODWIN, MATTHEW BLANCO, and LEWIS let DAVID

21

1    BAREFIELD SR.'s limp body fall to the ground, after the handcuffs were removed from his arms.

2                                **Fingerprint Scanner**

3       219.    Around 3:42 a.m., Defendant DAVID GODWIN grabbed hold of DAVID BAREFIELD

4    SR.'s left arm, twisted the arm behind his back, and roughly bent the arm straight.

5       220.    Defendant DAVID GODWIN said, "Don't you fucking tense up."

6       221.    Defendants MATTHEW BLANCO and LEWIS dragged DAVID BAREFIELD SR.'s

7    limp body along the ground to the fingerprint scanner, with his pants still around his knees.

8       222.    While being dragged along the ground, DAVID BAREFIELD SR. said, "I am … Jesus

9    Christ"—the last words he spoke before he died.

10      223.    Defendant LEWIS hoisted DAVID BAREFIELD SR.'s right hand up to fingerprint

11   scanner, while his body remained slumped on ground.

12      224.    Defendant LEWIS laughed and said, "Is this real?"—amazed by the fact that DAVID

13   BAREFIELD SR. was unconscious and being manipulated like a ragdoll.

14      225.    Defendants MATTHEW BLANCO and LEWIS lifted DAVID BAREFIELD SR. into a

15   seated position.

16      226.    Around 3:42 a.m., Defendant JAMES EDDINS was nearby, observed that DAVID

17   BAREFIELD SR. was unconscious, and made no effort to respond to his medical needs, while

18   Defendants DAVID GODWIN, MATTHEW BLANCO and LEWIS were at the fingerprint station

19   holding DAVID BAREFIELD SR.'s unconscious body up to the fingerprint scanner.

20      227.    In reference to DAVID BAREFIELD SR., a jail sergeant said, "He just cleared medical? I

21   don't know how he was handled. I don't know how he was evaluated."

22      228.    Defendant JAMES EDDINS said, "His vitals were fine. He's just old and homeless."

23      229.    The sergeant said, "Okay. Yeah. Your call. He doesn't seem to want to walk."

24      230.    Defendant JAMES EDDINS briefly walked over to look at DAVID BAREFIELD SR.

25      231.    Defendant JAMES EDDINS said, "He's breathing. He's just uncooperative."

26      232.    Defendant JAMES EDDINS walked away from the area, abandoning DAVID

27   BAREFIELD SR. while he was dying in the custody of Defendants DAVID GODWIN, MATTHEW

28   BLANCO and LEWIS, who were obviously unwilling to respond to DAVID BAREFIELD SR.'s

                                            22

immediate medical needs.

233.    Defendant JAMES EDDINS failed timely to observe, diagnose, summon care for, and treat DAVID BAREFIELD SR.'s serious medical need, including a heightened risk of illness and death; Defendant JAMES EDDINS made an intentional decision with respect to DAVID BAREFIELD SR.'s ongoing medical condition; Defendant JAMES EDDINS put DAVID BAREFIELD SR. at substantial risk of suffering serious harm; Defendant JAMES EDDINS did not take reasonable available measures to abate the risks to DAVID BAREFIELD SR., including timely responding to immediate medical needs, conducting required screenings and assessments, accurately reporting patient observations, and/or referral or transfer to an outside hospital or facility with resources to provide adequate care; and a reasonable official in Defendant JAMES EDDINS's position would have appreciated the high degree of risk involved, including based on DAVID BAREFIELD SR.'s medical history and observed condition.

234.    Defendant JAMES EDDINS failed to utilize appropriate policies, training, standards, and procedures, including California Code of Regulations title 15 § 1207 (Medical Receiving Screening), § 1208 (Access to Treatment), § 1210 (Individualized Treatment Plans), § 1213 (Detoxification Treatment); Adult Correctional Health, Division of Primary Health, Department of Health Services ("ACH") Policy 01-12 (Access to Care), Policy 04-08 (Specialty Referrals), Policy 04-09 (Medical Transportation), Policy 05-02 (Medication Assisted Treatment), Policy 05-05 (Nurse Intake), Policy 05-07 (SUD Counselor), Policy 05-13 (Initial History and Physical Assessment), Policy 06-02 (Patients with Disabilities); Standardized Nursing Procedures ("SNP") Re: "Benzodiazepine Withdrawal Treatment" and "Opiate Withdrawal Treatment"; National Commission on Correctional Health Care, Standards for Health Services in Jails ("NCCHC") Standard J-A-01 (Access to Care), Standard J-D-08 (Hospitals and Specialty Care), Standard J-E-02 (Receiving Screening), Standard J-E-04 (Initial Health Assessment), Standard J-E-08 (Nursing Assessment Protocols and Procedures), Standard J-E-09 (Continuity, Coordination, and Quality of Care During Incarceration), Standard J-F-04 (Medically Supervised Withdrawal and Treatment); Institute for Medical Quality ("IMQ") Standard 110 (Transfer of Inmates with Acute Illness), Standard 302 (Receiving Screening), Standard 303 (Substance Abuse), Standard 304 (Access to Treatment), Standard 307 (Health Inventory & Communicable Disease Screening), Standard 319 (Continuity of Care); American Correctional Association ("ACA") Standard 4-ALDF-5A-04, 4-

23

ALDF-5A-06, 4-ALDF-5A-07 (Substance Abuse Programs), Standard 4-ALDF-4C-01, 1-HC-1A-01

(Access to Care), Standard 4-ALDF-4C-05 (Referrals), Standard 4-ADLF-4C-22, 1-HC-1A-19 (Health

Screens), Standard 4-ALDF-4C-24, 4-ALDF-4C-25, 1-HC-1A-22, 1-HC-1A-23 (Health Appraisal),

Standard 4-ALDF-4C-36, 1-HC-1A-33 (Detoxification), Standard 4-ALDF-4C-37 (Management of

Chemical Dependency), Standard 4-ALDF-4D-20, 1-HC-4A-07 (Transfer), Standard 1-HC-1A-33

(Detoxification).

235.    Defendant LEWIS said, "Fuck! That's terrible. But it went through. Alright. I've got to

get your thumb, man. "—frustrated by his inability to obtain acceptable fingerprint scans from DAVID

BAREFIELD SR.'s hands.

236.    Defendant DAVID GODWIN held DAVID BAREFIELD SR.'s limp body upright by

holding onto his hair.

237.    Defendant DAVID GODWIN said, "Well he -- it's says he's up decently, so…"

238.    Defendant LEWIS said, "Yeah."

239.    Defendant DAVID GODWIN said, "He, like…," and laughed—also amazed by the fact

that DAVID BAREFIELD SR. was unconscious and being manipulated like a ragdoll.

240.    Defendant LEWIS said, "Oh, come on. His hands are clean, I don't know what you're

talking about. Fuck. Oh, my god." —again, frustrated by his inability to obtain acceptable fingerprint

scans from DAVID BAREFIELD SR.'s hands.

241.    Defendants DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 5 failed timely

to observe, monitor, summon care for, and/or transport DAVID BAREFIELD SR. based on a serious

medical need, including a heightened risk of illness and death; Defendants DAVID GODWIN,

MATTHEW BLANCO, LEWIS, and DOE 5 made an intentional decision with respect to DAVID

BAREFIELD SR.'s ongoing medical condition; Defendants DAVID GODWIN, MATTHEW BLANCO,

LEWIS, and DOE 5 put DAVID BAREFIELD SR. at substantial risk of suffering serious harm;

Defendants DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 5 did not take reasonable

available measures to abate the risks to DAVID BAREFIELD SR., including timely responding to

immediate medical needs, consultation with medical personnel such as a nurse or physician, and/or

transportation to an outside hospital or facility with resources to provide adequate care; and a reasonable

official in Defendants DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 5's position would have appreciated the high degree of risk involved, including DAVID BAREFIELD SR.'s based on medical history and observed condition.

242.    Defendants DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 5 failed to utilize appropriate policies, training, standards, and procedures, including California Commission on Peace Officer Standards and Training ("POST") Learning Domain 20 (Use of Force/Deescalation), Learning Domain 31 (Custody), Learning Domain 34 (First Aid, CPR, and AED); and Sacramento County Sheriff's Department Custody Manual Procedure 502 (Procedure), Procedure 505 (Special Management Incarcerated Persons), Procedure 602 (Incarcerated Persons with Disabilities), Procedure 510 (Custody Emergency Response Team (CERT) and Force Application on Incarcerated Persons), Procedure 704 (Emergency Health Care Services).

243.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and their personnel, including Defendants DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 5, knew or should have known that inmates transported to the jail do not receive appropriate or timely medical care from jail staff, including based on the years-long non-compliance with a consent decree requiring adequate medical care to inmates, frequent inmate injuries and deaths occurring at the jail due to deficient medical care, and the sheriff's public statements that the jail's medical staff were "inept."

244.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER failed adequately to train personnel, including Defendants DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 5, adequately to assesses, monitor, and provide emergency care for individuals under in custody, including DAVID BAREFIELD SR. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of deficient policies or customs related to emergency care because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons, including the death of DAVID BAREFIELD SR.

\ \ \

**Emergency Medical Response**

245.    Around 3:45 a.m., Defendant DAVID GODWIN looked down at DAVID BAREFIELD SR., while holding his head up by his hair.

246.    Defendant DAVID GODWIN said, "Is he… breathing?"

247.    Defendant MATTHEW BLANCO said, "Yeah."

248.    Defendant LEWIS said, "Is he?"

249.    Defendant MATTHEW BLANCO said, "Barefield!"

250.    DAVID BAREFIELD SR. did not respond.

251.    Defendant LEWIS said, "Hold on. Come on. Hold on, guys."

252.    Defendant LEWIS removed a pen-light from his shirt pocket and flashed the light in DAVID BAREFIELD SR.'s eyes.

253.    Defendant DAVID GODWIN said, "How did he even pass out?"

254.    Defendant LEWIS said, "Something ain't right, man. Something ain't right."

255.    Defendant DAVID GODWIN applied sternum rubs to DAVID BAREFIELD SR.'s chest, without a response from DAVID BAREFIELD SR.

256.    Defendant DAVID GODWIN said, "Hey, man. Is he ODing on stuff?"

257.    Defendant MATTHEW BLANCO said, "Let's get -- let's pull him out. I think he's, like…"

258.    Defendant DAVID GODWIN said, "Drugs?"

259.    Defendant MATTHEW BLANCO said, "This might be, like, a…"

260.    Defendants MATTHEW BLANCO and LEWIS dragged DAVID BAREFIELD SR.'s body on the floor away from the fingerprint station and back to the photo station.

261.    Defendant DAVID GODWIN said, "Is he breathing right?"

262.    Defendant MATTHEW BLANCO said, "No."

263.    Defendant MATTHEW BLANCO felt for a pulse on DAVID BAREFIELD SR.'s left wrist, while Defendant LEWIS felt for a pulse on his right wrist.

264.    Defendant MATTHEW BLANCO said, "Yeah, there's a pulse. We got a pulse. Can we get a chest press?"

26

265.     Defendant LEWIS said, "Breathing? That's labored breathing, right there."

266.     Defendant LEWIS began to apply sternum rubs to DAVID BAREFIELD SR.'s chest, without effect.

267.     Defendant LEWIS said, "Hey. Hey. Hey."

268.     Around 3:46 a.m., Defendant MICHAEL LOLLING, a registered nurse (RN) employed by the COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and ERIC SERGIENKO, arrived.

269.     Defendant MICHAEL LOLLING affixed a blood pressure cuff to DAVID BAREFIELD SR.'s right arm and a clip to his index finger on his left arm.

270.     Defendant MICHAEL LOLLING used a handheld thermometer pointed at DAVID BAREFIELD SR.'s forehead and wrote the results on his latex glove.

271.     Defendant MICHAEL LOLLING asked for DAVID BAREFIELD SR.'s name.

272.     Around 3:47 a.m., Defendant MICHAEL LOLLING walked away from the area, leaving Defendants DAVID GODWIN, MATTHEW BLANCO, and LEWIS with DAVID BAREFIELD SR.

273.     Defendant LEWIS felt DAVID BAREFIELD SR.'s neck and said, "There's a really— radio!—we have a really weak pulse, right now."

274.     Defendant DAVID GODWIN said, "I don't know how -- how the fuck does medical get to clear him?"

275.     Defendant LEWIS said, "I haven't even seen them."

276.     Defendant DAVID GODWIN said, "That's what I'm saying."

277.     Defendant LEWIS said, "I don't have any pulse. He's not breathing, right now. Alright. We go CPR on him."

278.     Around 3:48 a.m., Defendant LEWIS started cardiopulmonary resuscitation (CPR) efforts on DAVID BAREFIELD SR.

279.     Defendant DAVID GODWIN left the area, walking back towards the report room.

280.     Around 3:49 a.m., Defendant MICHAEL LOLLING briefly returned to the area, looked at Defendant LEWIS performing CPR on DAVID BAREFIELD SR., turned around, and left the area again.

281.     Around 30 seconds later, Defendant MICHAEL LOLLING returned to the area with an

27

automated external defibrillator (AED). Defendant MICHAEL LOLLING attached the AED pads to DAVID BAREFIELD SR.'s chest and activated the machine.

282.    Defendant MICHAEL LOLLING response to DAVID BAREFIELD SR.'s reported medical emergency was delayed and disorganized, including where Defendant MICHAEL LOLLING failed immediately to bring an AED, oxygen tank, and bag-valve mask to DAVID BAREFIELD SR.'s location.

283.    Defendant MICHAEL LOLLING failed timely to diagnose and treat DAVID BAREFIELD SR.'s serious medical need, including a heightened risk of illness and death; Defendant MICHAEL LOLLING made an intentional decision with respect to DAVID BAREFIELD SR.'s ongoing medical condition; Defendant MICHAEL LOLLING put DAVID BAREFIELD SR. at substantial risk of suffering serious harm; Defendant MICHAEL LOLLING did not take reasonable available measures to abate the risks to DAVID BAREFIELD SR., including timely responding to immediate medical needs, responding with necessary medical equipment, and/or procuring emergency care; and a reasonable official in Defendant MICHAEL LOLLING's position would have appreciated the high degree of risk involved, including based on DAVID BAREFIELD SR.'s observed condition.

284.    Defendant MICHAEL LOLLING failed to utilize appropriate policies, training, standards, and procedures, including Adult Correctional Health, Division of Primary Health, Department of Health Services ("ACH") Policy 04-11 (Emergency Equipment), Policy 04-12 (Emergency Medical Response), Policy 04-13 (Man Down Drill); National Commission on Correctional Health Care, Standards for Health Services in Jails ("NCCHC") Standard J-D-07 (Emergency Services and Response Plan); Institute for Medical Quality ("IMQ") Standard 111 (First Aid Kits), Standard 301 (Emergency Services); and American Correctional Association ("ACA") Standard 4-ALDF-1C-01, 1-HC-2A-14 (Emergency Response), 4-ALDF-4C-08, 1-HC-1A-08, 1-HC-2A-13 (Emergency Plan), Standard 4-ALDF-4D-09, 1-HC-2A-15 (First Aid).

285.    Around 3:50 a.m., Defendant JAMES EDDINS entered the area.

286.    Defendant DAVID GODWIN took-over CPR on DAVID BAREFIELD SR.

287.    Around 3:51 a.m., Defendant JAMES EDDINS started nasal oxygen on DAVID BAREFIELD SR.

28

1     288.    Defendant LEWIS took-over CPR on DAVID BAREFIELD SR.

2     289.    Around 3:52 a.m., Defendant LEWIS stopped performing CPR on DAVID BAREFIELD

3 SR., per instructions from the AED. The AED delivered a shock to DAVID BAREFIELD SR.

4     290.    Defendant DAVID GODWIN restarted CPR on DAVID BAREFIELD SR.

5     291.    Defendant JAMES EDDINS called-out DAVID BAREFIELD SR.'s pulse and blood

6 pressure readings.

7     292.    Around 3:53 a.m., Defendant JAMES EDDINS said, "I got a pulse."

8     293.    Defendant LEWIS said, "You want to get Narcan?"

9     294.    Defendant JAMES EDDINS said, "They said that he wasn't taking drugs, and he said that

10 he wasn't taking drugs but, I guess, we never know."

11     295.    Around 3:54 a.m., Defendant MICHAEL LOLLING administered a Narcan nasal spray to

12 DAVID BAREFIELD SR.

13     296.    Defendant LEWIS took-over CPR on DAVID BAREFIELD SR.

14     297.    Around 3:55 a.m., Defendant LEWIS stopped performing CPR on DAVID BAREFIELD

15 SR., per instructions from the AED.

16     298.    Defendant LEWIS restarted CPR on DAVID BAREFIELD SR.

17     299.    Around 3:56 a.m., fire ambulance crew arrived at scene and took-over CPR on DAVID

18 BAREFIELD SR.

19     300.    At 4:20 a.m., CPR efforts were stopped and DAVID BAREFIELD SR. was declared dead.

20     301.    Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

21 DEPARTMENT falsely reported the facts and circumstances of DAVID BAREFIELD SR.'s death,

22 including identifying the "Manner of Death" as "Natural," "Means of Death" as "Not Applicable

23 (Natural)," and "Location" as "Not Applicable (Natural)." *See*

24 <https://www.sacsheriff.com/pages/transparency.php>.

25     302.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

26 DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, and their personnel, including

27 Defendants JAMES EDDINS, MICHAEL LOLLING, and DOE 2, knew that inmates transported to the

28 jail do not receive appropriate or timely medical care from jail staff, including based on the years-long

non-compliance with a consent decree requiring adequate medical care to inmates, frequent inmate injuries and deaths occurring at the jail due to deficient medical care, and personal experiences.

303.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and ERIC SERGIENKO failed adequately to train personnel, including Defendants JAMES EDDINS, MICHAEL LOLLING, and DOE 2, adequately to assesses, monitor, and provide adequate care for individuals in custody, including DAVID BAREFIELD SR. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and ERIC SERGIENKO were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of deficient policies or customs related to medical care because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons, including the death of DAVID BAREFIELD SR.

**Autopsy**

304.    On June 10, 2024, NMS Labs reported fentanyl and methamphetamine detected in DAVID BAREFIELD SR.'s post-mortem femoral blood sample, including "Amphetamine[:] 120 ng/mL," "Methamphetamine[:] 1200 ng/mL," "Fentanyl[:] 7.1 ng/mL," and "Norfentanyl[:] 25 ng/mL."

305.    On June 12, 2024, the Sacramento County Coroner's Office reported that DAVID BAREFIELD SR.'s "Cause of Death" was "Fentanyl and Methamphetamine Intoxication."

**California Public Records Act Request**

306.    On July 31, 2024, Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD sent a California Public Records Act (CPRA) request to the custodians of records for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT seeking, *inter alia*, "all records relating to the report, investigation, findings and administrative discipline related to the incarceration and in-custody death of the decedent David Barefield, including all records from the date of the decedent's incarceration beginning on May 12, 2024," including "the name(s) of all involved personnel…"

307.    On August 13, 2024, Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT responded by producing only DAVID BAREFIELD SR.'s

"Coroner Report," "Autopsy Report," and "Toxicology Report." Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT withheld and refused to produce any other records or information in response to Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD's records request.

**Mortality Review**

308.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and ERIC SERGIENKO conducted an initial mortality review of DAVID BAREFIELD SR.'s death. Therein, the corrective action plan omitted and refused to identify key factors which contributed to DAVID BAREFIELD SR.'s death, including: (a) that Defendants SEADMAN and DOE 1, as arresting officers, should have taken DAVID BAREFIELD SR. directly to the hospital and not the jail; (b) that Defendant JAMES EDDINS failed to complete any assessment of DAVID BAREFIELD SR. during the three minutes he was reportedly "screening" the patient; (c) that Defendant JAMES EDDINS falsified documentation of DAVID BAREFIELD SR.'s medical screening in the medical record, including in violation of California Penal Code § 471.5; (d) that Defendants DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 5 did not alert medical staff of DAVID BAREFIELD SR.'s condition and request reevaluation/clearance of the patient; (e) that Defendant JAMES EDDINS's walking by and ignoring DAVID BAREFIELD SR. while he was unconscious and near death at the fingerprint scanner were serious and egregious acts of patient endangerment; and (f) the identifying information of the specific personnel involved in incidents. The corrective action stated that there were "individual performance issues that warrant further investigation and progressive discipline," without identifying the individuals or discipline.

***Mays* Consent Decree Monitoring**

309.    Since January 2020, Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and their personnel, have been subject to a jail conditions consent decree entered in *Mays v. County of Sacramento*, No. 2:18-cv-02081-TLN-CSK, ECF No. 85-1 & 110 (E.D. Cal. Jan. 8, 2020).

310.    Expert Monitor Letter: On August 14, 2024, *Mays* court-appointed medical experts sent a

31

letter to Defendant COUNTY OF SACRAMENTO relating to "Recent Mortalities at Sacramento County Jail," including "five deaths in the Sacramento County Jails" since "May 2024." Therein, DAVID BAREFIELD SR.'s in-custody death and "recommend[ed] … critical corrective actions" were identified and described. The medical experts determined: "Review of these deaths showed serious system and individual performance issues, including inadequate emergency response, inadequate medical care prior to death, and in one case, callous deliberate indifference to a man who was so obviously gravely ill that even a lay person would see that the patient needed emergent care. We also found that the ACH mortality review process did not recognize and/or omitted critical information that contributed to patient deaths, with resulting inadequate corrective action plans. [¶] Through review of medical records and video footage, we concluded that some of the recent deaths in the jail may have been preventable. We also determined that immediate action must be taken by ACH [Adult Correctional Health] and the Sacramento Sheriff's Office (SSO) to address dangerous deficiencies in current practices." <https://www.disabilityrightsca.org/system/files/file-attachments/24.08.14%20Letter%20to%20Sacramento%20County%20Regarding%20Mortalities%20in%202024_Redacted.pdf>.

311.    <u>Class Counsel Letter</u>: On August 19, 2024, *Mays* court-appointed class counsel sent a letter to Defendants SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and JIM COOPER relating to the "wave of deaths in the Sacramento County Jails in recent months." Therein, class counsel found: "For years, we have raised concerns about the custody culture of the Sacramento Sheriff's Office. Having reviewed the surveillance and body-worn camera footage of several recent deaths, we write to again express our deep concern about the SSO's failure to respond with humanity and decency to people in need." Specifically, DAVID BAREFIELD SR.'s in-custody death was described as follows: "Below, we describe the tragic death of one man who died in the booking loop of Sacramento County's Main Jail in May 2024 and the way in which it reflects our broader and long-standing concerns. [¶] In May 2024, an unhoused, middle-aged, Black man was brought into the jail in the middle of the night. Because he was unable to stand on his own, arresting officers dragged him through the parking lot and into the jail to begin the intake process. The SSO [Sacramento Sheriff's Office] has informed us that the man was arrested due to outstanding warrants for trespassing and petty theft, not because he had any new charges.

32

[¶] From the moment he entered the jail, the man was unable to stand. In the arrest reports room—the

first stop in the intake process—the Certified Nursing Assistant (CNA) could not take his vital signs

because he was shaking and unable to remain still. He soon fell to the floor, where he remained for

several minutes. Video footage shows that while the man was lying on the floor, the arresting officer

from the Sacramento Police Department appeared to casually engage in a conversation with the CNA.

Neither the arresting officer nor the CNA showed any alarm that this man was lying on the floor and

unable to stand on his own; they continued having a conversation over his body. Eventually, a staff

member decided to remove the man from the floor. But instead of getting a wheelchair to transport him

through the booking process or considering whether his inability to stand suggested a need for

hospitalization, staff placed him in a cart intended for short-term use for transporting combative

arrestees. He remained in that cart for the next two and a half hours. [¶] Around 2 AM—about an hour

after the man arrived at the jail—a Registered Nurse assigned to the intake area of the jail engaged in a

brief conversation with him. The conversation, which lasted less than four minutes, was the extent of the

medical evaluation to determine whether this person was medically fit for incarceration. The nurse

conducted the 'medical intake' within earshot of other arrestees in the non-confidential part of the arrest

reports room. The nurse failed to ask required medical intake questions, then falsified information on the

medical intake form. After this less-than-four-minute-long conversation, the nurse cleared the man as

medically fit for incarceration. These egregious failures by medical staff will be the subject of a

forthcoming letter by the federal court-appointed medical experts. [¶] The man remained alone, laying in

the cart, for the next 90 minutes, with minimal interaction with any staff members. Around 3:30 AM, the

SSO took formal 'custody' of the man and began the custodial intake process. The SSO deputies dragged

him out of the cart, but he was still unable to stand on his own. Minutes later, deputies placed him back

into the cart. By that point, he had defecated on himself and was covered in feces. [¶] The deputies then

decided to drag the man's mostly limp body through the intake process. They pulled him out of the cart

and yelled at him, 'Stop playing games!' They then brought him out of the arrest reports room and

conducted a pat-down body search on him. As they dragged him, his pants came down, leaving him

completely exposed from the waist down. [¶] The man remained unable to form a coherent sentence and

appeared largely incapable of motion. Nonetheless, the deputies persisted in processing him through the

33

standard intake protocol. They dragged his motionless body down the hallway, cuffed and facedown on the floor. At 3:39 AM, deputies dragged him to the photo station so that they could take his intake photo. Because the man could not hold his head up on his own, deputies grabbed him by his hair and yanked his slumped head against the wall so that they could capture the intake photo. The surveillance video shows the man on his knees with his genitals exposed as two deputies hold his nearly lifeless head up by his hair. His booking photo similarly shows two deputies' black-gloved fists grabbing his hair to hold his head up. [¶] Deputies then turned the man to the side and again yanked his hair back to take a booking photo from his profile. At that point, he was mumbling, 'I am Jesus Christ' and other incoherent noises. His voice sounded drowsy, like it was difficult for him to form sounds. He demonstrated no resistance, either verbally or physically, at any point. [¶] At 3:41 AM, deputies uncuffed the man so they could scan his fingerprints. The man's limp body laid near the fingerprint station as the deputy moved his arm around to capture a viable fingerprint scan. A minute later, the intake nurse walked by the fingerprint station. A sergeant who was seated nearby observing this intake process asked the nurse whether the man had cleared medical intake. The nurse responded, 'His vitals were fine. He's just old and homeless.' The nurse briefly walked back to look at the patient, and then said, 'He's breathing. He's just uncooperative.' The nurse then walked away. [¶] Minutes later, after completing the fingerprint scan, deputies finally appeared to acknowledge that this person needed immediate medical attention. They began asking him if he was okay, and they checked for his pulse. At 3:46 AM, life-saving care was initiated, and custody staff called the Fire Department. At 4:20 AM, he was pronounced dead. [¶] Video footage shows no evidence of custody staff verbally abusing this man, but the story of his death highlights a profound and persistent problem with the Sheriff's Office—callousness, apathy, and unacceptable tolerance for human suffering. The deputies who processed this man through the booking process did so with no regard for his extreme physical distress. An hour before he died, they told him he was playing games because he was unable to stand. They did not deviate from their standard booking protocol for a person in the final moments of his life. They grabbed him by the hair to take his intake photo. As he laid on the floor, they held his limp hand on the fingerprint scanner to make sure his fingerprints were captured in the system. They were simply going about business as usual." Finally, class counsel concluded: "This callousness on the part of the Sacramento Sheriff's Office is consistent with our reporting over the years. We and the

court-appointed experts have reported for years about these profound cultural problems. * * * The recent deaths in the jails are a symptom of a larger and long-standing cultural problem with the Sacramento Sheriff's Office. The Sheriff must take accountability for the apathy and callousness that pervades the jail and exercise leadership to make immediate changes. Sacramento County should demand decency for the people it incarcerates." <https://www.disabilityrightsca.org/system/files/file-attachments/24.08.19%20Mays%20Counsel%20to%20Sheriff%20Cooper%20re%20Recent%20Jail%20Deaths.pdf>.

312.     Expert Monitor Report: On January 27, 2025, *Mays* court-appointed medical experts filed the "Sixth Monitoring Report of the *Mays* Medical Consent Decree." *Mays*, *supra*, ECF No. 197-1 (E.D. Cal. Jan. 27, 2025). Therein, DAVID BAREFIELD SR.'s in-custody death was described as follows: "**Patient #8**: On 5/12/24 at 01:07, the patient entered the jail and died three hours later in booking. Review of his medical record and of video showed the conduct of arresting officers, health care staff, and Sacramento Sheriff's Office (SSO) deputies was egregious, shocking, and demonstrated callous disregard for the patient's serious medical condition. Actions and omissions by staff directly contributed to his death. Critical findings are as follows: [¶] Upon arrival at the jail, arresting officers dragged the patient from their patrol car across the garage to intake because he was unable to stand or walk. The officers reportedly told health care staff that the patient had been able to walk at the time of arrest but was now "playing possum." *Because the arrestee was unable to stand or walk, the officers should have taken him directly to the hospital to receive medical treatment, and not to the jail.* [¶] A certified nurse assistant (CNA) did not timely notify a registered nurse of the patient's condition upon arrival and difficulty obtaining vital signs. *This delayed a nursing assessment of the patient.* [¶] A registered nurse (RN) failed to conduct a medical screening or nursing assessment of the patient who was in obvious distress and in need of emergent medical evaluation and treatment. *The nurse took no action to send the patient to the hospital or notify a medical provider. The nurse's conduct fell below the standard of nursing practice, was negligent, callous, and deliberately indifferent to his serious medical condition.* [¶] In addition to the RN's failure to complete the medical screening, the *RN falsely documented that he completed the full medical screening for the patient, including vital signs.* [¶] SSO deputies who began the booking process *failed to recognize the seriousness of the patient's condition demonstrated by his inability to participate*

35

**FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barefield v. City of Sacramento*, United States District Court, Eastern District of California, Case No. 2:24-cv-03427-TLN-JDP

*in any booking processes. Instead, they dragged him through the booking process as his condition deteriorated. At the point it became clear that the patient had an altered level of consciousness and was unable to stand or participate in the booking process, deputies should have immediately notified a nurse.* [¶] While the patient was lying on the floor, surrounded by deputies and obviously gravely ill, the intake nurse walked by him and made no effort to respond to the patient, which is a violation of his duty to the patient. When SSO staff asked him about the patient, he said that the patient's vitals were fine, "he's just old and homeless." [Footnote: There was not audio on the tape, but this statement was reported by nurse to custody attending the patient.] *The nurse abandoned the patient who was dying.* [¶] The subsequent emergency response was disorganized with nurses initially failing to bring an AED, oxygen tank and bag-valve mask to the patient's location, delaying care. [¶] The patient was entitled to timely medical care, dignity, and respect by arresting officers, health care staff, and SSO deputies; he received none of these. With timely care, his death may have been preventable. The combined actions and inactions of each of the entities (police officers, ACH nurses, and SSO deputies) involved with the patient while he was at the jail directly contributed to the patient's death, warranting investigation, policy review, and training. [Footnote: The medical experts understand that the County is making significant structural changes to the medical screening process. However, this case involves lack of judgement, as well as substandard nursing care and supervision.] [¶] With respect to health care staff, the actions and omissions by the intake nurse included: [¶] •Failure to medically screen the patient [¶] •Failure to recognize that the patient needed emergent medical care [¶] •Failure to send the patient to the hospital [¶] •Falsification of patient medical records [¶] •Patient neglect and abandonment [¶] The ACH's initial mortality review and corrective action plan did not identify key factors that contributed to the patient's death [Footnote: The County later amended the mortality review and CAP.] including: [¶] •Arresting officers should have taken the patient directly to the hospital, not the jail; [¶] •The RN did not just conduct an inadequate assessment, but failed to complete *any* assessment in the three minutes he was with the patient [¶] •The RN falsified documentation of medical screening in the medical record; [¶] •SSO deputies did not alert medical staff of the patient's condition and demand reevaluation of the patient; [¶] •Failure to acknowledge the seriousness of the RN's egregious actions when he walked by the patient who was near death. [¶] •Without including identifying personnel information, acknowledge that there were "individual

36

performance issues that warrant further investigation and progressive discipline." [Footnote: In our over 40 years of experience in nursing and correctional health care, the actions by the registered nurse would result in immediate termination and he would be reported to the Board of Nursing. In similar cases across the country, nurses who falsified medical records and jeopardized patient safety have lost their license, and in some cases, were charged and convicted of felonies for patient endangerment.] [¶] The Consent Decree requires that the County maintains sufficient medical, mental health and custody staffing to meet professional standards to execute the requirements of the remedial plan. [Footnote: *See* Mays Consent Decree IV. A.1.] [¶] The medical experts do not get involved with personnel decisions, but employing staff that are unethical, incompetent, and/or dangerous to patients is incompatible with providing adequate health care to the jail population, and is inconsistent with the Consent Decree. The evidence shows that this nurse is dangerous to patients and at minimum needed to be removed from direct patient care, pending the results of investigation. [Footnote: The employee faced disciplinary action and resigned. The County reported the nurse to the California Board of Nursing.]" *Id*. at 143–145.

## POLICY / CUSTOM ALLEGATIONS

313.    Defendant KATHERINE LESTER has served as Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT Police Chief from December 2021 to present. Defendant KATHERINE LESTER, in her capacity as Police Chief, is and was a final policymaking official for Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT, including as it relates to the maintenance and operation of a police force; training, supervision, and discipline of staff acting under her command; and the safekeeping of arrestees/detainees in her officers' custody. Specifically, Defendant KATHERINE LESTER is and was responsible for the provision of medical care to arrestees/detainees in her officers' custody, including assessment of and response to medical emergencies and needs, and all policies, procedures, customs, hiring, staffing, supervision, and training related thereto.

314.    Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and KATHERINE LESTER, including subordinate personnel Defendants SEADMAN, DOE 1, DOE 3, and DOE 4, maintain and/or acted pursuant to inadequate polices, customs, training, and/or supervision, resulting in the following deficiencies:

(a)     Failure to observe, monitor, and supervise arrestees/detainees;

(b)     Failure to transport arrestees/detainees to a hospital or facility for emergent medical care;

(c)     Failure to detect and investigate, intervene, or intercede when dangerous and emergency conditions are present;

(d)     Failure reasonably to handle sensitive or ill arrestees/detainees without excessive force; and/or

(e)     Failure to summon and provide necessary and emergent medical care for inmates/patients with necessary and immediate medical needs.

315.    Defendant ERIC SERGIENKO has served as Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES Chief Medical Officer/Medical Director from March 2024 to present. Defendant ERIC SERGIENKO, in his capacity as Medical Director, is and was a final policymaking official for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, including as it relates to the provision of basic healthcare/medical services to inmates at jail facilities and developing and implementing individualized treatment plans; training, supervision, and discipline of staff acting under his command; and the safekeeping of inmates/prisoners in his care.

316.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and ERIC SERGIENKO, including subordinate personnel Defendants DOE 2, JAMES EDDINS, and MICHAEL LOLLING, maintain and/or acted pursuant to inadequate polices, customs, training, and/or supervision, resulting in the following deficiencies:

(a)     Failure to medically screen inmates/patients;

(b)     Failure to recognize inmates/patients need for emergent medical care;

(c)     Failure to send inmates/patients to a hospital or facility for emergent medical care;

(d)     Failure accurately/truthfully to report information in inmates/patients' medical records; and/or

(e)     Failure accurately/truthfully to report inmates/patients' condition to jail staff.

317.    Defendant JIM COOPER has served as Defendants COUNTY OF SACRAMENTO and

38

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT Sheriff from December 2022 to present. Defendant JIM COOPER, in his capacity as Sheriff, is and was a final policymaking official for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, including as it relates to the maintenance and operation of jail and detention facilities; training, supervision, and discipline of staff acting under his command; and the safekeeping of inmates/prisoners in his custody. Specifically, Defendant JIM COOPER is and was responsible for the provision of medical and mental health care to inmates/prisoners in his custody at Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities, including assessment of inmates for medical emergencies, medical needs and mental health needs, and all policies, procedures, customs, hiring, staffing, supervision, and training related thereto.

318.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, including subordinate personnel Defendants DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 5, maintain and/or acted pursuant to inadequate polices, customs, training, and/or supervision, resulting in the following deficiencies:

(f)    Failure to observe, monitor, and supervise inmates/patients;

(g)    Failure to staff the jail with necessary officials, staff, and personnel;

(h)    Failure to detect and investigate, intervene, or intercede when dangerous and emergency conditions are present;

(i)    Failure reasonably to handle sensitive or ill inmates/patients without excessive force; and/or

(j)    Failure to summon and provide necessary and emergent medical care for inmates/patients with necessary and immediate medical needs.

319.    Legal & National Standards: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs are inconsistent with state law and widely-accepted standards. For example:

(a)    California Code of Regulations title 15 § 1027 (Number of Personnel/Medical Receiving Screening), § 1027.5 (Safety Checks), § 1028 (Access to Treatment), § 1210 (Individualized

39

Treatment Plans), § 1213 (Detoxification Treatment).

(b)    National Commission on Correctional Health Care ("NCCHC") Standards for Health Services in Jails, including J-A-01 (Access to Care); J-C-04 (Health Training for Correctional Officers); J-C-07 (Staffing); J-D-08 (Hospitals and Specialty Care); J-E-02 (Receiving Screening); J-E-04 (Initial Health Assessment); J-E-08 (Nursing Assessment Protocols and Procedures); J-E-09 (Continuity, Coordination, and Quality of Care During Incarceration); J-F-01 (Ongoing Care for Chronic Illness); and J-F-04 (Medically Supervised Withdrawal and Treatment).

(c)    Institute for Medical Quality ("IMQ") Standards, including 110 (Transfer of Inmates with Acute Illness); 204 (Basic Training for Correctional Personnel); 302 (Receiving Screening); 303 (Substance Abuse); 304 (Access to Treatment); 306 (Clinic Care); 307 (Health Inventory & Communicable Disease Screening); 318 (Standardized Procedures/Treatment Protocols); 319 (Continuity of Care); and 328 (Health Maintenance).

(d)    American Correctional Association ("ACA") Standards, including 4-ALDF-2A-15 (Staffing); 4-ALDF-5A-04, 4-ALDF-5A-06, 4-ALDF-5A-07 (Substance Abuse Programs); 4-ALDF-7B-10 (Training and Staff Development); 4-ALDF-4C-01, 1-HC-1A-01 (Access to Care); 4-ALDF-4C-05 (Referrals); 4-ADLF-4C-22, 1-HC-1A-19 (Health Screens); 4-ALDF-4C-24, 4-ALDF-4C-25, 1-HC-1A-22, 1-HC-1A-23 (Health Appraisal); 4-ALDF-4C-36, 1-HC-1A-33 (Detoxification); 4-ALDF-4C-37, 1-HC-1A-34 (Management of Chemical Dependency); 4-ALDF-4D-20, 1-HC-4A-07 (Transfer); 1-HC-4A-05 (Staffing/Referrals).

320.    *Mays* Consent Decree & Monitoring: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs are largely non-compliant with the terms of the court-ordered consent decree issued in *Mays v. County of Sacramento*, No. 2:18-cv-02081-TLN-CSK, ECF No. 85-1 & 110 (E.D. Cal. Jan. 8, 2020). Therein, the plaintiffs alleged numerous "dangerous, inhumane and degrading conditions" at Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities. In June 2019, Defendant COUNTY OF SACRAMENTO settled the case and agreed, *inter alia*, to changes to jail staffing, facilities, inmate health services, and custodial practices, including the creation and

40

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Estate of Barefield v. City of Sacramento*, United States District Court, Eastern District of California, Case No. 2:24-cv-03427-TLN-JDP

enforcement of polices and trainings that ensure compliance with Americans with Disabilities Act

("ADA") requirements, and improving the delivery of medical care through timely referrals, responses to

requests for care and medication disbursement, chronic care treatment plans, appropriate clinic space,

and staff training. (<https://www.saccounty.gov/news/latest-news/Pages/County-Jail-Class-Action-

Lawsuit-Agreement-Reached.aspx>; <https://www.disabilityrightsca.org/press-release/settlement-

approved-in-sacramento-county-jail-class-action-to-ensure-better-treatment>; *see also*

<https://www.sacsheriff.com/pages/transparency.php>.) Defendants COUNTY OF SACRAMENTO and

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities are subject to reporting

requirements and quarterly monitoring reports prepared by court-appointed experts, pursuant to the

Consent Decree. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY

SHERIFF'S DEPARTMENT, and JIM COOPER have failed to achieve compliance with the terms of the

consent decree, based on continuous and ongoing monitoring and documented reports. For example:

      (a)     On January 20, 2021, the First Monitoring Report of Medical Experts found, for

75 total consent decree provisions, substantial compliance with 4 provisions (5%), partial compliance

with 15 provisions (20%), non-compliance with 39 provisions (52%), and 17 provisions (23%) were not

evaluated. *Mays*, *supra*, ECF No. 136-1 (E.D. Cal. Jan. 20, 2021). Specifically, the review's findings

were "deeply concerning." *Id*. For example, "[t]here are serious and systemic issues resulting in harm to

patients, including hospitalizations and death," *id*. at 7–8, "[t]he sick call system does not provide timely

access to care," *id*. at 8, "[t]here are excessive delays in transporting patient[s] to the hospital," *id*. at 9,

and "[t]here are serious nursing and medical quality of care issues," *id*. at 9. The report made an

"alarming finding [] that nurses do not notify physicians when a patient's condition is clearly

deteriorating, which has resulted in hospitalizations and deaths," and that, even when physicians are

notified, "physicians also minimized patient clinical findings and failed to adequately treat their

underlying chronic medical conditions." *Id*. at 9. "These cases may reflect a wider cultural issue at the

jail in how health care personnel view their obligations to provide timely, appropriate and compassionate

care to patients." *Id*. at 9.

      (b)     On October 4, 2021, the Second Monitoring Report of Medical Experts found, for

41

75 total consent decree provisions, substantial compliance with 12 provisions (16%), partial compliance with 19 provisions (25%), non-compliance with 37 provisions (49%), and seven provisions (9%) were not evaluated. *Mays*, *supra*, ECF No. 149-1 at 13 (E.D. Cal. Oct. 4, 2021). Specifically, the "review showed that inmates with serious medical needs continue to experience harm as a result of lack of an adequate infrastructure (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and quality of care (e.g. chronic care, mortality review)" and that "[c]onsiderable work remains to achieve Consent Decree compliance." *Id*. at 12. For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." *Id*. at 11–12. The report found that "there has been custody interference in the provision of health care," including where custody staff has denied inmates necessary medical care and, in at least one case, allowed an inmate to "languish[] to near death before intervention took place." *Id*. at 9.

(c)    On March 1, 2022, *Mays* class counsel sent a letter to Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT describing "ongoing jail overcrowding" and reports that "[p]eople told us that they were treated 'like animals' when they asked the deputies passing by … how they could access the health care services they needed." *Mays*, *supra*, ECF No. 153-4 (E.D. Cal. June 3, 2022).

(d)    On October 25, 2022, the Third Monitoring Report of Medical Experts found, for 75 total consent decree provisions, substantial compliance with 13 provisions (17%), partial compliance with 22 provisions (29%), non-compliance with 33 provisions (44%), and seven provisions (9%) were not evaluated. *Mays*, *supra*, ECF No. 162-1 at 14 (E.D. Cal. Oct. 25, 2022). Specifically, the "review showed that inmates with serious medical needs continue to experience harm as a result of lack of an adequate infrastructure (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and quality of care (e.g., chronic care, mortality review)" and "[c]onsiderable work remain[ed] to achieve Consent Decree compliance." *Id*. at 13. For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." *Id*. at 10–12. The "review showed continuing harm to patients as a result of population pressures, lack of medical and mental health beds, health care systems issues, and lapses in care." *Id*. at 6. The report found a "practice of providers cutting and pasting notes" which "risks documenting history and physical examinations and education that have not been

42

conducted and, in some cases, simply amounts to falsification of medical records." *Id*. at 28.

(e)     On August 15, 2023, the Fourth Monitoring Report of Medical Experts found, for 75 total consent decree provisions, substantial compliance with 25 provisions (33%), partial compliance with 25 provisions (33%), and non-compliance with 25 provisions (33%). *Mays*, *supra*, ECF No. 168-1 at 6 (E.D. Cal. Aug. 15, 2023). Specifically, the "review showed persistence of *critical* issues that impact access to—and quality of care that resulted in serious harm to patients, and places the inmate population at risk of harm if not immediately addressed," including: "Insufficient health care staffing; Insufficient custody staff dedicated to health care delivery; Lack of patient access to care, including custody barriers to care; Lack of evaluation of medical care quality, including mortality reviews; Lack of timely access to specialty services and implementation of recommendations; Failure to deliver ordered care (e.g., cancellation of medication administration); Inadequate evaluation, treatment, and monitoring of patients with substance use disorders; Lack of a Medication Assisted Treatment (MAT) program to induct patients on suboxone or other treatment; [and] Inadequate treatment space and environment of care." *Id*. For example, "[t]he County is not providing timely patient access to specialty services, resulting in delayed diagnosis and treatment." *Id*. at 11–12. A "detailed case reviews show[ed] multiple lapses in care in many records." *Id*. at 13 n.21. The report found that medical "[p]roviders conducted inadequate medical evaluations and treatment leading to deterioration of the patient," including by falsifying medical records and "copy[ing] and past[ing] *previous* examinations into the progress note, *without amending the note to reflect the actual condition of the patient*." *Id*. at 22.

(f)     On July 16, 2024, the Fifth Monitoring Report of the Medical Consent Decree found, for 80 total consent decree provisions, substantial compliance with 24 provisions (30%), partial compliance with 31 provisions (41%), and non-compliance with 23 provisions (29%). *Mays*, *supra*, ECF No. 180-1 at 8 (E.D. Cal. July 16, 2024). Specifically, the review found that "there has been ongoing noncompliance with key provisions of the *Mays* Consent Decree that result in ongoing harm to the patient population at Sacramento County Jail. These include: • Lack of custody medical escorts to conduct health care operations; • Custody obstructing access to care, resulting in harm and preventable hospitalization; • RCCC inmates being empowered to control other inmates' access to health services request and grievance forms; • Ongoing lack of privacy in the booking area, causing demonstrable harm

43

to patients[;] • Failure of the access to care system (nurse sick call); • Ongoing serious medication errors caused by the pharmacy system, medical providers, and nurses, resulting in preventable harm and hospitalizations; and • System and quality issues related to medical screening and use of the sobering cell. . . . [W]e are obligated to note that these conditions have existed since the beginning of the *Mays* Consent Decree, are causing ongoing harm, and must be immediately and definitively corrected." *Id.* at 8–9 (fns. omitted).

(g)     On August 19, 2024, *Mays* court-appointed class counsel sent a letter to Defendants SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and JIM COOPER relating to the "wave of deaths in the Sacramento County Jails in recent months." Therein, class counsel determined that, "[h]aving reviewed the surveillance and body-worn camera footage of several recent deaths, we write to again express our deep concern about [Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT]'s failure to respond with humanity and decency to people in need. . . . This callousness on the part of the Sacramento Sheriff's Office is consistent with our reporting over the years. We and the court-appointed experts have reported for years about these profound cultural problems. It is commonplace in the jails for custody staff to ignore people in crisis who press the emergency buttons in their cells begging for help. . . . The recent deaths in the jails are a symptom of a larger and long-standing cultural problem with the Sacramento Sheriff's Office."
<https://www.disabilityrightsca.org/system/files/file-attachments/24.08.19%20Mays%20Counsel%20to%20Sheriff%20Cooper%20re%20Recent%20Jail%20Deaths.pdf>.

(h)     On January 27, 2025, the Sixth Monitoring Report of the Medical Consent Decree found, for 80 total consent decree provisions, substantial compliance with 15 provisions (19%), partial compliance with 40 provisions (51%), and non-compliance with 24 provisions (29%). *Mays*, *supra*, ECF No. 197-1 at 8 (E.D. Cal. Jan. 27, 2025). Specifically, the review found that "Patient access to a medical provider has worsened since the last review period"; "Patients lack timely access to specialty services which has resulted in patient harm"; "Patients with chronic diseases are not consistently provided care in accordance with nationally recognized chronic disease guidelines"; "The County has not conducted regular evaluations of provider quality resulting in continuation of care that does not meet current

44

**FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barefield v. City of Sacramento*, United States District Court, Eastern District of California, Case No. 2:24-cv-03427-TLN-JDP

medical care guidelines"; and "The County lacks adequate medical leadership at the jail." *Id*. at 8–17.

321.    <u>Inadequate Diagnosis, Monitoring, and Care</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain a policy or custom whereby jail staff inadequately diagnose, monitor, and provide care for inmates, including failure to respond to immediate medical needs. For example:

(a)    The *Mays* Consent Decree Monitoring Reports of the Medical Experts describe and document persistent and numerous incidents and case reviews where jail staff, including both custody staff and medical staff, failed timely to observe and respond to inmates' immediate medical needs. *See*, *e.g.*, *Mays*, *supra*, ECF No. 136-1 (E.D. Cal. Jan. 20, 2021); ECF No. 149-1 (E.D. Cal. Oct. 4, 2021); ECF No. 162-1 (E.D. Cal. Oct. 25, 2022); ECF No. 168-1 (E.D. Cal. Aug. 15, 2023); ECF No. 180-1 (E.D. Cal. July 16, 2024); ECF No. 197-1 (E.D. Cal. Jan. 27, 2025). Each of these monitoring reports and the incidents described therein are expressly incorporated herein.

(b)    On May 5, 2024, 45-year-old inmate Lope Tolosa died at the Sacramento County Jail. Three days earlier, Tolosa was admitted to the jail intoxicated and detoxification housing was ordered. However, medical staff did not medically evaluate Tolosa for withdrawal treatment at any time prior to his death. Nine hours after admission, the nurse who was to conduct withdrawal monitoring made no attempt to locate Tolosa. Tolosa was found minimally responsive inside of his cell by a deputy. In response, the deputy went to another floor of the jail, found a nurse, and told the nurse that Tolosa needed medical attention. But the nurse did not respond to Tolosa's location and instead told the deputy to call downstairs. Tolosa died. The *Mays* medical expert monitors described the incident as follows: "In summary, this case represents a failure to medically evaluate, treat, and monitor the patient who was at risk for alcohol withdrawal and death. It also represents a failure of emergency response. In the mortality review, the Medical Director did not include key system and individual performance issues that needed to be addressed. This fails to meet the requirements of the Consent Decree, and this death may have been preventable."

(c)    On July 8, 2023, 43-year-old inmate Michael Prince died at the Sacramento County Jail. On July 2, 2023, Prince was admitted to the jail with a medical history including serious

mental illness; noncompliance with medications; neuropathy, peripheral due to diabetes; diabetes mellitus, type 2; elevated blood pressure reading without diagnosis of hypertension; diabetic peripheral neuropathy; body aches; alcohol use disorder; anxiety state, unspecified; bipolar disorder; FOSS III; tested positive for COVID-19; heroin abuse; alcohol abuse; and benzodiazepine withdrawal. From July 2, 2023, to July 8, 2023, jail staff failed adequately to house, monitor, and respond to Prince's obvious and deteriorating medical condition. On July 8, 2023, Prince was found dead in his cell. The *Mays* medical expert monitors found: "[R]ecord review showed that for one patient housed on the detox unit, nurses did not conduct any withdrawal monitoring during the six days prior to his death."; and "On 7/2/2023, a patient was admitted to the detox unit with alcohol and opioid substance use disorder but nurses did not monitor the patient for the six days the patient was in the unit. The patient died on the morning of 7/8/2023." *Mays*, *supra*, ECF No. 168-1 at 15 (E.D. Cal. Aug. 15, 2023). A civil rights lawsuit was filed. *Estate of Prince v. County of Sacramento*, No. 2:24-cv-00992-KJM-JDP (E.D. Cal.). The case remains pending.

(d)      On July 20, 2023, 37-year-old inmate Cody Catanzarite died at the Sacramento County Jail. Catanzarite was admitted and booked into detoxification housing after reporting that he had ingested fentanyl, and he had a history of fentanyl use and alcohol consumption. The intake nurse did not issue routine orders, such as alcohol/opioid withdrawal monitoring, detox medication regimens, or urgent referral to a medical provider. The next day, Catanzarite went into cardiac arrest and died of a drug overdose. The *Mays* medical expert monitors found: "concerns are that after Tier 1 screening, the patient was taken out of the booking loop for processing by custody before Tier 2 medical screening was conducted. In the 5.5 hours before a nurse saw the patient, his COWS score increased from 1 to 9. Given his history of fentanyl and alcohol substance use disorder, starting the patient on opioid and alcohol detox regimens needed to be considered, however because Tier 2 screening was delayed, it was not." *Mays*, *supra*, ECF No. 168-1 at 142 (E.D. Cal. Aug. 15, 2023). A civil rights lawsuit was filed. *Estate of Catanzarite v. County of Sacramento*, No. 2:24-cv-01123-DAD-CKD (E.D. Cal.). The case remains pending.

(e)      On May 27, 2023, 47-year-old inmate Norman Fisher Jr. died of "septic shock," "Klebsiella bacteremia," "pneumonia," and "non-traumatic acute kidney failure" at the Sacramento

46

County Jail. Fisher's health significantly deteriorated over the course of several weeks, without intervention by jail staff. Fisher's fellow inmates, including his cellmate and floor trustee, attempted to obtain care for Fisher on several occasions, without avail. The custody staff discouraged complaints and the medical staff failed to address Fisher's immediate medical needs. The jail staff were deliberately indifferent to Fisher's escalating symptoms and complaints throughout May 2023, until he died on May 27, 2023. The *Mays* medical expert monitors found "critical lapses of care" and that "[Fisher] needed to be sent to the [emergency department] much earlier." *Mays*, *supra*, ECF No. 180-1 at 106–108 (E.D. Cal. July 16, 2024). A civil rights lawsuit was filed. *Estate of Fisher v. County of Sacramento*, No. 2:24-cv-00109-DAD-DB (E.D. Cal.). The case was settled pre-trial for $1,300,000.

(f)     On April 5, 2023, 35-year-old inmate Delion Johnson died of an overdose at the Sacramento County Jail. Johnson was inadequately searched and monitored by jail staff upon intake, including Defendant DAVID GODWIN, who failed to detect a "golf-ball sized" baggie of pills in Johnson's jacket. Inside a holding cell, Johnson distributed and ingested drugs over the course of several hours, within sight of an in-cell surveillance camera which was unmonitored by jail staff, and as jail staff walked by but failed to look into the cell while conducting "safety checks." Eventually, Johnson lost consciousness and passed out inside of the cell. Johnson medical emergency was undetected or ignored for more than three hours, as several jail staff members walked by the cell, without observing or checking on Johnson. Eventually, an inmate worker alerted a jail staff member to Johnson's condition. But it was too late and Johnson died. A civil rights lawsuit was filed. *Estate of Johnson v. County of Sacramento*, United States District Court, Eastern District of California, No. 2:23-cv-01304-KJM-JDP (E.D. Cal.). The case remains pending.

(g)     On July 24, 2022, a 67-year-old inmate (Patient #35) died of sepsis at the Sacramento County Jail. On July 12, 2022, the inmate was admitted to the jail with a medical history including opioid substance use disorder, untreated intestinal cancer, 60 lbs. weight loss, and back surgery. On July 13, 2022, the inmate submitted a health request that he had sepsis and a heart infection but medical staff did not timely address the health request. On July 15, 2022, a medical provider saw the inmate who reported weight loss, intestinal cancer, inability to tolerate solid foods without vomiting, and rectal bleeding—symptoms which warranted immediate admission to the hospital for medical evaluation.

47

The medical provider ordered labs and follow-up in one month, treating the inmate's condition as routine. The inmate died. On August 22, 2022, the Medical Director completed a preliminary mortality review which did not identify lapses in care. The *Mays* Medical Expert monitors found: "The Medical Director's failure to recognize, acknowledge and address serious lapses in medical care quality is likely not to result in improvement in medical care quality for patient[s] in custody." *Mays* ECF No. 168-1 at 138–139; *Mays* ECF No. 162-1 at 79–84.

(h)      On February 15, 2022, 37-year-old inmate Anthony Galley suffered a seizure caused by severe alcohol withdrawal and died at the Sacramento County Main Jail. On February 13, 2022, Galley was admitted into the jail while intoxicated with a medical history of alcohol use disorder and addiction. Jail staff failed to utilize or implement necessary alcohol detoxification protocols, confined Galley to a holding cell without adequate monitoring, and ignored him until he was found unresponsive and died. *Mays*, *supra*, ECF No. 153-4; *Mays*, *supra*, ECF No. 162-1 at 76. A civil rights lawsuit was filed. *Galley v. County of Sacramento*, No. 2:23-cv-00325-WBS-AC (E.D. Cal.). The case remains pending.

(i)      On September 26, 2021, 44-year-old inmate Anthony Cravotta II was beaten into a coma and suffered a traumatic brain injury at the Sacramento County Main Jail. Cravotta was a mentally ill inmate declared incompetent to stand trial (IST) and awaiting transfer to a state hospital for restorative treatment. Jail staff assigned Cravotta (a white inmate) to share a cell with Lemar Burleson (a Black inmate), another mentally ill inmate, who had an extensive history of violence, including housing in total separation ("T-Sep") housing in isolation from other inmates due to assaultive conduct and documented threats: "said he wanted to kill white people"; "says will assault any cellmates he has"; "Threats to assault anyone he is celled with"; "threatened to assault any inmate he is housed with"; and "said he would assault any inmate he gets." On September 24, 2021, one day after Cravotta and Burleson were housed together, a jail staff member reported a conversation with Cravotta: "he got a new cellmate but 'It's not working out too well'" and "said 'if he gets physical I'll have to defend myself.'" On September 26, 2021, Burleson attacked Cravotta inside their cell, including striking Cravotta several times in the head and face with a "blunt" object. Cravotta lay bleeding and struggling to breathe on the floor of the cell. A custody staff member failed to look into the cell and discovery Cravotta during his "safety check."

Multiple streams of Cravotta's blood began to leak from underneath the cell's door into the jail's dayroom which were visible on the jail's closed-circuit television (CCTV) surveillance system but custody staff responsible for monitoring the video feed failed to observe or detect the visible blood streams. More than 22 minutes after the blood streams were visible on the jail's CCTV surveillance system, and about 55 minutes after the last "safety check" by custody staff, an inmate-trustee noticed the streams of blood leaking from under the door of cell, approached the cell for inspection, and observed Cravotta lying on the ground. In response, Burleson pressed the emergency button inside of his cell and reported to custody staff that he "might have killed" his cellmate. Custody staff responding to the scene left Cravotta lying and struggling to breathe on the ground for several minutes, without attempting to stop the bleeding or placing him into a recovery position. A civil rights lawsuit was filed. *Cravotta v. County of Sacramento*, No. 2:22-cv-00167-DJC-AC (E.D. Cal.). The case remains pending.

(j)     On July 24, 2021, inmate Timothy Noble died while withdrawing from opiates at the Sacramento County Main Jail. Days earlier, Noble was booked into the jail and began receiving treatment for opiate withdrawal. Jail staff did not provide Noble with special housing or monitoring. Noble's cellmate observed—but jail staff failed to recognize—that Noble did not eat or drink for two days prior to his death. Sacramento County Sheriff's Department, Report No. 2021-224861; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Noble-2021-.pdf>.

(k)     On August 4, 2020, inmate Travis Welde overdosed at the Sacramento County Main Jail, and died of "hemopericardium due to a ruptured acute myocardial infarction resulting from mixed drug intoxication." Days earlier, Welde was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration." But Welde's urine drug screening test was positive for amphetamines, methamphetamines, THC, MDMA, and opiates. Welde was "engaging in erratic behavior, such as kicking his door and talking nonsensically," and, on August 2, 2020, was transferred to the mental health housing unit. Welde's condition continued to deteriorate, including "smear[ing] feces on himself and his cell walls," "talking to himself" and "yelling unintelligibly," "sweating" or appearing "wet," "flail[ing] his arms," and "sit[ting] and stand[ing] back up repeatedly." On August 3, 2020, Welde told staff that he was "detoxing." But jail staff ignored the threat that Welde was detoxing because "nursing staff believed Welde was outside the time period for

49

detoxing from drug use due to the length of time Welde had been in the jail." Later, the jail's mental health staff concluded that Welde was "gravely disabled" and he was "placed him on the waiting list for a higher level of mental health care." On August 4, 2020, Welde was "standing naked at the cell door," "breathing heavily," and "bouncing back and forth on the balls of his feet." Jail staff asked Welde if he was okay and, in response, Welde "grunted and shook his head." But jail staff continued to ignore him. An hour later, Welde was found lying "face down and naked" on the floor. Jail staff continued to ignore him. Later, jail staff entered the cell and determined that Welde was not breathing and had no pulse. Sacramento County Sheriff's Department, Report No. 2020-248721; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Review-Welde-.pdf>.

(l)     On December 9, 2019, inmate Antonio Thomas was beaten into a coma by cellmate Joshua Vaden at the Sacramento County Main Jail, and later died from "complications of anoxic encephalopathy associated with assault." Thomas and Vaden had extensive mental health histories known to jail staff, and complaints reflecting difficulties with cellmates based on prior incarceration at the jail. Thomas was held on a probation violation, and Vaden was held on charges of murder. Thomas and Vaden were housed together in the jail's general population. Vaden submitted a grievance that he did not want to be housed with Thomas which was ignored by jail staff. Vaden attacked Thomas, who repeatedly activated the emergency button in his cell during the attack. Jail staff called the cell in response to the emergency button's activation but, when no response was received, ignored the emergency button's activation. Later, jail staff received notice from an inmate that there was a "man down" in the cell. Jail staff responded to the cell and found Thomas unconscious, more than 10 minutes after the activation of the emergency button inside of the cell. The jail "supervisor's overview" of the classification and housing of Thomas and Vaden found no deficiencies or policy violations by jail staff. A civil rights lawsuit was filed. *Estate of Thomas v. County of Sacramento*, No. 2:20-cv-00903-KJM-DB (E.D. Cal.). The case was settled pre-trial for $1,500,000

(m)     On July 19, 2019, inmate Nicholas Overbey was found dead inside of his cell at the Sacramento County Main Jail. Overbey was assigned to the jail's special housing but was ignored and unmonitored by jail staff. Overbey's cellmate pressed the emergency call button located inside of the cell and informed jail staff that Overbey was not breathing. Jail staff responded and found Overbey lying

on his back foaming at the mouth. Jail staff rubbed Overbey's sternum causing blood and other fluids to expel from his nose and mouth. Overbey's cellmate reported that he "had not been moving for at least a day." Sacramento County Sheriff's Department, Report No. 2019-255337; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-Overbey.pdf>.

(n)    On July 8, 2019, inmate Bryan Debbs was beaten, stabbed, and choked during a nearly 30-minute continuous assault by cellmate Christian Ento at the Sacramento County Main Jail, and later died of "complications of neck compression." Days earlier, Debbs and Ento were classified by jail staff as "gravely disabled" as housed together in a continuously video-monitored cell. Jail staff failed to observe the monitor as Ento assaulted Debbs. A civil rights lawsuit was filed and partially settled for $600,000. *Estate of Debbs v. County of Sacramento*, No. 2:20-cv-01153-TLN-DB (E.D. Cal.). The remainder of the case is pending.

(o)    On June 11, 2019, inmate Andrew Armstead overdosed at the Sacramento County Main Jail, and died of "methamphetamine intoxication." Armstead was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration." A day after booking, Armstead was summoned for a classification interview but failed to appear. Later, jail staff observed Armstead inside of his cell and non-responsive on a bunk. Later, Armstead's cellmate pressed the emergency intercom button inside the cell and reported that Armstead was non-responsive. Later, jail staff responded to the cell and observed that Armstead had no pulse. Armstead's blood was found to contain amphetamine and methamphetamine. Sacramento County Sheriff's Department, Report No. 2019-204534; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-Armstead.pdf>.

322.    Lack of Leadership: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT lack competent leadership, including where Defendants ERIC SERGIENKO and JIM COOPER have consistently failed to facilitate and provide adequate care for inmates/patients at the jail. For example, on January 27, 2025, the Sixth Monitoring Report of the Medical Consent Decree found that, during the period that DAVID BAREFIELD SR. died in the jail, "**The County lacks adequate medical leadership at the jail.** [¶] The Consent Decree provisions that are related to medical care have not continued to improve. The areas of inadequate progress include: medical provider backlogs,

51

utilization management, specialty services, chronic disease tracking system, adoption of clinical guidelines, and a medically supervised substance withdrawal program. In addition, the County has not developed a system to regularly review provider quality. Previous reports have identified systemic issues in each of these areas, but the County has not meaningfully responded to these issues and most of these areas either have not improved or have worsened. [¶] The monitors identified patients with serious medical needs that required medical intervention and follow-up. We forwarded these cases to the County to coordinate follow-up care. However, the County took no action to provide these patients needed medical care, weeks or months after forwarding the cases to medical leadership. [¶] The County's failure to take action on behalf of these patients showed a callous disregard for their safety and well-being. In over 20 years of monitoring health care in prisons and jails, we have never encountered a situation in which medical leadership failed to ensure appropriate medical care follow-up of patients." *Mays*, *supra*, ECF No. 197-1 at 16 (E.D. Cal. Jan. 27, 2025) (fn. omitted).

323.    Admissions: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER have admitted that the inmate care provided at correctional facilities under their care is deficient. For example:

(a)    In a June 2024 statement to the press related to three in-custody deaths occurring within one and one-half months, Defendants SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and JIM COOPER's spokesperson, sergeant Amar Gandhi, stated: "Medical care seems to be the number one issue right now, of everything going on in our facilities, and—unfortunately—it's something that we have zero sphere of control over. * * * Right now, there's a very clear gap in the medical care required and what's being given." ABC10, *County Jail inmates have died in the past month and a half. What's going on?* (June 20, 2024), available at: <https://www.abc10.com/article/news/local/sacramento-county-officials-talk-about-recent-jail-deaths/103-9cf90a3c-2b0f-4153-929a-287a3eda0e0b>.

(b)    On September 27, 2023, in a press conference related to arrests after a medical assistant and five others were allegedly found to be providing drugs, cell phones, and other materials to inmates in-custody, Defendant JIM COOPER stated, "I take responsibility for my deputies—their actions and what they do." Defendant JIM COOPER expressly disclaimed the actions of "jail medical [staff]" because "they're inept." Defendant JIM COOPER stated, "I'm at my breaking point," and raised

concerns with the practice of transporting inmates to the emergency room, which required two deputies to accompany the inmate at the hospital: "Their method is, when there's a problem, it's just easier to send somebody out [to the emergency room]. That's not the way you do it." The Sacramento Bee, *'I'm at my breaking point': Sacramento sheriff calls for jail health care overhaul* (Sep. 27, 2023), available at: <https://www.sacbee.com/news/local/article279795054.html>.

324.    Delayed Investigations & Inadequate Re-Training: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain a deficient policy and custom of unreasonable delays in investigating in-custody incidents, injuries, and deaths occurring at jail facilities, including personnel's potential misconduct and policy violations and the need for new or different policies and procedures to prevent future harm. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT were obligated but failed timely to create and implement policies related to "Review of Custody Death," pursuant to the *Mays* Consent Decree. For example:

(a)    On July 31, 2018, the Report on Suicide Prevention Practices Within the Sacramento County Jail System found that "the Sacramento County Jail System does *not* currently engage in a viable mortality review process…" *Mays*, *supra*, ECF No. 1-4 at 57 (E.D. Cal. July 31, 2018).

(b)    On January 20, 2021, the First Monitoring Report of Medical Experts found "noncompliance." *Mays*, *supra*, ECF No. 136-1 at 50–52 (E.D. Cal. Jan. 20, 2021). The First Monitoring Report of Suicide Prevention Practices, filed January 20, 2021, found: "This provision is in Non-Compliance." *Mays*, *supra*, ECF No. 136-3 at 76–77 (E.D. Cal. Jan. 20, 2021).

(c)    On October 4, 2021, the Second Monitoring Report of Medical Experts found that "[t]he Mortality Review process fails to identify problems with health care systems and quality of care," for example, "[n]one of the reviews assessed the appropriateness of the care provided, the effectiveness of relevant policies and procedures, or identified opportunities for improvement in the delivery of care in order to prevent future deaths" and "[t]here were no corrective action plans developed for any of the

deaths, which seems largely due to the failure to recognize that one was needed." *Mays*, *supra*, ECF No. 149-1 at 64 (E.D. Cal. Oct. 4, 2021).

(d)     On October 25, 2022, the Third Monitoring Report of Medical Experts found that "[t]he Mortality Review process fails to identify problems with health care systems and quality of care," for example, that "reviews still lack identification and analysis of lapses in care, systemic issues, and opportunities for improvement" and that, "*in several cases, significant lapses in care and system issues were unrecognized, glossed over, or ignored all together.*" *Mays*, *supra*, ECF No. 162-1 at 13 (E.D. Cal. Oct. 25, 2022).

(e)     On August 15, 2023, the Fourth Monitoring Report of Medical Experts found "[l]ack of evaluation of medical care quality, including mortality reviews." *Mays*, *supra*, ECF No. 168-1 at 6 (E.D. Cal. Aug. 15, 2023). Specifically, "[i]n the over 3 years since the Consent Decree has been in effect, the County has not developed and implemented any system for evaluation of medical care quality to ensure that it meets contemporary standards of medical care." *Id*. at 13. For example, "*identification and evaluation of medical care quality is virtually absent, even in mortality records that show multiple lapses in care*" and "[c]orrective action plans are exclusively devoted to system and nursing issues, not medical care quality issues." *Id*. at 13. "This has been a persistent issue throughout monitoring resulting in adverse patient outcomes." *Id*. at 13–14.

(i)     On July 16, 2024, the Fifth Monitoring Report of the Medical Consent Decree found that "some reviews do not identify critical lapses in care," "[m]edical and mental health mortality reviews are conducted independently and not integrated for analysis of problems," "[p]reliminary mortality reviews are not timely finalized," and "there is no evidence that corrective action plans are timely and fully implemented." *Mays*, *supra*, ECF No. 180-1 at 105–111 (E.D. Cal. July 16, 2024).

(j)     On January 27, 2025, the Sixth Monitoring Report of the Medical Consent Decree found: "The review of medical care quality needs to be more rigorous to identify system and individual performance issues that need to be addressed." *Mays*, *supra*, ECF No. 197-1 at 16 (E.D. Cal. Jan. 27, 2025).

325.    Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT

54

OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER do not meaningfully discipline, re-train, correct, or otherwise penalize jail staff involved in critical incidents where preventable deaths and injuries are sustained by inmates, including those described above. Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's routine failure to hold jail staff accountable has created and encouraged an environment where jail staff believe they can "get away with anything."

326.    Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of the deficient policies or customs because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons, including the death of DAVID BAREFIELD SR.

327.    Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's inadequate policies, customs, training, supervision, and control of personnel and inmates was a moving force behind and contributed to the death of DAVID BAREFIELD SR.

## FIRST CLAIM

### Unreasonable Post-Arrest Care

### (U.S. Const. Amend. IV; 42 U.S.C. § 1983)

328.    Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, and DOE 1.

55

329.   The allegations of the preceding paragraphs 1 to 327 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

330.   *Individual Liability*: Defendants SEADMAN and DOE 1 inadequately supervised, monitored, and responded to DAVID BAREFIELD SR., putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of the Fourth Amendment to the United States Constitution.

331.   *Municipal / Supervisory Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and KATHERINE LESTER maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., in violation of the Fourth Amendment to the United States Constitution.

332.   Defendants KATHERINE LESTER, SEADMAN, and DOE 1's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

333.   DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, and DOE 1's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive compensatory (survival) and nominal damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, and DOE 1; and punitive damages against Defendants KATHERINE LESTER, SEADMAN, and DOE 1.

WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder appears.

## SECOND CLAIM

### Deliberate Indifference

### (U.S. Const. Amend. IV / XIV; 42 U.S.C. § 1983)

334.   Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF

56

**FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barefield v. City of Sacramento*, United States District Court, Eastern District of California, Case No. 2:24-cv-03427-TLN-JDP

SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5.

335.    The allegations of the preceding paragraphs 1 to 327 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

336.    *Individual Liability*: Defendants JAMES EDDINS, MICHAEL LOLLING, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5 inadequately supervised, monitored, and responded to DAVID BAREFIELD SR., putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of the Fourth and/or Fourteenth Amendment to the United States Constitution.

337.    *Municipal / Supervisory Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., in violation of the Fourth and/or Fourteenth Amendment to the United States Constitution.

338.    Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

339.    DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive compensatory (survival) and nominal damages against Defendants CITY OF

57

1  SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN,

2  COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH

3  SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO

4  COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO,

5  LEWIS, and DOE 1 to 5; and punitive damages against Defendants KATHERINE LESTER,

6  SEADMAN, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID

7  GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5.

8      WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder

9  appears.

10                         **THIRD CLAIM**

11                         **Excessive Force**

12             **(U.S. Const. Amend. IV / XIV; 42 U.S.C. § 1983)**

13      340.    Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to

14  California Code of Civil Procedure § 377.30) against Defendants SEADMAN, DAVID GODWIN,

15  MATTHEW BLANCO, LEWIS, DOE 1, and DOE 5.

16      341.    The allegations of the preceding paragraphs 1 to 312 are realleged and incorporated, to the

17  extent relevant and as if fully set forth in this Claim.

18      342.    *Individual Liability*: Defendants SEADMAN, DAVID GODWIN, MATTHEW

19  BLANCO, LEWIS, DOE 1, and DOE 5 used—or failed to intervene in and/or participated in use of—

20  unreasonable and excessive force against DAVID BAREFIELD SR., including by yanking, twisting, and

21  dragging DAVID BAREFIELD SR.'s arms and body while he was medically distressed, in violation of

22  the Fourth and/or Fourteenth Amendment to the United States Constitution.

23      343.    Defendants SEADMAN, DAVID GODWIN, MATTHEW BLANCO, LEWIS, DOE 1,

24  and DOE 5's actions and inactions were motivated by evil motive or intent, involved reckless or callous

25  indifference to constitutional rights, or were wantonly or oppressively done.

26      344.    DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants

27  SEADMAN, DAVID GODWIN, MATTHEW BLANCO, LEWIS, DOE 1, and DOE 5's actions and

28  inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive compensatory (survival)

58

1   and nominal damages against Defendants SEADMAN, DAVID GODWIN, MATTHEW BLANCO,

2   LEWIS, DOE 1, and DOE 5; and punitive damages against Defendants SEADMAN, DAVID GODWIN,

3   MATTHEW BLANCO, LEWIS, DOE 1, and DOE 5.

4        WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder

5   appears.

6                                    **<u>FOURTH CLAIM</u>**

7                        **Title II of the Americans with Disabilities Act**

8                                **(42 U.S.C. § 12101, *et seq*.)**

9        345.    Plaintiff ESTATE OF DAVID BAREFIELD SR. (pursuant to California Code of Civil

10  Procedure § 377.30) asserts this Claim against Defendants CITY OF SACRAMENTO, SACRAMENTO

11  POLICE DEPARTMENT, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

12  DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S

13  DEPARTMENT.

14       346.    The allegations of the preceding paragraphs 1 to 344 are realleged and incorporated, to the

15  extent relevant and as if fully set forth in this Claim.

16       347.    Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT,

17  COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH

18  SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT qualify as a "public entity"

19  within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104. DAVID BAREFIELD SR. had

20  an impairment that substantially limited one or more major life activities and had a record of such an

21  impairment.

22       348.    *Vicarious Liability*: Defendants SEADMAN, JAMES EDDINS, DAVID GODWIN,

23  MATTHEW BLANCO, LEWIS, and DOE 1 to 5 failed reasonably to accommodate DAVID

24  BAREFIELD SR.'s disability, where a reasonable accommodation was available, including by, *inter*

25  *alia*, transporting DAVID BAREFIELD SR. to a hospital; conducting a timely and adequate medical

26  screening; issuing routine medical orders or an urgent referral to a medical provider; transferring DAVID

27  BAREFIELD SR. to a facility that could provide necessary medical care or treatment; monitoring

28  DAVID BAREFIELD SR. based on an immediate medical need; and/or timely responding to DAVID

                                              59

1    BAREFIELD SR. based on an immediate medical need, with deliberate indifference or reckless

2    disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

3    349.    *Municipal /Supervisory Liability*: Defendants CITY OF SACRAMENTO,

4    SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO,

5    SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO,

6    SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or

7    customs of action and inaction resulting in harm to DAVID BAREFIELD SR., with deliberate

8    indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101,

9    *et seq*.

10    350.    Plaintiff DAVID BAREFIELD SR. was injured as a direct and proximate result of

11    Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE

12    LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT

13    OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, SACRAMENTO COUNTY

14    SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and

15    DOE 1 to 5's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive

16    compensatory (survival) and nominal damages against Defendants CITY OF SACRAMENTO,

17    SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, SACRAMENTO

18    COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S

19    DEPARTMENT.

20    WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder

21    appears.

22    ## FIFTH CLAIM

23    ### § 504 of the Rehabilitation Act

24    ### (29 U.S.C. § 701, *et seq.*)

25    351.    Plaintiff ESTATE OF DAVID BAREFIELD SR. (pursuant to California Code of Civil

26    Procedure § 377.30) asserts this Claim against Defendants CITY OF SACRAMENTO, SACRAMENTO

27    POLICE DEPARTMENT, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

28    DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S

60

1    DEPARTMENT.

2    352.    The allegations of the preceding paragraphs 1 to 344 are realleged and incorporated, to the

3    extent relevant and as if fully set forth in this Claim.

4    353.    Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT,

5    COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH

6    SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT qualify as a "public entity"

7    within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104, and receive federal financial

8    assistance. DAVID BAREFIELD SR. had an impairment that substantially limited one or more major

9    life activities and had a record of such an impairment.

10    354.    *Vicarious Liability*: Defendants SEADMAN, JAMES EDDINS, DAVID GODWIN,

11    MATTHEW BLANCO, LEWIS, and DOE 1 to 5 failed reasonably to accommodate DAVID

12    BAREFIELD SR.'s disability, where a reasonable accommodation was available, including by, *inter*

13    *alia*, transporting DAVID BAREFIELD SR. to a hospital; conducting a timely and adequate medical

14    screening; issuing routine medical orders or an urgent referral to a medical provider; transferring DAVID

15    BAREFIELD SR. to a facility that could provide necessary medical care or treatment; monitoring

16    DAVID BAREFIELD SR. based on an immediate medical need; and/or timely responding to DAVID

17    BAREFIELD SR. based on an immediate medical need, with deliberate indifference or reckless

18    disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

19    355.    *Municipal /Supervisory Liability*: Defendants CITY OF SACRAMENTO,

20    SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO,

21    SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO,

22    SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or

23    customs of action and inaction resulting in harm to DAVID BAREFIELD SR., with deliberate

24    indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

25    356.    Plaintiff DAVID BAREFIELD SR. was injured as a direct and proximate result of

26    Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE

27    LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT

28    OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, SACRAMENTO COUNTY

61

**FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barefield v. City of Sacramento*, United States District Court, Eastern District of California, Case No. 2:24-cv-03427-TLN-JDP

SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and

DOE 1 to 5's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive

compensatory (survival) and nominal damages against Defendants CITY OF SACRAMENTO,

SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, SACRAMENTO

COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S

DEPARTMENT.

WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder

appears.

## SIXTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)

357.     Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and

LOIS BAREFIELD assert this Claim against Defendants CITY OF SACRAMENTO, SACRAMENTO

POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO,

SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES

EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5.

358.     The allegations of the preceding paragraphs 1 to 356 are realleged and incorporated, to the

extent relevant and as if fully set forth in this Claim.

359.     Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and

LOIS BAREFIELD shared a close relationship and special bond with DAVID BAREFIELD SR., which

included deep attachments, commitments, and distinctively personal aspects of their lives and was typical

of a loving relationship, prior to his death. Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD,

FINAS BAREFIELD, and LOIS BAREFIELD frequently visited and spoke with DAVID BAREFIELD

SR. and shared a loving familial relationship.

360.     *Municipal / Supervisory / Individual Liability*: Defendants CITY OF SACRAMENTO,

SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF

SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC

62

SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5 caused the unwarranted interference with, and premature termination of, Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD's familial association with DAVID BAREFIELD SR., in the violation of the Fourteenth Amendment to the United States Constitution.

361.    Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

362.    Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD were injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5's actions and inactions, entitling them to receive compensatory (wrongful death) and nominal damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5; and punitive damages against Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5.

WHEREFORE, Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD pray for relief as hereunder appears.

\ \ \

## SEVENTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. I; 42 U.S.C. § 1983)

363.    Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD assert this Claim against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5.

364.    The allegations of the preceding paragraphs 1 to 356 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

365.    Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD shared a close relationship and special bond with DAVID BAREFIELD SR., which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a loving relationship, prior to his death. Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD frequently visited and spoke with DAVID BAREFIELD SR. and shared a loving familial relationship.

366.    *Municipal / Supervisory / Individual Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5 caused the unwarranted interference with, and premature termination of, Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD's familial association with DAVID BAREFIELD SR., in the violation of the First Amendment to the United States Constitution.

367.    Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5's actions and inactions were motivated by evil motive or intent, involved reckless or

64

1    callous indifference to constitutional rights, or were wantonly or oppressively done.

2    368.    Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and

3    LOIS BAREFIELD were injured as a direct and proximate result of Defendants CITY OF

4    SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN,

5    COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH

6    SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO

7    COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO,

8    LEWIS, and DOE 1 to 5's actions and inactions, entitling them to receive compensatory (wrongful death)

9    and nominal damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE

10    DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO,

11    SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES

12    EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

13    COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5; and punitive damages

14    against Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS,

15    MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1

16    to 5.

17    WHEREFORE, Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS

18    BAREFIELD, and LOIS BAREFIELD pray for relief as hereunder appears.

19    **EIGHTH CLAIM**

20    **Unreasonable Post-Arrest Care**

21    **(Cal. Const. Art. I § 13)**

22    369.    Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to

23    California Code of Civil Procedure § 377.30) against Defendants CITY OF SACRAMENTO,

24    SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, and DOE 1.

25    370.    The allegations of the preceding paragraphs 1 to 327 are realleged and incorporated, to the

26    extent relevant and as if fully set forth in this Claim.

27    371.    *Individual Liability*: Defendants SEADMAN and DOE 1 inadequately supervised,

28    monitored, and responded to DAVID BAREFIELD SR., putting him at substantial risk of suffering

65

serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of Article I, Section 13 of the California Constitution.

372.    *Municipal / Supervisory Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and KATHERINE LESTER maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., in violation of Article I, Section 13 of the California Constitution.

373.    *Vicarious Liability*: Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code § 815.2(a) for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants KATHERINE LESTER, SEADMAN, and DOE 1.

374.    Defendants KATHERINE LESTER, SEADMAN, and DOE 1's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

375.    DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, and DOE 1's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive compensatory (survival) and nominal damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, and DOE 1; and punitive damages against Defendants KATHERINE LESTER, SEADMAN, and DOE 1.

WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder appears.

## NINTH CLAIM

### Excessive Force

### (Cal. Const. Art. I § 13)

376.    Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, SEADMAN, COUNTY OF SACRAMENTO,

66

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, DAVID GODWIN, MATTHEW BLANCO, LEWIS, DOE 1, and DOE 5.

377.    The allegations of the preceding paragraphs 1 to 312 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

378.    *Individual Liability*: Defendants SEADMAN, DAVID GODWIN, MATTHEW BLANCO, LEWIS, DOE 1, and DOE 5 used—or failed to intervene in and/or participated in use of— unreasonable and excessive force against DAVID BAREFIELD SR., including by yanking, twisting, and dragging DAVID BAREFIELD SR.'s arms and body while he was medically distressed, in violation of Article I, Section 13 of the California Constitution.

379.    *Vicarious Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code § 815.2(a) for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants SEADMAN, DAVID GODWIN, MATTHEW BLANCO, LEWIS, DOE 1, and/or DOE 5.

380.    Defendants SEADMAN, DAVID GODWIN, MATTHEW BLANCO, LEWIS, DOE 1, and DOE 5's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

381.    DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants SEADMAN, DAVID GODWIN, MATTHEW BLANCO, LEWIS, DOE 1, and DOE 5's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive compensatory (survival) and nominal damages against Defendants SEADMAN, DAVID GODWIN, MATTHEW BLANCO, LEWIS, DOE 1, and DOE 5; and punitive damages against Defendants SEADMAN, DAVID GODWIN, MATTHEW BLANCO, LEWIS, DOE 1, and DOE 5.

WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder appears.

\ \ \

\ \ \

\ \ \

**TENTH CLAIM**

**Failure to Summon Medical Care**

**(Cal. Gov. Code § 845.6)**

382.     Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5.

383.     The allegations of the preceding paragraphs 1 to 327 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

384.     *Individual Liability*: Defendants SEADMAN, JAMES EDDINS, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5 knew or had reason to know that DAVID BAREFIELD SR. was in need of immediate medical care and failed to take reasonable action to summon such medical care, in violation of California Government Code § 845.6.

385.     *Municipal / Supervisory Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., in violation of California Government Code § 845.6.

386.     *Vicarious Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and/or DOE 1 to

68

5.

387.    Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and/or DOE 1 to 5's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

388.    DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive compensatory (survival) and nominal damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5; and punitive damages against Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and/or DOE 1 to 5.

WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder appears.

## ELEVENTH CLAIM

### California Public Records Act

### (Cal. Gov. Code § 7920.000 *et seq.*)

389.    Plaintiffs ESTATE OF DAVID BAREFIELD SR. (pursuant to Cal. Code Civ. Proc. § 377.30), DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD assert this Claim against Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

390.    The allegations of the preceding paragraphs 1 to 312 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

69

391. Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT failed to produce public records, including in a timely and complete manner, in violation of California Government Code § 7920.000 *et seq*.

392. Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD were injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's actions and inactions, entitling them to receive declaratory and injunctive relief against Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

WHEREFORE, Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD pray for relief as hereunder appears.

## TWELFTH CLAIM

### Tom Bane Civil Rights Act

### (Cal. Civ. Code § 52.1)

393. Plaintiffs ESTATE OF DAVID BAREFIELD SR. (pursuant to California Code of Civil Procedure § 377.30), DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD assert this Claim against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5.

394. The allegations of the preceding paragraphs 1 to 392 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

Unreasonable Post-Arrest Care

395. *Individual Liability*: Defendants SEADMAN and DOE 1 inadequately supervised, monitored, and responded to DAVID BAREFIELD SR., putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official

70

in the circumstances would have appreciated the high degree of risk involved, with deliberate

indifference or reckless disregard, in violation of the Fourth Amendment to the United States

Constitution; and Article I, Section 13 of the California Constitution.

396.    *Municipal / Supervisory Liability*: Defendants CITY OF SACRAMENTO,

SACRAMENTO POLICE DEPARTMENT, and KATHERINE LESTER maintained policies or customs

of action and inaction resulting in harm to DAVID BAREFIELD SR., with deliberate indifference or

reckless disregard, in violation of the Fourth Amendment to the United States Constitution; and Article I,

Section 13 of the California Constitution.

Deliberate Indifference

397.    *Individual Liability*: Defendants JAMES EDDINS, MICHAEL LOLLING, DAVID

GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5 inadequately supervised, monitored, and

responded to DAVID BAREFIELD SR., putting him at substantial risk of suffering serious harm,

without taking reasonable available measures to abate that risk, where a reasonable official in the

circumstances would have appreciated the high degree of risk involved, with deliberate indifference or

reckless disregard, in violation of the Fourth and/or Fourteenth Amendment to the United States

Constitution; and Article I, § 7(a) and/or § 13 of the California Constitution.

398.    *Municipal / Supervisory Liability*: Defendants CITY OF SACRAMENTO,

SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO,

SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO,

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or

customs of action and inaction resulting in harm to DAVID BAREFIELD SR., with deliberate

indifference or reckless disregard, in violation of the Fourth and/or Fourteenth Amendment to the United

States Constitution; and Article I, § 7(a) and/or § 13 of the California Constitution.

Excessive Force

399.    *Individual Liability*: Defendants SEADMAN, DAVID GODWIN, MATTHEW

BLANCO, LEWIS, DOE 1, and DOE 5 used—or failed to intervene in and/or participated in use of—

unreasonable and excessive force against DAVID BAREFIELD SR., including by yanking, twisting, and

dragging DAVID BAREFIELD SR.'s arms and body while he was medically distressed, with deliberate

71

indifference or reckless disregard, in violation of the Fourth and/or Fourteenth Amendment to the United States Constitution; and Article I, § 7(a) and/or § 13 of the California Constitution.

<u>Title II of the Americans with Disabilities Act & § 504 of the Rehabilitation Act</u>

400.    *Vicarious Liability*: Defendants SEADMAN, JAMES EDDINS, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5 failed reasonably to accommodate DAVID BAREFIELD SR.'s disability, where a reasonable accommodation was available, including by, *inter alia*, transporting DAVID BAREFIELD SR. to a hospital; conducting a timely and adequate medical screening; issuing routine medical orders or an urgent referral to a medical provider; transferring DAVID BAREFIELD SR. to a facility that could provide necessary medical care or treatment; monitoring DAVID BAREFIELD SR. based on an immediate medical need; and/or timely responding to DAVID BAREFIELD SR. based on an immediate medical need, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

401.    *Municipal /Supervisory Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

<u>Unwarranted Interference with Familial Association</u>

402.    *Municipal / Supervisory / Individual Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5 caused the unwarranted interference with, and premature termination of, Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD's familial association with

72

DAVID BAREFIELD SR., with deliberate indifference or reckless disregard, in violation of the First and Fourteenth Amendments to the United States Constitution; and Article I, Section 7(a) of the California Constitution.

Failure to Summon Medical Care

403.    *Individual Liability*: Defendants SEADMAN, JAMES EDDINS, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5 knew or had reason to know that DAVID BAREFIELD SR. was in need of immediate medical care and failed to take reasonable action to summon such medical care, with deliberate indifference or reckless disregard, in violation of California Government Code § 845.6.

404.    *Municipal / Supervisory Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., with deliberate indifference or reckless disregard, in violation of California Government Code § 845.6.

California Public Records Act

405.    Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT failed to produce public records, including in a timely and complete manner, with deliberate indifference or reckless disregard, in violation of California Government Code § 7920.000 *et seq*.

(Allegations Common to All Theories)

406.    *Vicarious Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO,

73

LEWIS, and/or DOE 1 to 5.

407.    Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

408.    DAVID BAREFIELD SR. and Plaintiffs DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD were injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5's actions and inactions, entitling Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD to receive compensatory (survival and wrongful death) and treble damages and penalties against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5; and punitive damages against Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5.

WHEREFORE, Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD pray for relief as hereunder appears.

## THIRTEENTH CLAIM

### Intentional Infliction of Emotional Distress

409.    Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to

74

California Code of Civil Procedure § 377.30) against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, JAMES EDDINS, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5.

410.    The allegations of the preceding paragraphs 1 to 408 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

411.    *Individual Liability*: Defendants SEADMAN, JAMES EDDINS, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5 engaged in outrageous conduct, including by inadequately supervising, monitoring, and responding to DAVID BAREFIELD SR.'s immediate medical need, in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, with intent or reckless disregard of the probability that DAVID BAREFIELD SR. would suffer emotional distress and he did suffer severe emotional distress.

412.    *Vicarious Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a) for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants SEADMAN, JAMES EDDINS, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and/or DOE 1 to 5.

413.    Defendants SEADMAN, JAMES EDDINS, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

414.    DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants SEADMAN, JAMES EDDINS, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD SR. to receive compensatory (survival) and nominal damages against Defendants CITY OF SACRAMENTO, SACRAMENTO

75

POLICE DEPARTMENT, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

DEPARTMENT OF HEALTH SERVICES, JAMES EDDINS, SACRAMENTO COUNTY SHERIFF'S

DEPARTMENT, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5; and punitive

damages against Defendants SEADMAN, JAMES EDDINS, DAVID GODWIN, MATTHEW

BLANCO, LEWIS, and DOE 1 to 5.

WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder

appears.

### FOURTEENTH CLAIM

#### Negligence

415.     Plaintiff ESTATE OF DAVID BAREFIELD SR. asserts this Claim (pursuant to

California Code of Civil Procedure § 377.30) against Defendants CITY OF SACRAMENTO,

SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF

SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC

SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S

DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5.

416.     The allegations of the preceding paragraphs 1 to 414 are realleged and incorporated, to the

extent relevant and as if fully set forth in this Claim.

417.     *Individual Liability*: Defendants SEADMAN, JAMES EDDINS, MICHAEL LOLLING,

DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5 owed DAVID BAREFIELD SR. a

duty of care and breached that duty, including by inadequately supervising, monitoring, and responding

to DAVID BAREFIELD SR.'s immediate medical need, in violation of the United States and California

Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training,

national and local standards, and/or California Civil Code § 1714(a).

418.     *Supervisory Liability*: Defendants KATHERINE LESTER, ERIC SERGIENKO, and JIM

COOPER owed DAVID BAREFIELD SR. a duty of care, including (a) through Defendants

KATHERINE LESTER, ERIC SERGIENKO, and JIM COOPER's own conduct in creating or

increasing an unreasonable risk of harm to DAVID BAREFIELD SR.; (b) through Defendants

KATHERINE LESTER, ERIC SERGIENKO, and JIM COOPER's special relationships (employer-

76

**FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**

*Estate of Barefield v. City of Sacramento*, United States District Court, Eastern District of California, Case No. 2:24-cv-03427-TLN-JDP

employee) with Defendants SEADMAN, JAMES EDDINS, MICHAEL LOLLING, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and/or DOE 1 to 5; and/or (c) through Defendants KATHERINE LESTER, ERIC SERGIENKO, and JIM COOPER's special relationships (public protection and/or jailer-prisoner) with, and affirmative duty to protect, DAVID BAREFIELD SR., and breached that duty including by maintaining policies or customs of action and inaction which resulted in harm to DAVID BAREFIELD SR. in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

419.    *Municipal Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR., in violation of California Government Code §§ 815.6, 845.6.

420.    *Vicarious Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and/or DOE 1 to 5.

421.    Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

422.    DAVID BAREFIELD SR. was injured as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF

77

**FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barefield v. City of Sacramento*, United States District Court, Eastern District of California, Case No. 2:24-cv-03427-TLN-JDP

HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO

COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO,

LEWIS, and DOE 1 to 5's actions and inactions, entitling Plaintiff ESTATE OF DAVID BAREFIELD

SR. to receive compensatory (survival) damages against Defendants CITY OF SACRAMENTO,

SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF

SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC

SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S

DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5;

and punitive damages against Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO,

JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO,

LEWIS, and DOE 1 to 5.

WHEREFORE, Plaintiff ESTATE OF DAVID BAREFIELD SR. prays for relief as hereunder

appears.

### FIFTEENTH CLAIM

**Wrongful Death**

**(Cal. Code Civ. Proc. § 377.60)**

423.    Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD assert this Claim against

Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE

LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT

OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING,

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN,

MATTHEW BLANCO, LEWIS, and DOE 1 to 5.

424.    The allegations of the preceding paragraphs 1 to 422 are realleged and incorporated, to the

extent relevant and as if fully set forth in this Claim.

425.    DAVID BAREFIELD SR. and Plaintiffs DAVID BAREFIELD II and AARON

BAREFIELD shared a natural parent-child relationship with DAVID BAREFIELD SR. and DAVID

BAREFIELD SR. held out Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD as his own.

For example, DAVID BAREFIELD SR. frequently visited and spoke with Plaintiffs DAVID

78

BAREFIELD II and AARON BAREFIELD and shared a loving father-son relationship, prior to DAVID BAREFIELD SR.'s death. DAVID BAREFIELD SR. is the biological parent of Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD, and Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD are DAVID BAREFIELD SR.'s heirs and successors-in-interest.

426.    *Individual Liability*: Defendants SEADMAN, JAMES EDDINS, MICHAEL LOLLING, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5 caused DAVID BAREFIELD SR.'s death by wrongful act and neglect, including by inadequately supervising, monitoring, and responding to DAVID BAREFIELD SR.'s immediate medical need, in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

427.    *Municipal / Supervisory Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER caused DAVID BAREFIELD SR.'s death by wrongful act and neglect, including by maintained policies or customs of action and inaction resulting in harm to DAVID BAREFIELD SR. in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, California Government Code §§ 815.6, 845.6, and/or California Civil Code § 1714(a).

428.    *Vicarious Liability*: Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and/or DOE 1 to 5.

429.    Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES

EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

430.    DAVID BAREFIELD SR. died as a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5's actions and inactions, entitling Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD to receive compensatory (wrongful death) damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5; and punitive damages against Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5.

WHEREFORE, Plaintiffs DAVID BAREFIELD II and AARON BAREFIELD pray for relief as hereunder appears.

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD seek Judgment as follows:

1.     For an award of compensatory, general, special, and nominal damages (including survival and wrongful death damages under federal and state law) against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5, according to proof at trial;

2.     For an award of exemplary/punitive damages against Defendants KATHERINE LESTER, SEADMAN, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done; and/or constituted oppression, fraud, or malice resulting in great harm;

3.     For funeral and/or burial expenses;

4.     For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, KATHERINE LESTER, SEADMAN, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, JAMES EDDINS, MICHAEL LOLLING, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, DAVID GODWIN, MATTHEW BLANCO, LEWIS, and DOE 1 to 5, pursuant to California Civil Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, pursuant to California Civil

81

1  Code § 818);

2       5.    For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29

3  U.S.C. § 794, 42 U.S.C. § 12205, California Government Code § 7923.115, California Civil Code § 52.1,

4  California Code of Civil Procedure § 1021.5, and any other statute as may be applicable;

5       6.    For interest; and

6       7.    For an award of any other further relief, as the Court deems fair, just, and equitable.

7  Dated: February 19, 2025                 Respectfully Submitted,

8

9

10 By: _____

11        Mark E. Merin
          Paul H. Masuhara
          LAW OFFICE OF MARK E. MERIN

12        1010 F Street, Suite 300
          Sacramento, California 95814

13        Telephone: (916) 443-6911
          Facsimile: (916) 447-8336

14

15        Robert L. Chalfant
          LAW OFFICE OF ROBERT L. CHALFANT

16        13620 Lincoln Way, Suite 325
          Auburn, California 95603

17        Telephone: (916) 647-7728

18

19        Attorneys for Plaintiffs
          ESTATE OF DAVID BAREFIELD SR.,

20        DAVID BAREFIELD II, AARON BAREFIELD,
          FINAS BAREFIELD, and LOIS BAREFIELD

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barefield v. City of Sacramento*, United States District Court, Eastern District of California, Case No. 2:24-cv-03427-TLN-JDP

## JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF DAVID BAREFIELD SR., DAVID BAREFIELD II, AARON BAREFIELD, FINAS BAREFIELD, and LOIS BAREFIELD.

Dated: February 19, 2025                         Respectfully Submitted,

By: _____

    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone: (916) 443-6911
    Facsimile: (916) 447-8336

    Robert L. Chalfant
    LAW OFFICE OF ROBERT L. CHALFANT
    13620 Lincoln Way, Suite 325
    Auburn, California 95603
    Telephone: (916) 647-7728

    Attorneys for Plaintiffs
    ESTATE OF DAVID BAREFIELD SR.,
    DAVID BAREFIELD II, AARON BAREFIELD,
    FINAS BAREFIELD, and LOIS BAREFIELD